# EXHIBIT E

# UNITED STATES PATENT AND TRADEMARK OFFICE
## *USPTO Automated Interview Request (AIR)*

---

Oct 25 2018

---

This paper requesting to schedule and/or conduct an interview is appropriate because:

This submission is requested to be accepted as an authorization for this interview to communicate via the internet. Recognizing that Internet communications are not secure, I hereby authorize the USPTO to communicate with the undersigned concerning scheduling of the interview via video conference, instant messaging, or electronic mail, and to conduct the interview in accordance with office practice including video conferencing.

Name(s):
Mark Rozman

S-signature:
/Mark J Rozman/

Registration Number:
42117

U.S. Application Number:
15367330

Confirmation Number:
3403

E-mail Address:
rozman@tphm.com

Phone Number:
5124189944

Proposed Time of Interview:
10-31-2018 11:00 AM ET

Prefered Interview Type:
Telephonic

I am the applicant or applicant's representative for this application.

Topic for Discussion:



## REMARKS/ARGUMENTS

Applicant gratefully acknowledge the indication that claims 1-20 do not stand rejected under any prior art ground.

Claims 1-20 stand rejected under §101 as being directed to an abstract idea, without significantly more. Particularly in light of the above amendment to the claims, Applicant respectfully traverses this rejection.

As support for this rejection, the Office Action contends that all claims are "directed to the abstract idea of controlling a plurality of power management features of a processor...." Office Action page 2. And then the Office Action continues by contending that additional claim elements are not sufficient to recite significantly more than any such abstract idea. Here, all that is contended is that "the additional computer elements, which are recited at a high level of generality, provide conventional computer functions that do not add meaningful limits to practicing the abstract idea." *Id.*

Applicant respectfully traverses this rejection. Here, each of the independent claims recites significantly more than any abstract idea, and is not, as contended, limited to "controlling a plurality of power management features of a processor." Instead, each of the independent claims recites a concrete and non-generic statutory subject matter arrangement to enable a hardware-performed operation to occur.

Specifically, representative claim 1 recites a processor that includes a power controller, itself including a tuning circuit that receives various information and updates at least one setting of at least one of multiple power management features based on multiple parameters, namely the recited workload input and a global energy performance bias (EPB) value. The rejection is particularly overcome, in that the claims recite inventive concepts, as there stands no prior art rejection to the claims.

The Office Action relies on cases that are inapposite to the subject matter. First, as to reciting receiving of particular information in this tuning circuit, the Office Action refers to the Federal Circuit decision of *Electric Power Group, LLC v. Alstom S.A.*, 2015-1778 (Fed. Cir. 2015). This case is instructive. In *Electric Power Group*, the Federal Circuit found a method for detecting events on a power grid to be ineligible. In that case, the claim at issue was directed to "a process of gathering and analyzing information of a specified content, then displaying the

6

PUB_GOOGLE00001126

results, and not any particular assertedly inventive technology for performing those functions." *Electric Power Group, LLC*, page 8.

In *Electric Power Group*, the subject matter of the patent related to detecting events on an interconnected electric power grid -- and the claimed subject matter was limited to monitoring and analyzing data. More specifically, the district court held that "the claims are directed to 'the abstract idea of monitoring and analyzing data from disparate sources.'" *Electric Power Group*, page 5. Note that the claim at issue in *Electric Power Group* (namely its claim 12), reproduced in the footnote below for ease of illustration, simply relates to receipt of information, analysis of that information and display of resulting information.[1] Nevertheless, nothing in this claim recites any use beyond the display. Certainly, there is nothing in the claim that set forth a particular and inventive use of the information.

As such, the claims at issue in *Electric Power Group* stand in marked contrast from the claims here, which recite that specific information is received in a particular circuit, namely the recited tuning circuit, which is recited to receive both a workload configuration input regarding a workload and multiple EPB values. Furthermore, operations performed by the tuning circuit are

---

[1] 12.     A method of detecting events on an interconnected electric power grid in real time over a wide area and automatically analyzing the events on the interconnected electric power grid, the method comprising:

receiving a plurality of data streams, each of the data streams comprising sub-second, time stamped synchronized phasor measurements wherein the measurements in each stream are collected in real time at geographically distinct points over the wide area of the interconnected electric power grid, the wide area comprising at least two elements from among control areas, transmission companies, utilities, regional reliability coordinators, and reliability jurisdictions;

receiving data from other power system data sources, the other power system data sources comprising at least one of transmission maps, power plant locations, EMS/SCADA systems;

receiving data from a plurality of non-grid data sources;

detecting and analyzing events in real-time from the plurality of data streams from the wide area based on at least one of limits, sensitivities and rates of change for one or more measurements from the data streams and dynamic stability metrics derived from analysis of the measurements from the data streams including at least one of frequency instability, voltages, power flows, phase angles, damping, and oscillation modes, derived from the phasor measurements and the other power system data sources in which the metrics are indicative of events, grid stress, and/or grid instability, over the wide area;

displaying the event analysis results and diagnoses of events and associated ones of the metrics from different categories of data and the derived metrics in visuals, tables, charts, or combinations thereof, the data comprising at least one of monitoring data, tracking data, historical data, prediction data, and summary data; displaying concurrent visualization of measurements from the data streams and the dynamic stability metrics directed to the wide area of the interconnected electric power grid;

accumulating and updating the measurements from the data streams and the dynamic stability metrics, grid data, and non-grid data in real time as to wide area and local area portions of the interconnected electric power grid; and

deriving a composite indicator of reliability that is an indicator of power grid vulnerability and is derived from a combination of one or more real time measurements or computations of measurements from the data streams and the dynamic stability metrics covering the wide area as well as non-power grid data received from the non-grid data source.

