**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| DAEDALUS PRIME LLC, | § | |
| | § | Civil Action No. 7:25-cv-00313-DC-DTG |
| Plaintiff, | § | |
| | § | Jury Trial Demanded |
| v. | § | |
| | § | |
| GOOGLE LLC, | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF DAEDALUS PRIME LLC'S RESPONSE TO**
**GOOGLE LLC'S OBJECTIONS (DKT. 86) TO THE**
**CLAIM CONSTRUCTION ORDER AND MEMORANDUM (DKT. 80)**

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................... 1

II. LEGAL STANDARDS ..................................................... 2

III. ARGUMENT ..................................................... 4

A. '167 Patent, "interface unit": Claim 21 requires coupling, not co-location. ................. 5

B. '197 Patent, "energy performance bias (EPB) value": The claims and specification refute a universal "user's preference" limitation. ..................................................... 7

C. '197 Patent, "workload configuration input"/ "workload configuration value": Google now seeks a construction it never sought below. ..................................................... 10

D. '494 Patent, "dynamically tune power allocation"/"dynamically balancing power": The specification forecloses mandatory counterbalancing. ..................................................... 13

E. '833 Patent, Claims 15–18, '197 Patent, Claims 2–3, 5–7, 9–10, 15–16, 18–20: "Is to" identifies a structure and what it "is to" do, and Google never carried its burden to prove indefiniteness. ..................................................... 16

IV. CONCLUSION ..................................................... 19

## TABLE OF AUTHORITIES

### CASES

*3M Innovative Props. Co. v. Tredegar Corp.*,
725 F.3d 1315 (Fed. Cir. 2013)....................4

*AllVoice Computing PLC v. Nuance Commc'ns, Inc.*,
504 F.3d 1236 (Fed. Cir. 2007)....................8

*Aylus Networks, Inc. v. Apple Inc.*,
856 F.3d 1353 (Fed. Cir. 2017)....................15

*Baldwin Graphic Sys., Inc. v. Siebert, Inc.*,
512 F.3d 1338 (Fed. Cir. 2008)....................14, 15

*BASF Corp. v. Johnson Matthey Inc.*,
875 F.3d 1360 (Fed. Cir. 2017)....................18

*Blackbird Tech LLC v. ELB Elecs., Inc.*,
895 F.3d 1374 (Fed. Cir. 2018)....................12

*Coast Runner, Inc. v. Kickstarter, PBC*,
No. MO:25-CV-00396-DC,
ECF No. 107 (W.D. Tex. Feb. 22, 2026)....................2, 4

*Courtesy Prods., L.L.C. v. Hamilton Beach Brands, Inc.*,
No. 13-2012-SLR,
2015 WL 7295436 (D. Del. Nov. 18, 2015)....................18

*Ethanol Boosting Sys., LLC v. Ford Motor Co.*,
162 F.4th 1151 (Fed. Cir. 2025)....................12

*Focus Prods. Grp. Int'l, LLC v. Kartri Sales Co.*,
156 F.4th 1259 (Fed. Cir. 2025)....................3

*GE Lighting Sols., LLC v. AgiLight, Inc.*,
750 F.3d 1304 (Fed. Cir. 2014)....................3, 5

*Gomez v. Ford Motor Co.*,
No. 5:15-CV-866-DAE,
2017 WL 5201797 (W.D. Tex. Apr. 27, 2017)....................2

*Harrington v. Sw. Bell Tel. L.P.*,
No. SA-20-CV-00770-JKP,
2021 WL 2879289 (W.D. Tex. Jan. 14, 2021)....................2, 5

*Hill-Rom Servs., Inc. v. Stryker Corp.*,
755 F.3d 1367 (Fed. Cir. 2014)....................6

*Howmedica Osteonics Corp. v. Zimmer, Inc.*,
822 F.3d 1312 (Fed. Cir. 2016)....................9

*Imperium (IP) Holdings, Inc. v. Apple, Inc.*,
920 F. Supp. 2d 747 (E.D. Tex. 2013)....................3, 6, 11

*Indacon, Inc. v. Facebook, Inc.*,
824 F.3d 1352 (Fed. Cir. 2016)....................9

*Intervet Inc. v. Merial Ltd.*,
617 F.3d 1282 (Fed. Cir. 2010)....................9

*IPXL Holdings, L.L.C. v. Amazon.com, Inc.*,
430 F.3d 1377 (Fed. Cir. 2005)....................16, 18

*Irdeto Access, Inc. v. Echostar Satellite Corp.*,
383 F.3d 1295 (Fed. Cir. 2004)....................9

*Kraft Foods, Inc. v. Int'l Trading Co.*,
203 F.3d 1362 (Fed. Cir. 2000)....................9

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
358 F.3d 898 (Fed. Cir. 2004)....................13

*MasterMine Software, Inc. v. Microsoft Corp.*,
874 F.3d 1307 (Fed. Cir. 2017)....................5, 17, 18, 19

*Microprocessor Enhancement Corp. v. Tex. Instruments Inc.*,
520 F.3d 1367 (Fed. Cir. 2008)....................1, 5, 17

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
572 U.S. 898 (2014)....................4, 5, 17

*New Hampshire v. Maine*,
532 U.S. 742 (2001)....................16

*Nikon Corp. v. Optimum Imaging Techs., LLC*,
IPR2024-01372,
2025 WL 1180222 (P.T.A.B. Apr. 23, 2025)....................16

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
521 F.3d 1351 (Fed. Cir. 2008)....................5, 12, 13

*Omega Eng'g, Inc. v. Raytek Corp.*,
334 F.3d 1314 (Fed. Cir. 2003)....................10

*On Demand Mach. Corp. v. Ingram Indus., Inc.*,
442 F.3d 1331 (Fed. Cir. 2006)....................9

*ParkerVision, Inc. v. Qualcomm Inc.*,
903 F.3d 1354 (Fed. Cir. 2018)....................18

