[redacted]

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| DAEDALUS PRIME LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>GOOGLE LLC,<br><br>*Defendant*. | Civil Action No. 7:25-cv-00313-DC-DTG<br><br>**JURY TRIAL DEMANDED**<br><br>[redacted] |

**FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT AND DAMAGES**
**AND DEMAND FOR JURY TRIAL**

Pursuant to the parties' Joint Notice and Stipulations of Dismissal of Certain of Plaintiff's Claims Without Prejudice (Dkt. 37) and the Court's Order extending through November 3, 2026 the period for re-pleading pre-suit indirect and willful infringement (Dkt. 92), Plaintiff Daedalus Prime LLC ("Daedalus" or "Plaintiff") files this First Amended Complaint for Patent Infringement and Damages against Google LLC ("Google" or "Defendant") and alleges as follows:

## INTRODUCTION

1. The novel inventions disclosed in U.S. Patent Nos. 8,775,833 (the "'833 Patent"); 8,898,494 (the "'494 Patent"); 10,372,197 (the "'197 Patent"); 8,984,228 (the "'228 Patent"); and 11,507,167 (the "'167 Patent") (collectively, the "Asserted Patents") in this matter were invented by Intel Corporation ("Intel"). Intel pioneered the field of microprocessor and semiconductor chip technology. This technology provides capabilities that are crucial to data center products and electronic devices such as personal computers and smartphones. Every year, Intel spends billions of dollars on research and development to invent, market, and sell new technology, and Intel

[redacted]

obtains patents on many of the novel inventions that come out of that work, including the Asserted Patents.

**THE PARTIES**

2. Plaintiff is the current owner and assignee of the Asserted Patents.

3. Plaintiff is a Delaware limited liability company with its principal place of business located at 75 South Riverside Avenue, Unit B/C, Croton-on-Hudson, NY 10520.

4. On information and belief, Defendant Google LLC ("Google") is a limited liability company organized and existing under the laws of Delaware. Google may be served with process through its registered agent, the Corporation Service Company d/b/a/ CSC-Lawyers Inc., at 211 E. 7th Street, Suite 620, Austin, Texas 78701.

5. On information and belief, Defendant has one or more regular established places of business in this District, including at least at 500 West Second Street, Austin, Texas, 78701; 601 West Second Street, Austin, Texas 78701; 901 East 5th Street, Austin, Texas 78701; 500 Chichon Street B, Austin, Texas 78702; 3601 South Congress Avenue, J-100, Austin, Texas 78704; 304 East 24th Street, Austin, Texas 78705; 845 Interchange Boulevard, Austin, Texas 78721; 6013 Technical Center Drive, Austin, Texas 78721; 4100 Smith School Road, Austin, Texas 78744; 807 Ruby Drive, Austin, Texas 78753; 10200 McKalla Place, Austin, Texas 78758; 2350 South Midkiff Road, Midland, Texas 79701; and 1100 West County Road, Midland, Texas.

6. On information and belief, Defendant directly and/or indirectly develops, designs, manufactures, distributes, markets, offers to sell and/or sells infringing products and services in the United States, including in the Western District of Texas, and otherwise direct infringing activities to this District in connection with their products and services as set forth in this Complaint.

[redacted]

**JURISDICTION**

7. This civil action arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, including without limitation 35 U.S.C. §§ 271, 281, 283, 284, and 285. Accordingly, this Court has subject matter jurisdiction under, *inter alia*, 28 U.S.C. §§ 1331 and 1338(a).

8. Google designs and sells semiconductors and/or processors that are used in mobile phones and data centers in the United States. For example, upon information and belief, Google sells the Tensor system on chips (SOCs)[1], including Tensor G1, G2, G3, and G4 SOCs for Google's Pixel mobile phones. Google also designs and uses the Axion microprocessor in the U.S.[2]


PRODUCTS › GOOGLE PIXEL

Google Tensor is a milestone for machine learning

Oct 19, 2021 · 4 min read

Monika Gupta
VP, Product Management

Share

[1] https://blog.google/products/pixel/introducing-google-tensor/.
[2] https://cloud.google.com/blog/products/compute/introducing-googles-new-arm-based-cpu.

[redacted]




9. This Court has personal jurisdiction over Google at least because Google designs, sells, offers for sale, uses, makes and/or imports products that are and have been used, offered for sale, sold, and purchased in the Western District of Texas, and Google has committed, and continues to commit, acts of infringement in the Western District of Texas, has conducted business in the Western District of Texas, and/or has engaged in continuous and systematic activities in the Western District of Texas.

10. Under 28 U.S.C. §§ 1391(b)-(d) and 1400(b), venue is proper in this judicial district as to Google at least because Google has committed acts of infringement within this judicial district giving rise to this action.

11. On information and belief, Defendant or Defendant's subsidiaries have physical facilities and employees in Texas, including the Western District of Texas.

[redacted]

12. On information and belief, Defendant or Defendant's subsidiaries maintain multiple offices in Texas. For example, a 2019 news article reported that Google leased two new office spaces in Austin and was developing a $600 million data center in Midlothian.[3] A 2022 news article reported that Google announced a new development in Austin called Block 185.[4] On information and belief, Google was first registered to do business in the State of Texas on November 17, 2006,[5] and has maintained offices in Texas since at least 2007. Google has thousands of employees in the Austin area alone.[6]

13. On information and belief, Defendant or Defendant's subsidiaries have numerous employees and job postings in this District specialized in CPU design:




---

[3] https://www.builtinaustin.com/articles/google-new-offices-austin-data-center-midlothian#:~:text=Built%20In%20Austin-,Google%20Is%20Opening%20New%20Offices%20in%20Austin%20and%20a%20Data,million%20data%20center%20in%20Midlothian.&text=Google%20has%20big%20plans%20for,downtown%20Austin%20(pictured%20below).&text=Google%20already%20has%20over%201%2C100,into%20that%20building%20in%202023.

