**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND-ODESSA DIVISION**

| | | |
|---|---|---|
| **DAEDALUS PRIME LLC,** *Plaintiff,* | § § § | |
| **v.** | § | **Civil Action No. 7:25-cv-00313-DC-DTG** |
| **GOOGLE LLC,** *Defendant.* | § § § § | |

**ORDER ON DAMAGES DISCOVERY**

On November 5, 2026, the Court heard the parties' dispute regarding damages discovery. The parties' positions, their requested relief, and the Court's ruling are set out below.

**Plaintiff's Position**

**Google withholds its models.** Asked for these models, Google offers only documents "sufficient to show" Axion value, without committing to the model behind its $150 million projection. Google Ex. F at 7, 9; Ex. 4 at 4, 6. That offer "does not constitute an agreement to produce all documents concerning that subject." Google Ex. F at 10. It refuses the models behind those summaries, including its Pixel planning models, as "overbroad" and "not proportional." *Id.* at 6. Google has not shown "specifically" why producing them is improper. *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990) (quoting *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982)).

**Google cannot limit damages discovery to the chip.** Google refuses records of Pixel's value, Axion "platform-level analyses," the Axion program budget, and Axion energy and power-capacity costs. Google Ex. F at 6–7, 9. But damages must reflect "the incremental value that the patented invention adds to the end product," *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d

1201, 1226 (Fed. Cir. 2014), and that value appears in Axion's server savings and Pixel's battery life. The smallest-salable-unit rule limits the royalty base at trial, not what a party must produce. *Cf. Commonwealth Sci. & Indus. Rsch. Org. v. Cisco Sys., Inc.*, 809 F.3d 1295, 1302–03 (Fed. Cir. 2015).

**Google offers only a processor count, not usage.** Google will produce only data "sufficient to show the number of Axion processors deployed in the United States," and "reserves all rights" on the internal services Daedalus accuses. Google Ex. F at 8; Ex. 1 at 16. This Court has compelled Google's U.S. usage metrics by type of use. *Touchstream Techs., Inc. v. Google LLC*, No. 6:21-cv-569-ADA, Dkt. 111 at 7–8 (W.D. Tex. Nov. 29, 2022).

**This dispute is ripe.** Daedalus's June requests reach each category: "valuations," "pricing and cost information," and "usage statistics." Google Ex. D at 12, 14 (Requests 24, 34). Daedalus identified them again on September 24, and Google refused or limited each on October 15. Ex. 4; Google Ex. F. Google's AI conjecture is beside the point; the stipulated Protective Order permits confidential AI tools. Dkt. 95 ¶ 16. Google will not confer on other requests until "the pending dispute is resolved." Google Ex. G at 6. These refusals require a ruling.

**Requested Relief:**

1. **Scope.** Google's "platform-level," proportionality, confidentiality, and internal-use objections, and its "sufficient to show" limitations, to Requests 18, 20, 22, 23, 24, 26, 27, and 34 are overruled. Google may not limit damages discovery to the chip. The following are within the scope of discovery for each accused Tensor and Axion chip and the Pixel phones, servers, Cloud services, and internal operations that use them:

(a) **Cost and value.** Google's analyses, models, and budgets of what the accused chips cost, save, and are worth, including its build-or-buy and alternatives-to-custom-silicon analyses for each Tensor and Axion generation, the Axion program budget and server bill of materials, and Axion energy and power-capacity costs.

(b) **Usage.** Google's data on how many accused chips it deploys and how much they are used, as kept in the ordinary course of business, including U.S. Axion processor counts and usage by quarter, separately for Cloud and internal use.

(c) **Feature benefits.** Google's analyses of the accused features' effect, at the phone, server, and fleet level, on Pixel battery life (including days-of-use analyses), performance, and thermals, and on Axion server power and energy use.

(d) **Second-generation Axion.** Each category above applies to second-generation Axion, without deferral to the parties' technical negotiations or any schedule extension.

2. **Production.** By November 16, 2026, Google shall substantially complete its production within each category, including (i) the documents it agreed on October 15 to produce (Google Ex. F at 4–9) and (ii) the following documents identified in Daedalus's September 24 letter (Ex. 4): the model behind the Athena savings projection (GOOG-DPRIME-00311313); the Axion business-case review and updates referenced in GOOG-DPRIME-00311297–427; the Axion cost-of-ownership analyses referenced in GOOG-DPRIME-00312245; the "Xena source

of truth" deck referenced at GOOG-DPRIME-00311312; the executive-review, approval, and business-case materials for each Tensor generation; the final Marvell price quote referenced at GOOG-DPRIME-00287563; the earlier versions of the Pixel "v7" forecast (GOOG-DPRIME-00312293–94); the Pixel PM and gChips "Starlite" models underlying the $299 phone cost breakdown (GOOG-DPRIME-00242515); and documents showing what the "$2 royalties" and $15 "IPR" entries cover (GOOG-DPRIME-00264063, -00242515), with models in native form, and shall certify that its production is substantially complete, identifying any responsive materials withheld and the basis for withholding them, and identifying by Bates number any requested document it contends it has already produced.