7

recited, including the determination of a global EPB value based on this received information. The claim also recites that based on the determined global EPB value and one of these inputs, at least one setting of at least one power management feature is updated. As such, it is respectfully submitted that reliance on *Electric Power Group* is misplaced, as the claims here recite a machine-based analysis and its use in an inventive manner.

As a further matter, the court in *Electric Power Group* went on to describe the district court's finding that there is "an important common-sense distinction between ends sought and particular means of achieving them, between desired results (functions) and particular ways of achieving (performing) them." *Electric Power Group*, page 11. In finding this method claim ineligible, the Federal Circuit noted that ineligibility was as a result of not "claiming 'some specific way of enabling a computer to monitor data'…some 'particular implementation,' they 'purport to monopolize every potential solution to the problem.'…" *Id.* The Federal Circuit concluded that the Supreme Court's *Alice* framework as applied to particular claims result in patent eligible subject matter when it is determined that "the claims meet the requirement of an inventive concept *in application.*" *Electric Power Group*, page 12 (emphasis in original).

The claims here, with reference to representative claim 1, do not in any way meet the standard of a monopolization of every solution to a problem. Stated another way, claim 1 recites that a specific component, namely the recited hardware tuning circuit, is to receive particular information, process it in a particular manner, and then update at least one setting of at least one power management feature of a processor based on multiple parameters.

With this subject matter of the claim, the claim is directed to a specific application. And there is no attempt to monopolize every potential solution to power management. Certainly this is the case, as the claim recites an arrangement for particular technique for power management feature setting update by a particular component based on particular inputs -- nowhere present in the art. As such, the claim is tied to an inventive concept in a particular application, and does not purport to monopolize every potential solution. For example, of course there are many other ways to update a power management feature setting, none of which are prevented by the claims here.

The Office Action also relies on *Digitech Image Techs., LLC v. Electronics for Imaging, Inc.*, 758 F.3d 1344 (Fed. Cir. 2014). Office Action, page 2. Yet all that the Office Action describes with regard to *Digitech* is that it is related to "organizing and manipulating information

8

PUB_GOOGLE00001128

to mathematical correlations...." *Id.* But nothing in the claim recites a mere mathematical correlation. Instead as described above, the end result is a tangible result in which at least one setting of at least one power management feature of a processor is updated.

As a further matter, this arrangement of a tuning circuit to update a particular setting of at least one power management feature is not "similar to the concept of data recognition and storage...." Office Action, page 2.

The statutory subject matter rejection is further overcome, in light of the Federal Circuit decision in *Visual Memory LLC v. Nvidia Corp.*, 2016-2254 (Fed. Cir. 2017). Following the analysis in that case, the claims here recite statutory subject matter, as these claims are directed to an improvement to computer functionality itself. As with the precedent relied upon in *Visual Memory*, namely *Enfish, LLC v. Microsoft*, 822 F.3d 1327, 1334 (Fed. Cir. 2016), "the plain focus of the claims is on an improvement to the computer functionality itself, not on economic or other tasks for which a computer is used in its ordinary capacity." *Visual Memory*, page 8 (citing *Enfish*). To confirm statutory subject matter, the court in *Visual Memory* analyzed the specification to identify the benefits flowing from the improvement in computer functionality. *Visual Memory*, pages 9-10 ("The specification explains that multiple benefits flow from the '740 patent's improved memory system."). As with the *Visual Memory* court's reliance on the *Enfish* precedent (related to patents directed to a self-referential table), here:

> the specification discusses the advantages offered by the technological improvement. Accordingly, this is not a case where the claims merely recite the use of an abstract mathematical formula on a general purpose computer, a purely conventional computer implementation of a mathematical formula, or generalized steps to be performed on a computer using conventional computer activity.

*Visual Media*, pages 10-11 (citing *Enfish*).

The Specification here describes benefits of a system that includes a tuning circuit to update a setting of at least one power management feature as described herein. Specifically, the Specification describes that an EPB value allows an end user to control power/performance tradeoffs in a simple manner. Specification, paragraph 14. Stated another way, embodiments here and as expressed in the claims provide a manner to enable at least one setting of a power management feature to be updated even where a non-technical user has little or no understanding of an ability to tune such features. *Id.*, paragraph 15. As such, the Specification confirms that benefits are provided by way of the improvements in processor functionality disclosed in the

9

PUB_GOOGLE00001129

Specification and recited in the claims.  For all these reasons, the claims recite statutory subject matter and the §101 rejection is overcome.

## STATEMENT OF SUBSTANCE OF THE INTERVIEW

The undersigned gratefully thanks the Examiner for the time and courtesy extended during the telephonic interview which occurred on October 31, 2018.  The §101 rejection was discussed.  While no agreement was reached, it is understood that the Examiner will consider the above amendment and remarks, and if this Reply is deemed insufficient to place the case in condition for allowance, the Examiner will contact the undersigned in an effort to advance prosecution.

In view of the claim amendments and these remarks, the application is now in condition for allowance and the Examiner's prompt action in accordance therewith is respectfully requested.  The Commissioner is authorized to charge any additional fees or credit any overpayment to Deposit Account No. 20-1504.

Respectfully submitted,

Date:    November 2, 2018

/Mark J. Rozman/
Mark J. Rozman
Registration No. 42,117
TROP, PRUNER & HU, P.C.
1616 S. Voss Road, Suite 750
Houston, Texas 77057-2631
(512) 418-9944 [Phone]
(713) 468-8883 [Fax]
Customer No.: 47795

10

PUB_GOOGLE00001130