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) (en banc)....................5, 6

*Polaris PowerLED Techs., LLC v. Dell Techs., Inc.*,
No. 1:22-CV-973-RP,
2025 WL 2525457 (W.D. Tex. Mar. 10, 2025)....................3

*Proxense, LLC v. Microsoft Corp.*,
No. W-23-CV-00319-ADA,
2024 WL 2703020 (W.D. Tex. May 24, 2024)....................3

*Rembrandt Data Techs., LP v. AOL, LLC*,
641 F.3d 1331 (Fed. Cir. 2011)....................18

*Renishaw PLC v. Marposs Societa' per Azioni*,
158 F.3d 1243 (Fed. Cir. 1998)....................6

*Shambaugh & Son, L.P. v. Steadfast Ins. Co.*,
91 F.4th 364 (5th Cir. 2024)....................2, 6, 11

*Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*,
844 F.3d 1370 (Fed. Cir. 2017)....................4, 5, 16

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*,
574 U.S. 318 (2015)....................4

*Thorner v. Sony Comput. Ent. Am. LLC*,
669 F.3d 1362 (Fed. Cir. 2012).................... *passim*

*ThroughPuter, Inc. v. Amazon Web Servs., Inc.*,
No. 1:22-CV-1095-DAE,
2025 WL 2946606 (W.D. Tex. Sept. 9, 2025)....................3

*Trs. in Bankr. of N. Am. Rubber Thread Co. v. United States*,
593 F.3d 1346 (Fed. Cir. 2010)....................16

*Trs. of Columbia Univ. v. Symantec Corp.*,
811 F.3d 1359 (Fed. Cir. 2016)....................9, 10

*UltimatePointer, L.L.C. v. Nintendo Co.*,
816 F.3d 816 (Fed. Cir. 2016)....................17

*United States v. U.S. Gypsum Co.*,
333 U.S. 364 (1948)....................2

*Universal Connectivity Techs. Inc. v. Dell Techs. Inc.*,
No. 1:23-CV-1506-RP,
2026 WL 2045011 (W.D. Tex. July 14, 2026)....................2

## STATUTES

28 U.S.C. § 636(b)(1)(A) ....... 2

35 U.S.C. § 101 ....... 10

35 U.S.C. § 112 ....... 4

## RULES

Fed. R. Civ. P. 72(a) ....... *passim*

W.D. Tex. Local Rules App'x C, Rule 4(a) ....... 2

Plaintiff Daedalus Prime LLC ("Daedalus Prime" or "Daedalus") respectfully submits this response to the objections (Dkt. 86) of Defendant Google LLC ("Google") to Judge Gilliland's Claim Construction Order and Memorandum (the "*Markman* Order," Dkt. 80).

## I. INTRODUCTION

A processor has one power budget and many parts that want it; Daedalus Prime's patents, originally invented by engineers at Intel Corporation, describe hardware that decides, moment to moment, how to divide that budget and tune the chip to the work at hand. Google proposed to narrow four of those claim terms and to hold a fifth indefinite, lost on all five, and now asks this Court to hold the *Markman* hearing over again.

Rule 72(a) does not permit that path. Judge Gilliland's *Markman* Order (Dkt. 80) is reviewed for clear error, and re-argument cannot establish it. An objection must identify a clearly erroneous finding or an erroneous legal conclusion, not re-urge rejected arguments. Google's objections (Dkt. 86) nevertheless re-urge the same arguments, specification passages, and even the same hypothetical that Judge Gilliland quoted, and rejected, after four briefs, a hearing, and a technical advisor appointed because the technology is "exceptionally complex." Dkt. 82 at 1. Where Google is not repeating itself, it is retreating: its workload objection asks for a truncated construction it never proposed below, and its indefiniteness objection abandons the "configured to" argument it briefed.

The objections fail three ways. ***First***, re-argument identifies no error under either prong of Rule 72(a). ***Second***, Google's two new positions—an article-based canon and a truncated "workload" construction—come too late. ***Third***, every construction is correct under any standard. Two portions of Google's objections cite no case at all, and its indefiniteness objection engages neither the clear-and-convincing burden nor the Federal Circuit's *Microprocessor Enhancement* decision, which the *Markman* Order held controlling. The objections should be overruled.

## II. LEGAL STANDARDS

A claim construction order is a nondispositive pretrial ruling, reviewed under Rule 72(a). "Factual findings are reviewed for clear error while legal conclusions are reviewed under the contrary to law standard," to which "*[d]e novo* review applies." *Coast Runner, Inc. v. Kickstarter, PBC*, No. MO:25-CV-00396-DC, ECF No. 107 at 6 (W.D. Tex. Feb. 22, 2026); *see also* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); W.D. Tex. Local Rules App'x C, Rule 4(a).

"The clearly erroneous or contrary to law standard of review is 'highly deferential' and requires the court to affirm the decision of the magistrate judge unless, based on the entire evidence, the court reaches 'a definite and firm conviction that a mistake has been committed.'" *Universal Connectivity Techs. Inc. v. Dell Techs. Inc.*, No. 1:23-CV-1506-RP, 2026 WL 2045011, at *1 (W.D. Tex. July 14, 2026) (quoting *Gomez v. Ford Motor Co.*, No. 5:15-CV-866-DAE, 2017 WL 5201797, at *2 (W.D. Tex. Apr. 27, 2017) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948))). Thus, clear-error review "does not entitle the court to reverse or reconsider the order simply because it would or could decide the matter differently," *id.*, and the contrary-to-law prong requires identifying a specific legal conclusion that is wrong, *see Coast Runner*, ECF No. 107 at 6, not re-urging readings the Magistrate Judge considered and rejected. "The abuse of discretion standard governs review of that vast area of choice that remains to the magistrate judge who has properly applied the law to fact findings that are not clearly erroneous." *Harrington v. Sw. Bell Tel. L.P.*, No. SA-20-CV-00770-JKP, 2021 WL 2879289, at *2 (W.D. Tex. Jan. 14, 2021) (cleaned up).