[4] https://www.facilitiesnet.com/doorshardware/tip/Austins-Growth-Fueled-by-Googles-Block-185--53814#:~:text=Austin's%20Newest%20Neighbor,main%20requirements:%20security%20and%20aesthetics.

[5] *See* https://mycpa.cpa.state.tx.us/coa/search.do (search for "Google LLC" under "Entity Name") (last visited Oct. 21, 2024)

[6] https://www.statesman.com/story/business/2021/08/13/austin-google-exec-companys-future-really-bright-in-city-tx/5488231001/

[redacted]

Senior Network Engineer, Google Enterprise Networking

Google Austin, TX, USA Mid

Minimum qualifications

- Bachelor's degree in Computer Science, Engineering, a related field, or equivalent practical experience.
- 6 years of experience with network routing protocols, design, and troubleshooting, working with network equipment providers.
- Experience with planning and designing networks (e.g., multiple sites, multiple products, etc.).
- Experience with WAN technologies/protocols in three or more of the following: SR/MPLS, BGP, MACsec, IPsec, SDWAN, inter-domain IP Routing Policy, DWDM and TCP/IP. Encryption, key management, zone based network segmentation.

Learn more

https://www.google.com/about/careers/applications/jobs/results?location=Texas%2C%20USA

CPU Architecture Lead

Google Poughkeepsie, NY, USA; Austin, TX, USA; +2 more

Advanced

Minimum qualifications

- Bachelor's degree in Electrical Engineering, Computer Engineering, Computer Science, a related field, or equivalent practical experience.
- 10 years of experience in high-performance microprocessor architecture, micro-architecture, performance, and design.
- Experience in performance modeling, analysis, correlation, and workload characterization.
- Experience in CPU architecture with CPU blocks, and with C/C++ and scripting languages.

Learn more

Senior Lead CPU RTL Engineer

Google Austin, TX, USA Advanced

Minimum qualifications

- Bachelor's degree in Electrical Engineering, Computer Engineering, Computer Science, or a related field, or equivalent practical experience.
- 10 years of experience with digital logic design principles, RTL design concepts, and languages such as Verilog or SystemVerilog.
- Experience with RTL language (e.g. SystemVerilog) and related design processes (e.g., Lint, UPF).

Learn more

https://www.google.com/about/careers/applications/jobs/results?q=cpu

**THE ASSERTED PATENTS**

14. The Intel inventions contained in the Asserted Patents in this case relate to groundbreaking improvements to microprocessor circuitry, and have particular application in important products in consumer electronics and AI, including smartphones, tablets, and data center products.

[redacted]

## U.S PATENT NO. 8,775,833

15. On July 8, 2014, the United States Patent Office duly and legally issued the ’833 Patent, entitled “Dynamically Allocating a Power Budget Over Multiple Domains of a Processor.” See Appendix A.

16. Daedalus is the owner and assignee of all right, title, and interest in and to the ’833 Patent, including the right to assert all causes of action arising under the ’833 Patent and the right to sue and obtain any remedies for past, present, or future infringement.

17. The ’833 Patent describes, among other things, a method for determining a power budget for a multi-domain processor for a current time interval, determining a portion of the power budget to be allocated to first and second domains of the processor, and controlling a frequency of the domains based on the allocated portions. ’833 Patent, Abstract.

18. The novel inventions of the ’833 Patent are recited in the claims. For example, claim 14 of the ’833 Patent, which depends from claim 13, recites:

> 13. A system comprising:
>
> a multicore processor having a first domain including a plurality of cores, a second domain including a graphics engine, and a third domain including system agent circuitry, the third domain to operate at a fixed power budget and including a power sharing logic to dynamically allocate a variable power budget between the first and second domains based at least in part on a first power sharing value for the first domain stored in a first storage and a second power sharing value for the second domain stored in a second storage; and
>
> a dynamic random access memory (DRAM) coupled to the multicore processor.
>
> 14. The system of claim 13, wherein the power sharing logic to determine the variable power budget for a current time interval and to allocate a first portion of the variable power budget to the first domain according to the first power sharing value, and to allocate a second portion of the variable power budget to the second domain according to the second power sharing value.

’833 Patent, Cls. 13 – 14.

19. Figure 8 of the ’833 Patent, reproduced below, shows a block diagram of a system

[redacted]

of one embodiment of the claimed invention. "As shown in FIG. 8, multiprocessor system 500 is a point-to-point interconnect system, and includes a first processor 570 and a second processor 580 coupled via a point-to-point interconnect 550[,]" and "each of processors 570 and 580 may be multicore processors." '833 Patent, 10:31-36. The system also includes a memory 532 and a memory 534, "which may be portions of system memory (e.g., DRAM) locally attached to the respective processors." *Id.* 10:47-50. The system also includes a high performance graphics engine 538. *Id.* 10:55-57.



FIG. 8

'833 Patent, Fig. 8.

**<u>U.S. PATENT NO. 8,898,494</u>**

20. On November 25, 2014, the United States Patent Office duly and legally issued the

[redacted]

’494 Patent, entitled “Power Budgeting Between a Processing Core, A Graphics Core, And a Bus on an Integrated Circuit When a Limit Is Reached.” See Appendix B.

21. Daedalus is the owner and assignee of all right, title, and interest in and to the ’494 Patent, including the right to assert all causes of action arising under the ’494 Patent and the right to sue and obtain any remedies for past, present, or future infringement.

22. The ’494 Patent describes, among other things, a method for efficiently balancing performance and power between processing elements based on measured workloads. ’494 Patent, Abstract.