3. **Regular discovery conference.** Counsel for the parties shall meet and confer every two weeks through the close of fact discovery.

**<u>Plaintiff's Requested Relief at the Hearing</u>**

At the hearing, Plaintiff narrowed the relief it had requested in the parties' October 29 dispute chart. Tr. 4:21–5:3. Plaintiff set out its narrowed relief in a demonstrative that it emailed to the Court and Google on the morning of the hearing, which stated:

*I. Complete the searches*

1. By November 19: Google completes reasonable searches on the damages categories in the chart (cost and value, usage, and the features' benefits) and on Daedalus Prime's second set of requests, including telemetry on how often the accused features operate.

2. By November 19: Google reports what it found, will produce, and is withholding, and why.

3. By December 19: Google substantially completes its production.

*II. Two disputes concrete enough to decide now*

4. By November 19: Google produces, as kept in the ordinary course of business:

   (1) Hours: U.S. usage of the accused server chips, by quarter, for cloud customers and Google's own internal use.

   (2) Internal value: any transfer price, chargeback rate, or other value for Google's own internal use.

   If not kept in that form, Google identifies what it does keep.

At the hearing, Plaintiff also asked that the searches in item 1 cover its First and Second Sets of requests for production. Tr. 20:7–14.

**<u>Google's Position</u>**

This **unripe** discovery dispute concerns Plaintiff's Second Set of RFPs, to which Google's responses are not due until October 30, 2026. Plaintiff insisted the parties submit this chart one day after the meet-and-confer and refused to account for those changes. *Contra* OGP at 4.

**The parties disagree over whether the requested information beyond the accused functionality has sufficient connection to the accused features, not Plaintiff's straw-man about whether discovery "stops at the chip."** Plaintiff ignores Google's compromise: Google will produce most of the projection models and documents in items (i) and (ii) of Daedalus' requested relief—including models Daedalus incorrectly asserts Google is withholding. Google also agreed to search for documents sufficient to show the accused features' alleged effects on

battery life, thermal benefits, performance, energy consumption, and cost, including relevant comparisons with alternatives and information reasonably necessary to distinguish other contributors to those benefits. *See* Google Ex. F at 7–9. The only dispute is whether Google's production needs to extend to unrelated costs, value, budgets, models, and operations ***of entire Pixel phones, servers, Cloud services, and internal businesses.*** That demand is unripe, overbroad, and unduly burdensome. Discovery should be linked to the accused product features, including information reasonably necessary to evaluate and apportion their alleged benefits.

**Daedalus's authority limits the discovery it seeks.** *Ericsson* requires damages to reflect "the incremental value that the patented invention adds to the end product." 773 F.3d at 1226. What the accused features allegedly add to battery life, performance, thermal management, or energy use is discoverable, including comparisons with alternatives—Google is producing that information. Platform-level documents (i.e., documents relating to entire Pixel phones, servers, Cloud services, etc.) untethered to the Accused Functionality go beyond what is at issue here.

**Google will provide usage data beyond processor counts, with reasonable limits.** Google *has* agreed to produce reasonably available information regarding which platforms and services use the accused chips (and how many) in the US. That is the use-by-type data Daedalus says *Touchstream* requires. Daedalus's demands for worldwide, data-center-level, and machine-hour data implicate infrastructure security, are not relevant, and would be extraordinarily burdensome. Google Ex. F at 8.

**The Court should allow Google reasonable time to respond to Daedalus's newly-served requests.** Daedalus's motion is unnecessary and premature for two reasons: First, Daedalus misstates Google's positions and seeks to compel responses to RFPs that Daedalus served less than 30 days ago. *Compare, e.g.* Google Ex. E at RFP 62 with Plaintiff's Requested

Relief 1(a) and 2 (both requesting make-versus-buy analyses, budgets, business-case/executive reviews and costs); RFPs 49, 50 with Requested Relief 1(b) (both requesting usage data); and RFPs 58, 65 with Requested Relief 2 (both requesting royalty information, costs models, and the Pixel PM model). Google's responses to these RFPs are not due until October 30. Second, this data (e.g., the usage data Daedalus demands) will be hard to locate, if even possible. Google can commit to substantial completion of its production by December 31—well in advance of the January 27 fact-discovery cut-off.