Positions withheld from the magistrate judge are forfeited. *See Shambaugh & Son, L.P. v. Steadfast Ins. Co.*, 91 F.4th 364, 369 (5th Cir. 2024) ("[T]his court considers arguments forfeited if they are not raised before a magistrate judge, even if they are subsequently raised before the reviewing district court in objections to the magistrate judge's report and recommendation.");

*Imperium (IP) Holdings, Inc. v. Apple, Inc.*, 920 F. Supp. 2d 747, 752 (E.D. Tex. 2013) ("[E]vidence and arguments presented for the first time upon objection to a report and recommendation need not be considered.").

The Federal Circuit applies a "heavy presumption that claim terms carry their full ordinary and customary meaning." *Focus Prods. Grp. Int'l, LLC v. Kartri Sales Co.*, 156 F.4th 1259, 1273 (Fed. Cir. 2025) (internal quotation marks omitted); *accord Proxense, LLC v. Microsoft Corp.*, No. W-23-CV-00319-ADA, 2024 WL 2703020, at *1 (W.D. Tex. May 24, 2024). "There are only two exceptions to this general rule: 1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Thorner v. Sony Comput. Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012); *see also, e.g.*, *ThroughPuter, Inc. v. Amazon Web Servs., Inc.*, No. 1:22-CV-1095-DAE, 2025 WL 2946606, at *2 (W.D. Tex. Sept. 9, 2025) (citing *Thorner*); *Polaris PowerLED Techs., LLC v. Dell Techs., Inc.*, No. 1:22-CV-973-RP, 2025 WL 2525457, at *2 (W.D. Tex. Mar. 10, 2025) (citing *Thorner*); *Proxense*, 2024 WL 2703020, at *1 (citing *Thorner*).

"The standards for finding lexicography and disavowal are exacting." *GE Lighting Sols., LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed. Cir. 2014). To act as a lexicographer, "[i]t is not enough for a patentee to simply disclose a single embodiment or use a word in the same manner in all embodiments"; instead, a patentee "must clearly express an intent to redefine the term." *Thorner*, 669 F.3d at 1365 (internal quotation marks omitted). To provide a clear disavowal of claim scope, a patentee "may demonstrate intent to deviate from the ordinary and accustomed meaning of a claim term by including in the specification expressions of manifest exclusion or restriction . . . ." *Id*. at 1366. "Mere criticism of a particular embodiment encompassed in the plain meaning of a claim term is not sufficient to rise to the level of clear disavowal." *Id*. "It is likewise

not enough that the only embodiments, or all of the embodiments, contain a particular limitation." *Id*. "We do not read limitations from the specification into claims; we do not redefine words. Only the patentee can do that." *Id*. When "an applicant's statements are amenable to multiple reasonable interpretations, they cannot be deemed clear and unmistakable." *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1326 (Fed. Cir. 2013).

Pre-AIA 35 U.S.C. § 112 ¶ 2 (2010) requires that a patent specification "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." This provision requires that "a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014). The party asserting invalidity must prove indefiniteness by clear and convincing evidence. *See Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017).

## III. ARGUMENT

The *Markman* Order's constructions are correct. Each construction applies controlling law to specific findings about the record.

That is dispositive under Rule 72(a). The phrase "clearly erroneous" appears only once in Google's objections, in the introduction, applied to everything at once. Dkt. 86 at 1. Google's objections never assert that a particular factual finding is clearly erroneous, although the *Markman* Order's determinations are replete with exactly that kind of finding: for example, what Figure 7 depicts, what the '197 Patent's source language says, what Intel's manual permits software to do, and what the '494 embodiments disclose. *Cf. Teva Pharm. USA, Inc. v. Sandoz, Inc.,* 574 U.S. 318, 322 (2015) ("the appellate court must apply a 'clear error,' not a *de novo*, standard of review" to a trial judge's resolution of factual disputes underlying claim construction). The contrary-to-law prong requires a legal conclusion that is wrong, *see Coast Runner*, ECF No. 107 at 6, but the

*Markman* Order drew from well-established Federal Circuit decisions, including *Phillips, Thorner, O2 Micro, Nautilus, Sonix, MasterMine,* and *Microprocessor Enhancement*, as discussed below. Google nowhere contends the *Markman* Order chose the wrong law, only that the Magistrate Judge should have weighed the record differently. That is a quintessential abuse-of-discretion question, *see Harrington*, 2021 WL 2879289, at *2, and Google identifies no such abuse here. The Magistrate Judge applied the correct legal framework, his findings stand unchallenged, and re-weighing the record falls outside the ambit of Rule 72(a) review.

**A. ’167 Patent, “interface unit”: Claim 21 requires coupling, not co-location.**

Google asked the Court to construe “interface unit” as “[c]ircuitry of a multicore processor that interconnects the cores to other circuitry”; Daedalus proposed plain and ordinary meaning. *See* Dkt. 80 at 4. The *Markman* Order sided with the claim language: “coupled to” “describes a relationship,” not a location, and the term carries its plain and ordinary meaning. *Id.* at 5, 7, 25. Google’s objection re-urges the same location requirement and adds a canon it never briefed. Dkt. 86 at 1–3. Both moves fail.

Plain meaning yields only to lexicography or disavowal, but those standards “are exacting,” and Google identifies neither. *GE Lighting*, 750 F.3d at 1309. Claim 21 recites that the two pluralities of cores “are further coupled to an interface unit.” ’167 Pat., cl. 21. The Magistrate Judge read that language for what it says: “coupled to” “describes a relationship,” not a location, and Google’s construction adds “a location requirement not found in the claim.” Dkt. 80 at 5. Thus, Claim 21, read along with its parent Claims 14 and 20, “tells a skilled artisan what is coupled to what. It does not transform the interface unit into a necessarily co-located component of the multicore processor.” *Id.* at 6.