23. The novel inventions of the ’494 Patent are recited in the claims. For example, claim 1 of the ’494 Patent recites:

> 1. A processor comprising:
>
> an integrated circuit including:
>
> a first core;
>
> a cache memory;
>
> a communication bus coupled to the first core, the communication bus to connect the first core and the cache memory;
>
> a core workload monitor configured to determine a core workload for the first core;
>
> a bus workload monitor configured to determine a bus workload for the communication bus; and
>
> balancing control adapted to receive the bus workload from the bus workload monitor and to dynamically tune power allocation between the first core and the communication bus based on a power limit for the integrated circuit and a comparison between the bus workload and a bus workload threshold, the power limit corresponding to a maximum thermal dissipation capacity for the integrated circuit, wherein a power consumption of one of the first core and the communication bus is to be reduced, the power consumption reduction to be limited to maintain operation of the one of the first core and the communication bus above a low limit.

’494 Patent, Cl. 1.

24. Figure 6 of the ’494 Patent, reproduced below, shows a block diagram of a system of one embodiment of the claimed invention. In the figure, “Graphics Processing Unit (GPU) cores

[redacted]

605 and Central Processing Unit (CPU) cores 610 are on the same die, integrated circuit, package, or other grouping, which may be subject to an overall power or performance limit." '494 Patent, 11:48-52. Workload monitors 606 and 611 are associated with GPU cores 605 and CPU cores 610. *Id.* 11:60-67. Device driver 620 reads workload information from workload monitor 606. *Id.* at 12:1-3. Power management module 630 makes the power balancing decision and sets a performance limit for one or more of CPU cores or GPU cores. *Id.* at 12:20-41.




FIG. 6

'494 Patent, Fig. 6.

**U.S. PATENT NO. 10,372,197**

25. On August 6, 2019, the United States Patent Office duly and legally issued the '197 Patent, entitled "User Level Control of Power Management Policies." See Appendix C.

[redacted]

26. Daedalus is the owner and assignee of all right, title, and interest in and to the ’197 Patent, including the right to assert all causes of action arising under the ’197 Patent and the right to sue and obtain any remedies for past, present, or future infringement.

27. The ’197 Patent describes, among other things, a multicore processor comprising a power controller that receives a workload configuration input and a plurality of energy performance bias values, determines a global energy performance bias value to update one or more power settings of one or more management features. ’197 Patent, Fig. 4, 6:61-7:14; 7:55-8:4.

28. The novel features of the invention are recited in the claims. For example, claim 1 of the ’197 Patent recites:

> 1. A processor comprising:
>
> a plurality of cores;
>
> a cache memory;
> an interconnect to couple the plurality of cores and the cache memory; and
>
> a power controller to control a plurality of power management features of the processor, wherein the power controller includes a tuning circuit to receive a workload configuration input regarding a workload, receive a plurality of energy performance bias (EPB) values and determine a global EPB value based thereon, and update at least one setting of at least one of the plurality of power management features based on the workload configuration input and the global EPB value.

*Id.* at Cl. 1.

29. Figure 4 of the ’197 Patent, reproduced below, is a block diagram of a processor in accordance with an embodiment of the inventions disclosed in the ’197 Patent. As shown in Figure 4, processor 300 may be a multicore processor including a plurality of cores 310a-310n. The various cores may be coupled via an interconnect 315 to a system agent or uncore 320 that includes various components. The uncore 320 may include a shared cache 330 which may be a last level cache. In addition, the uncore may include a power control unit 355.

[redacted]




FIG. 4

’197 Patent, Fig. 4.

**U.S PATENT NO. 8,984,228**

30. On March 17, 2015, the United States Patent Office duly and legally issued the ’228 Patent, entitled “Providing Common Caching Agent for Core and Integrated Input/Output (IO) Module.” See Appendix D.

31. Daedalus is the owner and assignee of all right, title, and interest in and to the ’228 Patent, including the right to assert all causes of action arising under the ’228 Patent and the right to sue and obtain any remedies for past, present, or future infringement.

32. The ’228 Patent describes, among other things, a multicore processor having a plurality of cores, a shared cache memory, an integrated input/output module to interface between the multicore processor and at least one IO device coupled to the multicore processor, and a caching agent to perform cache coherency operations for the plurality of cores and the integrated input/output module. ’228 Patent, Abstract. As the ’228 Patent explains, “problems arise once an IO component is integrated on the same chip with a multiprocessor. Traditional IO integration treats the IO component as a separate caching agent, meaning that dedicated logic is associated

[redacted]

with the IO component to handle cache coherency operations. When an IO agent is performing read/write operations to main memory, it has to snoop the CPU side cache to maintain cache coherency." *Id*. at 1:19-25. The integrated input/output module, however, "reduces the amount of snoop traffic needed since a reduced number of caching agents per system can be realized." *Id*. at 3:8-9.

33. The novel features of the invention are recited in the claims. For example, claim 1 of the '228 Patent recites:

> 1. An apparatus comprising:
>
> a multicore processor including a plurality of cores, a shared cache memory, an integrated input/output (IIO) module to interface between the multicore processor and at least one IO device coupled to the multicore processor, and a caching agent to perform cache coherency operations for the plurality of cores and the IIO module, the caching agent a single caching agent for the multicore processor and including a plurality of distributed portions each associated with a corresponding one of the plurality of cores.

'228 Patent, Cl. 1.

34. Figure 6 of the '228 Patent, reproduced below, shows a block diagram of a portion of a system of one embodiment of the claimed invention. As shown in Figure 6, "processor **700** includes a distributed configuration having partitions or slices each including a core **710** and a partition of a caching agent **715** and a LLC **720**. Note that while distributed caching agents are shown, understand that these distributed portions form a single caching agent, and which is configured to handle cache coherency operations both for the cores as well as an IIO module **750**." *Id*. at 6:23-29.