**Google's Requested Relief**

Deny Daedalus's request to overrule all of Google's objections wholesale and its request for an unrestricted production-and-certification order. Instead, order as follows:

1. **Scope.** Damages discovery extends to the power-management features and components identified in Daedalus's infringement contentions (the "Accused Functionality"), including the Accused Functionality's alleged benefits at the processor, phone, server, or fleet level and comparisons with alternatives. It does not extend to the overall costs, revenues, budgets, or operations of Pixel phones, servers, Cloud services, or internal Google businesses, except as specifically provided below.
2. **Identified documents.** Google shall conduct a reasonable search for, and to the extent they exist, produce, the following materials:

    (a) the model underlying the Athena savings projection referenced in GOOG-DPRIME-00311313;

    (b) the Axion business-case review and updates referenced in GOOG-DPRIME-00311297–427, concerning the accused functionality, as requested by RFP 62 from Plaintiff's Second Set;

(c) the Axion cost-of-ownership analyses referenced in GOOG-DPRIME-00312245;

(d) the "Xena source of truth" deck referenced in GOOG-DPRIME-00311312;

(e) the executive-review, approval, and business-case materials for each Tensor generation concerning the accused functionality, as requested by RFP 62 from Plaintiff's Second Set;

(f) the final Marvell price quote (GOOG-DPRIME-00287563);

(g) the earlier versions of the Pixel "v7" forecast (GOOG-DPRIME-00312293–94), as requested by RFP 52 in Plaintiff's Second Set;

(h) the Pixel PM and gChips "Starlite" models underlying the $299 phone cost breakdown (GOOG-DPRIME-00242515), as requested by RFPs 58 and 64 in Plaintiff's Second Set;

(i) documents sufficient to show what the royalty and "IPR" entries at GOOG-DPRIME-00264063 and -00242515 represent, as requested by RFP 64 in Plaintiff's Second Set.

For each model produced, Google shall also conduct a reasonable search for and produce materials reasonably necessary to understand each model's methodology, assumptions, and inputs.

3. **Additional damages documents.** Google shall produce the following, to the extent they exist after a reasonable search:

(a) documents sufficient to show the benefits Google has attributed to the Accused Functionality and demand for the Accused Functionality;

(b) the agreements, statements of work, and pricing schedules setting Google's cost for

each accused Tensor generation;

(c) Axion purchase pricing and quantities;

(d) Google's Arm agreements, including royalty annexes; and

(e) documents sufficient to show Google's marketing plans for the Accused Features in the accused instrumentalities.

4. **Usage.** Google shall produce reasonably available ordinary-course records sufficient to show U.S. deployment of the accused Axion processors, which Google services use them, and the extent of that use, separately for Cloud and internal use.

5. **Other products.** Paragraphs 1 through 4 apply to second-generation Axion and to any other product the Court finds within the scope of discovery.

6. **Schedule.** Google shall produce these materials on a rolling basis and substantially complete its production by December 31, 2026.

7. **Withholding.** Google shall state whether it is withholding responsive materials on the basis of an objection, as Rule 34(b)(2)(C) requires.

**Order**

After considering the parties' respective position statements submitted to the Court by email on October 29, 2026, and oral argument during a hearing held on November 5, 2026, the Court orders the following:

By November 19, 2026, Defendant Google LLC shall:

1. Complete its searches for documents responsive to Plaintiff's First and Second Sets of discovery for which Google's responses indicated it was still searching, including the damages categories in the parties' October 29 chart (cost and value,

usage, and the accused features' benefits) and provide a written update to Plaintiff regarding Google's search results.

2. The written update shall, for each request:

   (a) state what exists and does not exist, and specifically describe what it will produce;

   (b) identify any responsive materials that Google has identified but intends to withhold; and

   (c) specifically addresses:

      (i) usage data for the accused server chips, including hours, as kept in the ordinary course of business (RFP 34); and

      (ii) any transfer price, chargeback rate, or other value Google assigns to its internal use of the accused server chips, as kept in the ordinary course of business (RFPs 24, 26, 50, and 57).

After Google's update, the parties shall meet and confer regarding any remaining issues. The parties shall also meet and confer regarding telemetry data.

By December 19, 2026, Google shall:

3. Complete production of the usage and internal-value data in paragraph 2(c)(i)–(ii), to the extent it exists, as kept in the ordinary course of business.

If Google cannot locate responsive information by the deadlines in this Order, the parties shall meet and confer, and Google shall be prepared to show the Court that it did everything it reasonably could to comply with this Order.

This Order does not alter the substantial-completion deadline in the Scheduling Order. *See* Dkt. No. 100. Google represented that it plans to make rolling productions before that deadline.

**SIGNED** this 19th day of November, 2026.

DEREK T. GILLILAND
UNITED STATES MAGISTRATE JUDGE