Google repeated its arguments from the opening brief: both specification passages it presses now were pressed at Dkt. 65 at 9 and Dkt. 72 at 1–2, and the *Markman* Order analyzed

both and held that permissive embodiment language does not define claim scope. *See* Dkt. 80 at 6 (quoting '167 Pat., 2:57–58, 11:43–46). *Hill-Rom* refused the same move, holding that embodiments describing routing messages through a "wall interface unit" "d[id] not cause the importation of this structure into the claims at issue." *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1377 (Fed. Cir. 2014). Nor does *Phillips* help Google: the sentence it quotes calls first for a construction that "stays true to the claim language." *Phillips v. AWH Corp.,* 415 F.3d 1303, 1316 (Fed. Cir. 2005) (en banc) (quoting *Renishaw PLC v. Marposs Societa' per Azioni,* 158 F.3d 1243, 1250 (Fed. Cir. 1998)). Adding a co-location requirement the claim omits is not that. Google's expanded tour of the specification's interfaces, Dkt. 86 at 2–3, only restates Google's premise: Google concedes that interfaces 580, 650, and 780 "reach off-chip." *Id.* at 2. As Daedalus explained below, the specification uses "interface," "interface unit," and "interconnect" interchangeably for couplings to off-chip devices. *See, e.g.*, Dkt. 69 at 4 & n.1. Where embodiments place particular interfaces describes those embodiments. It does not rewrite the claim. *See Thorner*, 669 F.3d at 1365–66.

Google's new "one or more" argument, *see* Dkt. 86 at 3, appears in neither Dkt. 65 nor Dkt. 72. Thus, this argument is forfeited and need not be considered. *See Shambaugh*, 91 F.4th at 369; *Imperium*, 920 F. Supp. 2d at 752. In any event, the "one or more" canon cannot make Figure 7 fit the claim, much less force a co-location requirement where none exists. As Daedalus explained below (*see* Dkt. 73 at 1–2), Figure 7 places separate interfaces 515 ***inside*** each core unit, showing one "IF 515" inside "Core Unit $510_o$" having a plurality of cores "$512_o$" and "$512_n$", and ***another*** "IF 515" inside a ***different*** "Core Unit $510_n$" having a plurality of cores "$512_o$" and "$512_n$". Claim 21, however, recites "an interface unit" that is "coupled to" ***both*** "a first plurality of cores" and a "second plurality of cores." And the patentee knew how to claim plural units: parent Claim

20, from which Claim 21 depends, couples those same first and second pluralities of cores to "a ***plurality*** of units of a last level cache." '167 Pat., cl. 20 (emphasis added); *see also id.*, Fig. 7 (showing a plurality of "Cache 514"). The claim-differentiation contrast is decisive: "a plurality of units" where plural was meant in Claim 20, "an interface unit" here in Claim 21. *Id.,* cls. 20, 21. In short, none of Google's belated arguments rises to the level of lexicography or disavowal necessary to narrow Claim 21's plain meaning. *See Thorner*, 669 F.3d at 1365–66. Google's overbreadth warning, Dkt. 86 at 3, quotes its own opening brief, Dkt. 65 at 7, and the *Markman* Order answered it: "The claim requires coupling. It does not require co-location." Dkt. 80 at 7.

Google fails to identify any finding in this analysis as "clearly erroneous," and it does not question the framework the Order applied. Simply put, Rule 72(a) has nothing to act on. The Court should overrule Google's objection and leave "interface unit" where the *Markman* Order left it, with its plain and ordinary meaning.

**B. '197 Patent, "energy performance bias (EPB) value": The claims and specification refute a universal "user's preference" limitation.**

Google proposed that every "energy performance bias (EPB) value" must indicate "a user's preference" for the power-performance tradeoff; Daedalus proposed plain and ordinary meaning. *See* Dkt. 80 at 7. The *Markman* Order rejected the user's-preference limitation because the claims and specification expressly recite non-user sources. *See id.* at 9–12. Google's objection re-urges the limitation, recast as what the value "conveys" rather than where it comes from. Dkt. 86 at 3–7. The recast fails on the same claim text.

The *Markman* Order construed this EPB value as "a value indicating a tradeoff between power optimization and performance optimization" and explicitly stated that it is "not limited to a user's preference." Dkt. 80 at 12, 25. Independent Claim 11 requires "the EPB value to indicate a preference of a user"; independent Claims 1 and 15 do not. Google would read into every claim

what the patentee wrote into just one of the independent claims, making that express recitation in Claim 11 surplusage. *See* i*d.* at 9–10; *AllVoice Computing PLC v. Nuance Commc'ns, Inc.*, 504 F.3d 1236, 1247–48 (Fed. Cir. 2007). The claims and specification confirm that the EPB value is not limited to a user's preference, but can also occur "automatically." For example, Claim 9 recites a processor "to receive at least one EPB value from a baseboard management controller," rather than a user. '197 Pat., cl. 9. The specification agrees: EPB values can come from an OS, BIOS, BMC, or data-center software, "***automatically or*** via a user." *Id.*, 2:53–61 (emphasis added).

Google's reliance on Claims 11 and 13, Dkt. 86 at 6, fails on the dependency chain: Claim 13 depends from Claim 11 (the one claim reciting a user's preference) and so says nothing about Claims 1 and 15. Claim 13 also fails Google on its own text: it recites "***an interface*** to enable a user, an operating system or a baseboard management controller to set the EPB value" — three sources, in the disjunctive. '197 Pat., cl. 13. Thus, Claim 13 is narrowly directed to an interface that enables a user to express that user's preference, as in parent Claim 11, by ***choosing*** his or her own value instead of automatically provided operating system or baseboard management controller values. Claim 13 implies nothing about EPB values in the other claims.