[redacted]




FIG. 6

’228 Patent, Fig. 6.

## U.S PATENT NO. 11,507,167

35. On November 22, 2022, the United States Patent Office duly and legally issued the ’167 Patent, entitled “Controlling Operating Voltage of a Processor.” See Appendix E.

36. Daedalus is the owner and assignee of all right, title, and interest in and to the ’167 Patent, including the right to assert all causes of action arising under the ’167 Patent and the right to sue and obtain any remedies for past, present, or future infringement.

37. The ’167 Patent describes, among other things, a processor that includes a core domain with a plurality of cores, and a power controller capable of instructing a voltage regulator to increase the operating voltage. ’167 Patent, Abstract. As the ‘167 Patent explains, “there is a vital need for energy efficiency and conservation associated with integrated circuits.” *Id.* at 1:44-45. The ‘167 Patent explains that “voltage transitions within a processor may be segmented into two or more segments. In an embodiment, a dispatcher or other control logic of the processor may

[redacted]

controllably cause such multi-phase voltage ramps. In operation, a first segment is a transition to an interim or safe voltage level, which is at a sufficient voltage level to cover all active agents (and at least one additional agent) running at a lower frequency in a particular transition. Any additional voltage increase to enable a pending frequency increase requested for one or more of the agents is handled in a second segment of the transition, which can occur after a low power state exit of the additional agent. [...] In this way, a reduced latency for allowing an agent to exit a low power state may be realized." *Id*. at 2:28-46.

38. The novel features of the invention are recited in the claims. For example, claim 1 of the '167 Patent recites:

> 1. A multicore processor comprising:
>
> a plurality of cores, wherein each core comprises a processor configured to operate at an independent voltage and frequency level;
>
> wherein at least one core is coupled to a plurality of levels of cache memory;
>
> a power control unit configured to cause an operating voltage to be updated for one or more of the cores in response to receiving a request to alter an operating state of the one or more of the cores;
>
> wherein the power control unit is further configured to:
>
> receive a first request to alter an operating state of a first core to a modified operating state, the modified operating state operating at a third voltage level;
>
> responsive to the first request, cause a voltage regulator to increase an operating voltage of the first core from a first voltage level to a second voltage level lower than the third voltage level;
>
> enable a second core to exit an inactive state and enter an active state while the operating voltage of the first core is at the second voltage level;
>
> increase the operating voltage of the first core from the second voltage level to the third voltage level after the second core enters the active state.

'167 Patent, Cl. 1.

39. Figure 1 of the '167 Patent, reproduced below, shows a block diagram of a portion of a system of one embodiment of the claimed invention. "As shown in FIG. **1**, system **100** may

[redacted]

include various components, including a processor **110** which as shown is a multicore processor. Processor **110** may be coupled to a power supply **150** via an external voltage regulator **160**, which may perform a first voltage conversion to provide a primary regulated voltage to processor **110**." *Id*. at 2:49-54.




FIG. 1

'167 Patent, Fig. 1.

## <u>GOOGLE'S PRE-SUIT KNOWLEDGE OF THE '833 AND '494 PATENTS</u>

### A. Daedalus's Enforcement of the '833 and '494 Patents Against Samsung

40. On September 12, 2022, Daedalus sued Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. in the Eastern District of Texas, alleging that Samsung smartphones, including the Samsung Galaxy S21 FE 5G, infringe the '833 and '494 Patents. *Daedalus Prime LLC v. Samsung Elecs. Co.,* No. 2:22-cv-00352 (E.D. Tex.).

[redacted]

41. In early 2023, Samsung and Qualcomm petitioned for *inter partes* review of the ’833 Patent (IPR2023-00550, filed February 2, 2023), and Samsung petitioned for *inter partes* review of the ’494 Patent (IPR2023-00617, filed February 27, 2023).

42. Samsung has not only been an accused infringer of the ’833 and ’494 Patents. [redacted]

## B. Google’s Patent Organization Received Patent-Specific Notice of the ’833 and ’494 Patents

43. [redacted]

44. [redacted]

45. [redacted]

[redacted]

[redacted]

46. [redacted]

47. [redacted]

48. [redacted]

49. [redacted]

[redacted]

50. [redacted]

[redacted]

51. [redacted]

## C. Google Knew of the ’833 and ’494 Patents and of Its Infringement

52. Based on the facts alleged above, on information and belief, Google had actual knowledge of the ’833 Patent no later than [redacted], and of the ’494 Patent no later than [redacted]. On information and belief, Google knew of both patents, of their assignment from Intel to Plaintiff, and of their assertion against Samsung smartphones as early as [redacted].

53. The ’833 Patent generally relates to the allocation of a variable power budget between the processing-core and graphics domains of a multicore processor. The ’494 Patent generally relates to tuning power allocation between a processor core and its communication bus within an integrated-circuit power limit. The patent titles reported to Google’s patent attorneys disclosed that subject matter on their face. On information and belief, Google designs the Tensor

[redacted]

SOCs, and Google maintains and publishes the Pixel kernel source and device configuration that govern how Tensor SOCs allocate power among their CPU cores, GPU, and interconnect, including the Active Clock and Power Management drivers and Google's configuration of the Intelligent Power Allocation thermal governor for Pixel devices. Google therefore knew how its own Tensor SOCs allocate power among those domains.

54. [redacted]

55. [redacted]

[redacted]

56. [redacted]

57. [redacted]

58. [redacted]

[redacted]

**<u>FIRST COUNT</u>**

**<u>(Infringement of U.S Patent No. 8,775,833)</u>**

59. Daedalus incorporates by reference the allegations set forth in the foregoing paragraphs of this First Amended Complaint as though fully set forth herein.