The rest is re-argument. *Compare* Dkt. 86 at 4–6, *with* Dkt. 65 at 11–12 *and* Dkt. 72 at 3–5, considered at Dkt. 80 at 9–10. The *Markman* Order found that "Google's reply does not adequately account for that non-user source language," Dkt. 80 at 10; the objections still do not. Nor do they engage the *Markman* Order's finding that Intel's manual lets "software . . . use whatever criteria it sees fit" to program the value. *Id.* at 11. That finding also answers Google's recast position that the source of the value "does not change what the EPB conveys." Dkt. 86 at 6. Software programming the register by "whatever criteria it sees fit" conveys software's policy. Dkt. 80 at 11. Whatever criteria software sees fit is not "a user's preference." *Id.*

Google's coined-term theory, Dkt. 86 at 4, fails on its own premise. The patent introduces the term as existing art: "Embodiments provide a so-called energy performance bias (EPB) as an architectural feature." '197 Pat., 2:34–35. Google's own exhibits agree: Intel's September 2010 Software Developer's Manual documents the IA32_ENERGY_PERF_BIAS register, Dkt. 65-10; an Intel engineer described the register to the Linux kernel mailing list in 2010, Dkt. 65-8; and the kernel shipped code that programs it, Dkt. 65-9 — all before the patent's December 15, 2011 effective filing date. And even a coined term is construed "only as broadly as provided for by the patent itself." *Irdeto Access, Inc. v. Echostar Satellite Corp.*, 383 F.3d 1295, 1300 (Fed. Cir. 2004); *accord Indacon, Inc. v. Facebook, Inc.*, 824 F.3d 1352, 1357 (Fed. Cir. 2016). What this patent provides is both user and non-user sources, '197 Pat., 2:53–61; Google reads the user-source half and discards the rest.

Google's remaining authorities cut the other way. In the same paragraph Google quotes, *Intervet* warns against confusing "exemplars or preferred embodiments . . . with limitations that define the outer boundaries of claim scope," and reversed a construction confining a term to its examples. *Intervet Inc. v. Merial Ltd.,* 617 F.3d 1282, 1287–88 (Fed. Cir. 2010). Google's other cases had records disclosing no alternative: The written description in *Howmedica Osteonics Corp. v. Zimmer, Inc.* offered "no other suggestion." 822 F.3d 1312, 1321 (Fed. Cir. 2016). Every back panel in *Kraft Foods, Inc. v. International Trading Co.* was "relatively stiff." 203 F.3d 1362, 1368 (Fed. Cir. 2000). While the specification in *On Demand Machine Corp. v. Ingram Industries, Inc.*, 442 F.3d 1331, 1340 (Fed. Cir. 2006), "repeatedly reinforces" one usage, the '197 Patent at issue here does the opposite: it expressly recites non-user sources such as an operating system or a base-board management controller. The implicit definition in *Columbia* rested on "critical language in the claims and specification," which is not present here, and elsewhere in the same decision, the

Federal Circuit reversed a construction importing a limitation other claims recited. *See Trs. of Columbia Univ. v. Symantec Corp.,* 811 F.3d 1359, 1364, 1370 (Fed. Cir. 2016). The prosecution history's November 2, 2018 remarks cannot carry the burden either. They answered a § 101 ineligibility rejection with statements identifying a benefit the claims provide, not redefining their scope, *see* Dkt. 69 at 12, and fell well short of the standards for disavowal, which must be "both clear and unmistakable," *Omega Eng'g, Inc. v. Raytek Corp.,* 334 F.3d 1314, 1325–26 (Fed. Cir. 2003). The *Markman* Order found exactly that clarity missing: the remarks "do not clearly state that every EPB value in every claim must indicate a user preference." Dkt. 80 at 10.

Each of the *Markman* Order's determinations rests on findings about the claims, the specification, and Google's own exhibits. Google fails to identify any of these findings as clearly erroneous, and Google's plea for "implicit" disavowal, *see* Dkt. 86 at 4, 7, concedes the governing standard it cannot meet on this record. The Court should overrule Google's objection and confirm the *Markman* Order's construction of "energy performance bias (EPB) value."

**C. '197 Patent, "workload configuration input"/ "workload configuration value": Google now seeks a construction it never sought below.**

The disputed terms are Claim 1's "workload configuration input" and Claim 15's "workload configuration value." Google proposed a construction that improperly imported specification examples; Daedalus proposed that no construction was necessary. *See* Dkt. 80 at 12. The *Markman* Order agreed with Daedalus and gave the terms their plain and ordinary meaning. *Id.* at 14–15, 25. On objection, Google abandons the construction it sought below and now asks for a new one. The objection should be overruled for that reason alone.

Google's construction below and at the hearing was "[a] value indicating a predominant pattern of execution with particular hardware configuration demands (e.g., NUMA, UMA, I/O intensive)." Dkt. 80 at 12–13. The *Markman* Order rejected it because "the phrase 'particular

hardware configuration demands' does not appear in the claim language or the specification." *Id.* at 14. Google now apparently asks for less: "a value indicating a predominant pattern of execution," Dkt. 86 at 8, abandoning the phrase the *Markman* Order found unsupported and the examples Google defended below, Dkt. 72 at 7 n.6.

To the extent Google seeks a newly truncated construction in its objections, that construction has been forfeited, and should be rejected on that ground alone. "[E]vidence and arguments presented for the first time upon objection to a report and recommendation need not be considered." *Imperium*, 920 F. Supp. 2d at 752; *see also Shambaugh*, 91 F.4th at 369 ("[T]his court considers arguments forfeited if they are not raised before a magistrate judge, even if they are subsequently raised before the reviewing district court in objections to the magistrate judge's report and recommendation."). Google does not even attempt to argue that the *Markman* Order's factual findings were clearly erroneous, and it makes no argument that the Magistrate Judge's legal analysis was contrary to law.