60. The asserted claims of the ’833 Patent are valid and enforceable. In particular, the ’833 Patent underwent an *inter parte* review, where the Patent Trial and Appeal Board (PTAB) found that the petitioner failed to establish the unpatentability of claims 14, 15, 17, and 18.

[redacted]

IPR2023-01335, Paper 27.

61. On information and belief, in violation of 35 U.S.C. § 271(a), Google has directly infringed and continues to directly infringe one or more claims of the '833 Patent, including at least Claim 14 of the ' 833 Patent, in the state of Texas, in this judicial district, and elsewhere in the United States by, among other things, making, using, selling, offering for sale, and/or importing into the United States products that embody one or more of the inventions claimed in the '833 Patent, including but not limited to products including Tensor SOCs, and all reasonably similar products (the "Accused Products"). See Exhibit A.

62. Further, on information and belief, since at least the filing of Plaintiff's original Complaint, Google has actively induced and/or contributed to infringement of at least Claim 14 of the '833 Patent in violation of at least 35 U.S.C. § 271(b) and (c).

63. The Accused Products directly infringe at least Claim 14 of the '833 Patent. On information and belief, since at least the filing of Plaintiff's original Complaint, Google's inducements in violation of 35 U.S.C. § 271(b) include, without limitation and with specific intent to encourage infringement, knowingly inducing consumers to use the Accused Products within the United States in the ordinary, customary, and intended way by, directly or through intermediaries, supplying the Accused Products to consumers within the United States and instructing and encouraging such customers to use the Accused Products in the ordinary, customary, and intended way, which Google knew infringes at least Claim 14 of the '833 Patent, or, alternatively, was willfully blind to the infringement.

64. On information and belief, since at least the filing of Plaintiff's original Complaint, Google's inducements in violation of 35 U.S.C. § 271(b) further include, without limitation and with specific intent to encourage the infringement, knowingly inducing customers to commit acts

[redacted]

of infringement with respect to the Accused Products within the United States, by, directly or through intermediaries, instructing and encouraging such customers to import, make, use, sell, offer to sell, or otherwise commit acts of infringement with respect to the Accused Products in the United States, which Google knew infringes at least Claim 14 of the ’833 Patent, or, alternatively, was willfully blind to the infringement.

65. On information and belief, since at least the filing of Plaintiff’s original Complaint, in violation of 35 U.S.C. § 271(c), Google’s contributory infringement further includes offering to sell or selling within the United States, or importing into the United States, components of the patented invention of at least Claim 14 of the ’833 Patent, constituting a material part of the invention. On information and belief, Google knows and has known the same to be especially made or especially adapted for use in an infringement of the ’833 Patent, and such components are not a staple article or commodity of commerce suitable for substantial noninfringing use.

66. Google is not licensed or otherwise authorized to practice the claims of the ’833 Patent.

67. Thus, by its acts, Google has injured Daedalus and is liable to Daedalus for directly and/or indirectly infringing one or more claims of the ’833 Patent, whether literally or under the doctrine of equivalents, including without limitation Claim 14.

68. Google has known of the ’833 Patent since at least [redacted], and on information and belief since at least [redacted], as alleged above. At a minimum, Google has knowledge of the ’833 Patent at least as of the filing of Plaintiff’s original Complaint. Despite that knowledge, and knowing (or, in the alternative, willfully blind to the high probability) that the Accused Products infringe, Google has continued to make, use, sell, offer to sell, and import the Accused Products. Accordingly, Google’s infringement of the ’833 Patent has been and continues

[redacted]

to be deliberate, intentional, and willful, and this is therefore an exceptional case warranting an award of enhanced damages and attorneys' fees and costs pursuant to 35 U.S.C. §§ 284 and 285.

69. As a result of Google's infringement of the '833 Patent, Daedalus has suffered monetary damages, and seeks recovery, in an amount to be proven at trial, adequate to compensate for Google's infringement, but in no event less than a reasonable royalty with interest and costs.

70. On information and belief, Google will continue to infringe the '833 Patent unless enjoined by this Court. Google's infringement of Plaintiff's rights under the '833 Patent will continue to damage Daedalus, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by this Court.

## SECOND COUNT

## (Infringement of U.S Patent No. 8,898,494)

71. Daedalus incorporates by reference the allegations set forth in the foregoing paragraphs of this First Amended Complaint as though fully set forth herein.

72. The claims of the '494 Patent are valid and enforceable. In particular, the '494 Patent underwent an *inter parte* review, where the Patent Trial and Appeal Board (PTAB) found that the petitioner failed to establish the unpatentability of claims 1-7, 13-15, 17, and 18. IPR2023-01343, Paper 21.

73. On information and belief, in violation of 35 U.S.C. § 271(a), Google has directly infringed and continues to directly infringe one or more claims of the '494 Patent, including at least Claim 1 of the '494 Patent, in the state of Texas, in this judicial district, and elsewhere in the United States by, among other things, making, using, selling, offering for sale, and/or importing into the United States products that embody one or more of the inventions claimed in the '494 Patent, including but not limited to products including Tensor SOCs or Axion microprocessors,

[redacted]

and all reasonably similar products (the "Accused Products"). See Exhibit B.

74. Further, on information and belief, since at least the filing of Plaintiff's original Complaint, Google has actively induced and/or contributed to infringement of at least Claim 1 of the '494 Patent in violation of at least 35 U.S.C. § 271(b) and (c).

75. The Accused Products directly infringe at least Claim 1 of the '494 Patent. On information and belief, since at least the filing of Plaintiff's original Complaint, Google's inducements in violation of 35 U.S.C. § 271(b) include, without limitation and with specific intent to encourage infringement, knowingly inducing consumers to use the Accused Products within the United States in the ordinary, customary, and intended way by, directly or through intermediaries, supplying the Accused Products to consumers within the United States and instructing and encouraging such customers to use the Accused Products in the ordinary, customary, and intended way, which Google knew infringes at least Claim 1 of the '494 Patent, or, alternatively, was willfully blind to the infringement.