The new construction does not cure the defect anyway. "Predominant pattern of execution" appears nowhere in the specification or claims. Dkt. 80 at 14. The *Markman* Order found that "[t]he claim language is materially different from Google's proposal." *Id*. Claim 15 recites only that the value "is to indicate a predominant workload type," and Claim 1 omits "predominant" altogether. '197 Pat., cls. 1, 15. Google's phrase thus "replac[es] the claim language with a narrower formulation not found in the claims," Dkt. 80 at 14, and "rewrites" the actual Claim 15 limitation while reading "predominant" into Claim 1. *See id.* at 14–15. Google's account is also inaccurate: Google asserts (Dkt. 86 at 8) that the *Markman* Order "recognized that the intrinsic evidence supports Google's construction," but at most the *Markman* Order said only that it "gives Google some support." Dkt. 80 at 14.

Nor is there ambiguity for a construction to cure. The claims themselves supply the boundary Google says is missing: Claim 1 requires an input "regarding a workload"—and not just any such input, but a "workload configuration" input, and Claim 15 recites that the value "is to indicate a predominant workload type to be executed on the system." '197 Pat., cls. 1, 15. Thus the claims themselves answer the Magistrate Judge's assertion that "[t]he '197 claim terms do not appear to describe *any* value that has any relationship to workload." Dkt. 80 at 14. The specification passage Google's construction purportedly "captures," Dkt. 86 at 8, introduces NUMA, UMA, and I/O-intensive workloads "[a]s examples," closing with "etc." '197 Pat., 7:3–6. The Federal Circuit has forbidden importing examples (or glosses borrowed from them) into the claims. *See Blackbird Tech LLC v. ELB Elecs., Inc.*, 895 F.3d 1374, 1377 (Fed. Cir. 2018) (specification's "many different types of fastening mechanisms," including "an adhesive strip[,] . . . a magnet, clips, screws, etc.," did not support importing a fastener limitation).

Google's remaining contentions—that plain meaning "creates rather than resolves ambiguity," and that the "remedy is a modified construction," Dkt. 86 at 7–8—carry no weight. *O2 Micro* requires a court to resolve the scope dispute presented, not to adopt the proponent's words, *see O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.,* 521 F.3d 1351, 1362 (Fed. Cir. 2008), and the Magistrate Judge resolved it: he construed the terms in context and excluded Google's admittedly non-limiting examples to avoid "creating unintentional ambiguity." Dkt. 80 at 14–15. As for the "modified construction," Google never offered one below, Dkt. 65 at 16; Dkt. 72 at 7, and whatever a court's discretion to craft its own may be, declining to draft a construction no party requested is not error. *See Ethanol Boosting Sys., LLC v. Ford Motor Co.,* 162 F.4th 1151, 1162 (Fed. Cir. 2025) (no error in declining to evaluate "a claim construction argument that neither party raised").

The Order resolved the dispute the parties presented and thus did what *O2 Micro* requires. That is not error under either prong of Rule 72(a). The Court should overrule the objection and decline, as the Magistrate Judge did, to construe these terms. The construction Google now offers was never requested below, and it replaces the patentee's words with Google's.

**D. '494 Patent, "dynamically tune power allocation"/"dynamically balancing power": The specification forecloses mandatory counterbalancing.**

Google proposed to construe "dynamically tune power allocation" and "dynamically balancing power" as "[a]daptively increasing power for one component while concurrently reducing power to another component"; Daedalus proposed plain and ordinary meaning. Dkt. 80 at 15. The *Markman* Order rejected Google's construction because it "requires counterbalancing in every instance," contrary to the specification's description of embodiments that lack counterbalancing. *Id.* at 16–18, 25. The objection re-urges Google's construction and stakes it on a PTAB disclaimer theory. Dkt. 86 at 8–10. The specification, the claims, and the Board's own decisions all refuse it.

Two specification passages decide this dispute. The '494 patent states that "when a power limit exists and IC 100 is not up against the power limit, the immediately aforementioned increase in performance ***may not include*** a counterbalancing reduction in the other device," '494 Pat., 8:30–33 (emphasis added), and that freed power "may be saved to increase energy efficiency," *id.*, 19:36–43. The patent describes chips that give one component more power without taking power from another; Google's construction would exclude them. A patent's objectives do not require that "each of the claims be construed as limited to structures that are capable of achieving all of the objectives." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 908 (Fed. Cir. 2004). The *Markman* Order found that "Google's reply does not squarely address that passage," Dkt. 80 at 17, and Dkt. 86 again cites neither passage, repeating the exact omission the Order identified.

The claims say the same thing. Claim 1 recites tuning "based on a power limit"; dependent claim 3 addresses the balancing control's behavior "in response to the integrated circuit operating at the power limit." '494 Pat., cls. 1, 3. Thus the patentee distinguished being ***governed*** by a limit (*e.g.*, Claim 1) from ***operating*** at one (*e.g.*, Claim 3), and the not-at-limit scenario, in which an increase "may not include a counterbalancing reduction," *Id.*, 8:30–33, is precisely the space Google's construction erases. Claim 8 is worse still for Google: it recites adjusting the communication bus "by a plurality of steps" and the central processor "by a step." *Id.*, cl. 8. Those are independently scaled adjustments, not concurrent adjustments in opposite directions. *See* Dkt. 69 at 19.

Google's remaining specification argument repeats its claim construction briefing. *Compare* Dkt. 86 at 9, *with* Dkt. 65 at 21 *and* Dkt. 72 at 9: the same seven-passage string cite, in the same order. The *Markman Order* addressed all of it. Dkt. 80 at 16–18. Google's one new theory, that the non-counterbalancing embodiments are "a different form of power allocation," Dkt. 86 at 9, is forfeited. It relabels disclosed embodiments as unclaimed and contradicts Google's own statement below that those embodiments "contemplate counterbalancing adjustments in at least some circumstances." Dkt. 72 at 10. ***Some*** is not ***every***: "Google's construction requires counterbalancing in every instance." Dkt. 80 at 18.