76. On information and belief, since at least the filing of Plaintiff's original Complaint, Google's inducements in violation of 35 U.S.C. § 271(b) further include, without limitation and with specific intent to encourage the infringement, knowingly inducing customers to commit acts of infringement with respect to the Accused Products within the United States, by, directly or through intermediaries, instructing and encouraging such customers to import, make, use, sell, offer to sell, or otherwise commit acts of infringement with respect to the Accused Products in the United States, which Google knew infringes at least Claim 1 of the '494 Patent, or, alternatively, was willfully blind to the infringement.

77. On information and belief, since at least the filing of Plaintiff's original Complaint, in violation of 35 U.S.C. § 271(c), Google's contributory infringement further includes offering to

[redacted]

sell or selling within the United States, or importing into the United States, components of the patented invention of at least Claim 1 of the '494 Patent, constituting a material part of the invention. On information and belief, Google knows and has known the same to be especially made or especially adapted for use in an infringement of the '494 Patent, and such components are not a staple article or commodity of commerce suitable for substantial noninfringing use.

78. Google is not licensed or otherwise authorized to practice the claims of the '494 Patent.

79. Thus, by its acts, Google has injured Daedalus and is liable to Daedalus for directly and/or indirectly infringing one or more claims of the '494 Patent, whether literally or under the doctrine of equivalents, including without limitation Claim 1.

80. Google has known of the '494 Patent since at least [redacted], and on information and belief since at least [redacted], as alleged above. At a minimum, Google has knowledge of the '494 Patent at least as of the filing of Plaintiff's original Complaint. Despite that knowledge, and knowing (or, in the alternative, willfully blind to the high probability) that the Accused Products infringe, Google has continued to make, use, sell, offer to sell, and import the Accused Products. Accordingly, Google's infringement of the '494 Patent has been and continues to be deliberate, intentional, and willful, and this is therefore an exceptional case warranting an award of enhanced damages and attorneys' fees and costs pursuant to 35 U.S.C. §§ 284 and 285.

81. As a result of Google's infringement of the '494 Patent, Daedalus has suffered monetary damages, and seeks recovery, in an amount to be proven at trial, adequate to compensate for Google's infringement, but in no event less than a reasonable royalty with interest and costs.

82. On information and belief, Google will continue to infringe the '494 Patent unless enjoined by this Court. Google's infringement of Plaintiff's rights under the '494 Patent will

[redacted]

continue to damage Daedalus, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by this Court.

## THIRD COUNT

## (Infringement of U.S Patent No. 10,372,197)

83. Daedalus incorporates by reference the allegations set forth in the foregoing paragraphs of this First Amended Complaint as though fully set forth herein.

84. The claims of the ’197 Patent are valid and enforceable.

85. On information and belief, in violation of 35 U.S.C. § 271(a), Google has directly infringed and continues to directly infringe one or more claims of the ’197 Patent, including at least Claim 1 of the ’197 Patent, in the state of Texas, in this judicial district, and elsewhere in the United States by, among other things, making, using, selling, offering for sale, and/or importing into the United States products that embody one or more of the inventions claimed in the ’197 Patent, including but not limited to products including Tensor SOCs or Axion microprocessors, and all reasonably similar products (the “Accused Products”). See Exhibit C.

86. Further, on information and belief, since at least the filing of Plaintiff’s original Complaint, Google has actively induced and/or contributed to infringement of at least Claim 1 of the ’197 Patent in violation of at least 35 U.S.C. § 271(b) and (c).

87. The Accused Products directly infringe at least Claim 1 of the ’197 Patent. On information and belief, since at least the filing of Plaintiff’s original Complaint, Google’s inducements in violation of 35 U.S.C. § 271(b) include, without limitation and with specific intent to encourage infringement, knowingly inducing consumers to use the Accused Products within the United States in the ordinary, customary, and intended way by, directly or through intermediaries, supplying the Accused Products to consumers within the United States and instructing and

[redacted]

encouraging such customers to use the Accused Products in the ordinary, customary, and intended way, which Google knew infringes at least Claim 1 of the ’197 Patent, or, alternatively, was willfully blind to the infringement.

88. On information and belief, since at least the filing of Plaintiff’s original Complaint, Google’s inducements in violation of 35 U.S.C. § 271(b) further include, without limitation and with specific intent to encourage the infringement, knowingly inducing customers to commit acts of infringement with respect to the Accused Products within the United States, by, directly or through intermediaries, instructing and encouraging such customers to import, make, use, sell, offer to sell, or otherwise commit acts of infringement with respect to the Accused Products in the United States, which Google knew infringes at least Claim 1 of the ’197 Patent, or, alternatively, was willfully blind to the infringement.

89. On information and belief, since at least the filing of Plaintiff’s original Complaint, in violation of 35 U.S.C. § 271(c), Google’s contributory infringement further includes offering to sell or selling within the United States, or importing into the United States, components of the patented invention of at least Claim 1 of the ’197 Patent, constituting a material part of the invention. On information and belief, Google knows and has known the same to be especially made or especially adapted for use in an infringement of the ’197 Patent, and such components are not a staple article or commodity of commerce suitable for substantial noninfringing use.

90. Google is not licensed or otherwise authorized to practice the claims of the ’197 Patent.

91. Thus, by its acts, Google has injured Daedalus and is liable to Daedalus for directly and/or indirectly infringing one or more claims of the ’197 Patent, whether literally or under the doctrine of equivalents, including without limitation Claim 1.