The examiner argument was made below and answered: the *Markman* Order held the "examiner's provisional double-patenting discussion" was not "a limiting construction adopted as a condition of patentability," Dkt. 80 at 18, and Google omits that the applicant answered with a terminal disclaimer, which the Patent Office accepted, and which mooted the rejection. *See* Dkt. 69 at 24; Dkt. 69-5 (terminal disclaimer); Dkt. 69-6 (Patent Office's acceptance of disclaimer). And Google's own authority defeats it. *Baldwin* rejected a disavowal argument in terms that fit

this record: "By no means does this statement constitute something akin to a disavowal of claim scope." *Baldwin Graphic Sys., Inc. v. Siebert, Inc.,* 512 F.3d 1338, 1346 (Fed. Cir. 2008).

The disclaimer objection is not supported by evidence. Disclaimer is the patentee's own act — it attaches to "statements made by a patent owner" that are "both clear and unmistakable." *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1361 (Fed. Cir. 2017). The PTAB's descriptions of the '494 Patent are the Board's words, not Daedalus's. The *Markman* Order properly found Google's cited statements to be "more generalized, illustrative narratives of the '494 patent." Dkt. 80 at 18. Google nonetheless asserts a "clear and unmistakable claim scope disclaimer," Dkt. 86 at 10, citing no case at all and abandoning pages 11 and 30 of the preliminary response, the only pages the *Markman* Order's disclaimer analysis addressed. Dkt. 72 at 8, 10; Dkt. 80 at 18. The passage it now offers instead, Dkt. 86 at 9 (citing the preliminary response at 2–3), merely recounts what the inventors determined — background description, not surrender of claim scope. Nor could those pages carry the burden: each cited sentence distinguished a specific prior-art configuration — prefaced "For example" — and disclaiming two examples is not a clear and unmistakable surrender of all others. *See* Dkt. 73 at 10.

And the Board rejected the very filing Google invokes. *Aylus* is permissive: a preliminary-response statement "can be" relied on only where it is a clear and unmistakable surrender the public may treat as definitive — and in *Aylus* itself, the Board denied institution as to certain claims because of the patentee's statements. 856 F.3d at 1361–63. The opposite happened here. The Board instituted review "for all of the challenged claims on all of the asserted grounds," Dkt. 73-2 at 33; *see id.* at 6 (listing grounds), expressly considered Daedalus's "between" argument on both grounds and rejected it — "We disagree," *id.* at 19, 31 — and found "no claim terms that need to be construed," *id.* at 14. A rejected argument is not a definitive statement, and the public cannot

rely on a position the tribunal refused. *See Nikon Corp. v. Optimum Imaging Techs., LLC,* IPR2024-01372, 2025 WL 1180222, at *15 (P.T.A.B. Apr. 23, 2025) (no disclaimer where the Board neither adopted the construction in an institution decision nor rested patentability on it); *cf. New Hampshire v. Maine,* 532 U.S. 742, 750–51 (2001) (judicial estoppel follows judicial acceptance of a position, not its assertion). The Board did not adopt Daedalus's reading. The Board refused it. Thus, no disclaimer or estoppel should apply. "Judicial estoppel applies just as much when one of the tribunals is an administrative agency as it does when both tribunals are courts." *Trs. in Bankr. of N. Am. Rubber Thread Co. v. United States*, 593 F.3d 1346, 1354 (Fed. Cir. 2010).

The *Markman* Order made numerous findings, about what the specification discloses, what Google's cited embodiments contemplate, and what the preliminary response distinguished, and Google calls none of them clearly erroneous; its disclaimer theory, which cites no case, cannot make any of this contrary to law. The Court should overrule the objection and confirm the plain and ordinary meaning of "dynamically tune power allocation" and "dynamically balancing power."

### E. '833 Patent, Claims 15–18, '197 Patent, Claims 2–3, 5–7, 9–10, 15–16, 18–20: "Is to" identifies a structure and what it "is to" do, and Google never carried its burden to prove indefiniteness.

Google contended below that the "is to" clauses of the '833 and '197 patents mix apparatus and method claiming and are indefinite under *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005). The *Markman* Order held otherwise: the challenged clauses "identify a structure and then state what that structure 'is to' do," and "Google has not carried its burden to prove indefiniteness." Dkt. 80 at 22, 24. The objection repeats the theory, restyled as legal error. Dkt. 86 at 10–11. It fails where it failed below: the functional language is tied to claimed structure.

Google pitches this objection as "contrary to law," Dkt. 86 at 11, but it fails on *de novo* review. Indefiniteness "must be proven by clear and convincing evidence," *Sonix,* 844 F.3d at 1377, yet Dkt. 86 never mentions that burden, the standard, or the *Markman* Order's holding that Google failed to carry it, nor does Google identify any evidence from the skilled artisan whose perspective controls. *See Nautilus,* 572 U.S. at 909.

The claims defeat the objection. Each challenged clause names (1) a component and (2) states the function it performs: *e.g.*, "the power sharing logic is to dynamically allocate substantially all of the variable power budget." '833 Pat., cl. 15. The *Markman* Order read that for what it is: limitations that "identify a structure and then state what that structure 'is to' do." Dkt. 80 at 22. Notably, in claims Google does not challenge, the same structures receive the same functions by bare infinitive: *e.g.*, "a power sharing logic to dynamically allocate a variable power budget," '833 Pat., cl. 13. On Google's theory, the word "is" converts functional language *that Google concedes is definite* into a method step. That cannot be right. Claim differentiation does not help Google either: Claim 15 depends from Claims 13 and 14, which recite the same functions with the same unchallenged bare infinitive, and the substantive limitation Claim 15 adds is allocation of "substantially all" of the budget across two sequential workloads, not any independent limiting meaning in the word "is." '833 Pat., cls. 13–15.