[redacted]

92. At a minimum, Google has knowledge of the ’197 Patent at least as of the filing of Plaintiff’s original Complaint. Accordingly, Google’s infringement of the ’197 Patent has been and continues to be deliberate, intentional, and willful, and this is therefore an exceptional case warranting an award of enhanced damages and attorneys’ fees and costs pursuant to 35 U.S.C. §§ 284 and 285.

93. As a result of Google’s infringement of the ’197 Patent, Daedalus has suffered monetary damages, and seeks recovery, in an amount to be proven at trial, adequate to compensate for Google’s infringement, but in no event less than a reasonable royalty with interest and costs.

94. On information and belief, Google will continue to infringe the ’197 Patent unless enjoined by this Court. Google’s infringement of Plaintiff’s rights under the ’197 Patent will continue to damage Daedalus, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by this Court.

**FOURTH COUNT**

**(Infringement of U.S Patent No. 8,984,228)**

95. Daedalus incorporates by reference the allegations set forth in the foregoing paragraphs of this First Amended Complaint as though fully set forth herein.

96. The claims of the ’228 Patent are presumed valid and enforceable.

97. On information and belief, in violation of 35 U.S.C. § 271(a), Google has directly infringed and continues to directly infringe one or more claims of the ’228 Patent, including at least Claim 1 of the ’228 Patent, in the state of Texas, in this judicial district, and elsewhere in the United States by, among other things, making, using, selling, offering for sale, and/or importing into the United States products that embody one or more of the inventions claimed in the ’228 Patent, including but not limited to products including Tensor SOCs or Axion microprocessors,

[redacted]

and all reasonably similar products (the "Accused Products"). See Exhibit D.

98. Further, on information and belief, since at least the filing of Plaintiff's original Complaint, Google has actively induced and/or contributed to infringement of at least Claim 1 of the '228 Patent in violation of at least 35 U.S.C. § 271(b) and (c).

99. The Accused Products directly infringe at least Claim 1 of the '228 Patent. On information and belief, since at least the filing of Plaintiff's original Complaint, Google's inducements in violation of 35 U.S.C. § 271(b) include, without limitation and with specific intent to encourage infringement, knowingly inducing consumers to use the Accused Products within the United States in the ordinary, customary, and intended way by, directly or through intermediaries, supplying the Accused Products to consumers within the United States and instructing and encouraging such customers to use the Accused Products in the ordinary, customary, and intended way, which Google knew infringes at least Claim 1 of the '228 Patent, or, alternatively, was willfully blind to the infringement.

100. On information and belief, since at least the filing of Plaintiff's original Complaint, Google's inducements in violation of 35 U.S.C. § 271(b) further include, without limitation and with specific intent to encourage the infringement, knowingly inducing customers to commit acts of infringement with respect to the Accused Products within the United States, by, directly or through intermediaries, instructing and encouraging such customers to import, make, use, sell, offer to sell, or otherwise commit acts of infringement with respect to the Accused Products in the United States, which Google knew infringes at least Claim 1 of the '228 Patent, or, alternatively, was willfully blind to the infringement.

101. On information and belief, since at least the filing of Plaintiff's original Complaint, in violation of 35 U.S.C. § 271(c), Google's contributory infringement further includes offering to

[redacted]

sell or selling within the United States, or importing into the United States, components of the patented invention of at least Claim 1 of the '228 Patent, constituting a material part of the invention. On information and belief, Google knows and has known the same to be especially made or especially adapted for use in an infringement of the '228 Patent, and such components are not a staple article or commodity of commerce suitable for substantial noninfringing use.

102. Google is not licensed or otherwise authorized to practice the claims of the '228 Patent.

103. Thus, by its acts, Google has injured Daedalus and is liable to Daedalus for directly and/or indirectly infringing one or more claims of the '228 Patent, whether literally or under the doctrine of equivalents, including without limitation Claim 1.

104. At a minimum, Google has knowledge of the '228 Patent at least as of the filing of Plaintiff's original Complaint. Accordingly, Google's infringement of the '228 Patent has been and continues to be deliberate, intentional, and willful, and this is therefore an exceptional case warranting an award of enhanced damages and attorneys' fees and costs pursuant to 35 U.S.C. §§ 284 and 285.

105. As a result of Google's infringement of the '228 Patent, Daedalus has suffered monetary damages, and seeks recovery, in an amount to be proven at trial, adequate to compensate for Google's infringement, but in no event less than a reasonable royalty with interest and costs.

106. On information and belief, Google will continue to infringe the '228 Patent unless enjoined by this Court. Google's infringement of Plaintiff's rights under the '228 Patent will continue to damage Daedalus, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by this Court.

[redacted]

## FIFTH COUNT

## (Infringement of U.S Patent No. 11,507,167)

107. Daedalus incorporates by reference the allegations set forth in the foregoing paragraphs of this First Amended Complaint as though fully set forth herein.

108. The claims of the '167 Patent are valid and enforceable.

109. On information and belief, in violation of 35 U.S.C. § 271(a), Google has directly infringed and continues to directly infringe one or more claims of the '167 Patent, including at least Claim 1 of the '167 Patent, in the state of Texas, in this judicial district, and elsewhere in the United States by, among other things, making, using, selling, offering for sale, and/or importing into the United States products that embody one or more of the inventions claimed in the '167 Patent, including but not limited to products including Tensor SOCs or Axion microprocessors, and all reasonably similar products (the "Accused Products"). See Exhibit E.

110. Further, on information and belief, since at least the filing of Plaintiff's original Complaint, Google has actively induced and/or contributed to infringement of at least Claim 1 of the '167 Patent in violation of at least 35 U.S.C. § 271(b) and (c).