Google's objection rests on the assertion that "is to" "expresses an operational directive, not a capability." Dkt. 86 at 10. But the "is to" clauses fit comfortably within the Federal Circuit's capability cases. *MasterMine Software, Inc. v. Microsoft Corp.*, 874 F.3d 1307, 1315 (Fed. Cir. 2017), speaks of the "capabilities" of a module which "presents," "receives," and "generates," and is not indefinite. *Microprocessor Enhancement Corp. v. Texas Instruments Inc.*, 520 F.3d 1367, 1371–72, 1375 (Fed. Cir. 2008), reviews a processor "capable of performing the recited

functions," and finds it not indefinite. *UltimatePointer, L.L.C. v. Nintendo Co.*, 816 F.3d 816, 827 (Fed. Cir. 2016), reviewing an "image sensor generating data," looked to "the capability of that structure," and found it not indefinite. And *ParkerVision, Inc. v. Qualcomm Inc.,* 903 F.3d 1354, 1361–62 (Fed. Cir. 2018), spoke of "capability, as opposed to actual operation," in construing terms similar to those here. *ParkerVision* applied that rule to the same drafting used here (a "switch module to receive . . .") and held such claims fall "squarely on the 'capable of' side of the line," over the patentee's argument for the other side. *See id.* That also disposes of Google's effort to recast *MasterMine's* verbs as describing what a component "inherently does." Dkt. 86 at 11. *MasterMine* called them "permissible functional language used to describe capabilities" of the module. 874 F.3d at 1315. A skilled artisan who reads "[structure] is to [verb]" thus knows with reasonable certainty what the claims cover: recited structures capable of performing the recited functions. That scope may be broad, but "breadth is not indefiniteness." *BASF Corp. v. Johnson Matthey Inc.,* 875 F.3d 1360, 1367 (Fed. Cir. 2017).

Google's own cases draw the same line, and the challenged claims sit on the definite side. *IPXL* condemned a claim requiring that "the user uses the input means." 430 F.3d at 1384. *Rembrandt Data Technologies, LP v. AOL, LLC*, 641 F.3d 1331, 1339–40 (Fed. Cir. 2011), condemned a bare "transmitting" step untethered to any recited transmitter. *Courtesy Products, L.L.C. v. Hamilton Beach Brands, Inc.*, No. 13-2012-SLR, 2015 WL 7295436, at *5 (D. Del. Nov. 18, 2015), condemned present-participial method steps such as "the brewing machine heating water." *MasterMine* states the governing rule: functional language is permissible where it "does not appear in isolation, but rather, is specifically tied to structure." 874 F.3d at 1316. The challenged clauses here tie function to a named component, such as a "power controller," a "tuning circuit," a "processor," or a "power sharing logic." Google's ordinary-English example ("the committee is to

review the proposal," Dkt. 86 at 11) shows only that context matters: a committee can be obligated because a committee is an actor, while a "power controller" or "power sharing logic" cannot be. Thus, read in their "technical and claim-drafting context," the challenged clauses describe what those structures are capable of doing. Dkt. 80 at 23. And *MasterMine* answers Google's timing concern directly: "infringement occurs when one makes, uses, offers to sell, or sells the claimed system," 874 F.3d at 1316, and a manufacturer knows at sale whether the logic it ships is capable of allocating the power budget as Claim 15 requires. See Dkt. 80 at 24.

Indefiniteness is the one objection Google styles purely as legal error, and the *Markman* Order applied the very cases that "control the analysis here." Dkt. 80 at 21. The Court should overrule the objection and confirm that the challenged claims are not indefinite: every "is to" clause ties its function to a recited structure.

## IV. CONCLUSION

For these reasons, Daedalus Prime LLC respectfully requests that the Court overrule Google's objections and adopt the Claim Construction Order and Memorandum (Dkt. 80) in full.

Dated: August 17, 2026

Respectfully submitted,

*/s/ Richard Koehl*

Garland Stephens
Texas Bar No. 24053910
garland@bluepeak.law
Justin Constant
Texas Bar No. 24067551
justin@bluepeak.law
Richard Koehl
Texas Bar No. 24115754
richard@bluepeak.law
John Brinkmann
Texas Bar No. 24068091
john@bluepeak.law
**BLUE PEAK LAW GROUP LLP**
3139 West Holcombe Blvd, PMB 8160
Houston, TX 77025

Telephone: 281-972-3036

Robert Magee
California Bar No. 271443
robert@bluepeak.law
**BLUE PEAK LAW GROUP LLP**
3790 El Camino Real, PMB 846
Palo Alto, CA 94306-3314
Telephone: 281-972-3036

Heng Gong
New York Bar No. 4930509
heng@bluepeak.law
Natalie Liber
New York Bar No. 4672762
natalie@bluepeak.law
**BLUE PEAK LAW GROUP LLP**
PO Box 20006
New York, NY 10025-1510
Telephone: 281-972-3036

*Of Counsel:*
Mark D. Siegmund
State Bar No. 24117055
**CHERRY JOHNSON SIEGMUND JAMES PLLC**
Bridgeview Center
7901 Fish Pond Road, 2nd Floor
Waco, Texas 76710
Telephone: (254) 732-2242
msiegmund@cjsjlaw.com

William D. Ellerman
Texas Bar No. 24007151
**CHERRY JOHNSON SIEGMUND JAMES PLLC**
One Glen Lakes Tower
8140 Walnut Hill Lane, Suite 105
Dallas, Texas 75231
Telephone: (254) 732-2242
wellerman@cjsjlaw.com
*Attorneys for Plaintiff Daedalus Prime LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 17, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Richard Koehl*
Richard Koehl