111. The Accused Products directly infringe at least Claim 1 of the '167 Patent. On information and belief, since at least the filing of Plaintiff's original Complaint, Google's inducements in violation of 35 U.S.C. § 271(b) include, without limitation and with specific intent to encourage infringement, knowingly inducing consumers to use the Accused Products within the United States in the ordinary, customary, and intended way by, directly or through intermediaries, supplying the Accused Products to consumers within the United States and instructing and encouraging such customers to use the Accused Products in the ordinary, customary, and intended way, which Google knew infringes at least Claim 1 of the '167 Patent, or, alternatively, was willfully blind to the infringement.

[redacted]

112. On information and belief, since at least the filing of Plaintiff's original Complaint, Google's inducements in violation of 35 U.S.C. § 271(b) further include, without limitation and with specific intent to encourage the infringement, knowingly inducing customers to commit acts of infringement with respect to the Accused Products within the United States, by, directly or through intermediaries, instructing and encouraging such customers to import, make, use, sell, offer to sell, or otherwise commit acts of infringement with respect to the Accused Products in the United States, which Google knew infringes at least Claim 1 of the '167 Patent, or, alternatively, was willfully blind to the infringement.

113. On information and belief, since at least the filing of Plaintiff's original Complaint, in violation of 35 U.S.C. § 271(c), Google's contributory infringement further includes offering to sell or selling within the United States, or importing into the United States, components of the patented invention of at least Claim 1 of the '167 Patent, constituting a material part of the invention. On information and belief, Google knows and has known the same to be especially made or especially adapted for use in an infringement of the '167 Patent, and such components are not a staple article or commodity of commerce suitable for substantial noninfringing use.

114. Google is not licensed or otherwise authorized to practice the claims of the '167 Patent.

115. Thus, by its acts, Google has injured Daedalus and is liable to Daedalus for directly and/or indirectly infringing one or more claims of the '167 Patent, whether literally or under the doctrine of equivalents, including without limitation Claim 1.

116. At a minimum, Google has knowledge of the '167 Patent at least as of the filing of Plaintiff's original Complaint. Accordingly, Google's infringement of the '167 Patent has been and continues to be deliberate, intentional, and willful, and this is therefore an exceptional case

[redacted]

warranting an award of enhanced damages and attorneys' fees and costs pursuant to 35 U.S.C. §§ 284 and 285.

117. As a result of Google's infringement of the '167 Patent, Daedalus has suffered monetary damages, and seeks recovery, in an amount to be proven at trial, adequate to compensate for Google's infringement, but in no event less than a reasonable royalty with interest and costs.

118. On information and belief, Google will continue to infringe the '167 Patent unless enjoined by this Court. Google's infringement of Plaintiff's rights under the '167 Patent will continue to damage Daedalus, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by this Court.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action for all issues triable by a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and seeks relief from Google as follows:

119. For judgment that Google has infringed and continues to infringe the claims of the Asserted Patents;

120. For a permanent injunction against Google and its respective officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all other acting in active concert therewith from infringement of the Asserted Patents;

121. For an accounting of all damages sustained by Plaintiff as a result of Google's acts of infringement;

122. For a mandatory future royalty payable on each and every future sale by Google of a product that is found to infringe one or more of the Asserted Patents and on all future products

[redacted]

which are not more than colorably different from products found to infringe;

123. For a judgment and order finding that Google's infringement is willful and awarding to Plaintiff enhanced damages pursuant to 35 U.S.C. § 284;

124. For a judgment and order requiring Google to pay Plaintiff's damages, costs, expenses, and pre- and post-judgment interest for its infringement of the Asserted Patents as provided under 35 U.S.C. § 284 and without limitation under 35 U.S.C. § 287;

125. For a judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to Plaintiff its reasonable attorneys' fees; and

126. For such other and further relief in law and in equity as the Court may deem just and proper.

Dated: November 3, 2026

Respectfully Submitted,

*/s/ Garland Stephens*

Garland Stephens
LEAD ATTORNEY
Texas Bar No. 24053910
garland@bluepeak.law
Justin Constant
Texas Bar No. 24067551
justin@bluepeak.law
John Brinkmann
Texas Bar No. 24068091
john@bluepeak.law
Richard Koehl
Texas Bar No. 24115754
richard@bluepeak.law
Robert Magee
California Bar No. 271443
robert@bluepeak.law
Heng Gong
New York Bar No. 4930509
heng@bluepeak.law
Natalie Lieber
New York Bar No. 4672762

[redacted]

lieber@bluepeak.law

**BLUE PEAK LAW GROUP LLP**
3139 West Holcombe Blvd, PMB 8160
Houston, TX 77025
Telephone: 281-972-3036

Of Counsel:
Mark D. Siegmund
State Bar No. 24117055
**CHERRY JOHNSON SIEGMUND JAMES PC**
Bridgeview Center
7901 Fish Pond Road, 2nd Floor
Waco, Texas 76710
Telephone: (254) 732-2242
Facsimile: (866) 627-3509
msiegmund@cjsjlaw.com

William D. Ellerman
Texas Bar No. 24007151
**CHERRY JOHNSON SIEGMUND JAMES PC**
One Glen Lakes Tower
8140 Walnut Hill Lane, Suite 105
Dallas, Texas 75231
Telephone: (254) 732-2242
Facsimile: (866) 627-3509
Email: wellerman@cjsjlaw.com

*Attorneys for Plaintiff Daedalus Prime LLC*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on November 11, 2026, a true and correct copy of the foregoing document, together with Appendices A–E and Exhibits A–E thereto, was electronically filed with the Clerk of the United States District Court for the Western District of Texas, Midland/Odessa Division, using the CM/ECF system, which will send notification and a copy of this filing to all counsel of record who are deemed to have consented to such service under the Court's local rules.

*/s/ Mark D. Siegmund*
Mark D. Siegmund