# EXHIBIT 8

KEKER
VAN NEST
& PETERS

Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
415 391 5400
keker.com

**Vishesh Narayen**
(415) 676-2308
vnarayen@keker.com

May 11, 2026

**VIA ELECTRONIC MAIL**

Justin Constant
Blue Peak Law Group LLP
3139 West Holcombe Blvd., PMB 8160
Houston, TX 77025
justin@bluepeak.law

Re: *Daedalus Prime LLC v. Google LLC*, No. 7:25-cv-00313-DC-DTG (W.D. Tex.)

Dear Justin,

We are writing to request that Daedalus Prime LLC ("Daedalus") stipulate that it will not seek any alleged pre-suit damages against Google LLC ("Google") in this litigation.

The patent marking statute, 35 U.S.C. § 287, provides that when patentees fail to mark patent-practicing products with the corresponding patent number(s), "no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice." 35 U.S.C. § 287(a). Under Section 287, "[f]iling of an action for infringement shall constitute such notice." *Id.* Thus, in order to recover pre-suit damages, Section 287 requires that patent-practicing products be marked (constructive notice), or that the patentee give pre-suit "noti[ce] of the infringement" (actual notice). *See Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.* ("*Arctic Cat II*"), 950 F.3d 860, 864 (Fed. Cir. 2020) ("A patentee who makes or sells patented articles can satisfy the notice requirement of § 287 either by providing constructive notice—i.e., marking its products—or by providing actual notice to an alleged infringer.").

We are not aware of any pre-suit communication from Daedalus to Google that provided actual notice. *See Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994) ("Actual notice [under Section 287] requires the affirmative communication of a specific charge of infringement by a specific accused product or device."). Thus, recovery of any alleged pre-suit damages by Daedalus turns on the existence of patent-practicing products and whether they were marked in compliance with Section 287.

As you know, Intel Corp. was the original assignee of all five patents asserted in this case, and there is substantial evidence indicating that it offered for sale and sold patent-practicing products in the United States. Just as one example, the 4th Generation Intel "Core" Processor Family, which first launched between 2013-2015 and continued to be offered for sale and sold for several years thereafter, were multicore processors with an integrated graphics core, "independent voltage-frequency domains," a "system agent," and a "power control unit (PCU)" that "dynamically allocates the power budget among the domains to maximize performance"—closely resembling preferred embodiments of the asserted '833 patent. P. Hammarlund et al., *Haswell: The Fourth-Generation Intel Core Processor*, IEEE Micro, Vol. 34, No. 2, pp. 6-20 at 7 (March 2014), *available at* https://ieeexplore.ieee.org/abstract/document/6762795. In addition, in the Haswell architecture used in the 4th Generation Intel "Core" Processor Family, "[c]ores, caches, graphics, and the system agent" all "run[] at dedicated, individually controlled voltage-frequency points" that are dynamically controlled by the PCU, closely resembling preferred embodiments of the '494 patent. *Id.* The Haswell architecture also used energy performance bias values to influence power features, closely resembling preferred embodiments of the '197 patent. *See* D. Hackenberg et al., *An Energy Efficiency Feature Survey of the Intel Haswell Processor*, Proc. 29th IEEE Int'l Parallel Dist. Proc. Symposium, pp. 896-905 (May 2015), *available at* https://ieeexplore.ieee.org/abstract/document/7284406.

To recover pre-suit damages, Daedalus will bear the burden of proving that Intel marked these and any other patent-practicing products that Google identifies in compliance with Section 287. *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.* ("*Arctic Cat I*"), 876 F.3d 1350, 1367 (Fed. Cir. 2017) ("The burden of proving compliance with marking is and at all times remains on the patentee."). That means Daedalus will have to prove that Intel "consistently marked substantially all" of its products that practiced the asserted patents. *Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1538 (Fed. Cir. 1993); *see also Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1446 (Fed. Cir. 1998) ("In order to satisfy the constructive notice provision of the marking statute, [patentee] must have shown that substantially all of the [practicing products] being distributed were marked, and that once marking was begun, the marking was substantially consistent and continuous."). We do not believe there is any conceivable way that Daedalus will be able to carry its burden. For one, we expect that discovery will reveal many individual Intel products—potentially dozens if not hundreds—that likely triggered the marking statute, and Daedalus would bear the burden of proving Intel's compliance with Section 287 for all of those products. Just as an example, hundreds of Intel's mobile, desktop, and server CPUs were based on the Intel architecture codenamed Haswell—which, as noted above, included the power management functionality that closely resembles preferred embodiments of the asserted patents. *See* Intel Corp. - Products formerly Haswell, https://www.intel.com/content/www/us/en/ark/products/codename/42174/products-formerly-haswell.html#@nofilter (listing 256 CPU products that utilized the architecture formerly codenamed Haswell). Moreover, our investigation and analysis of commercially available samples reveals that Intel in fact did not mark its CPU products or product packaging with patent numbers or other authorized forms of marking. (Many Intel CPU products are available from secondary marketplaces such as eBay, such that Daedalus can obtain and inspect samples itself if it wishes, as we have.) Moreover, even if Intel ceased sales of its patent-practicing products at some point prior to Daedalus filing this suit, "§ 287 continues to limit damages after a patentee or licensee ceases sales of unmarked products." *Arctic Cat II*, 950 F.3d at 862; *see also id.* at 864 ("[T]he issue presented is whether the cessation of sales of unmarked products excuses noncompliance

with the notice requirement of § 287 such that a patentee may recover damages for the period after sales of unmarked products ceased but before the filing of a suit for infringement. We hold that it does not.").

To the extent that Daedalus contests whether any identified Intel products practiced the asserted patents in the first place, that too will be Daedalus's burden to prove. *Arctic Cat I*, 876 F.3d at 1369 ("It was [plaintiff's] burden to prove those products—once identified—do not practice the patent-at-issue. The alleged infringer need not produce claim charts to meet its initial burden of identifying products. It is the patentee who bears the burden of proving that it satisfied the marking requirements and thus the patentee who would have to prove that the unmarked products identified by the infringer do not fall within the patent claims."). Here, too, Daedalus would bear the burden of proof with respect to potentially hundreds of Intel CPU products.

Given the foregoing, Google intends to seek summary judgment regarding pre-suit damages in due course and is confident it will prevail. In the meantime, we expect that litigating the issue of compliance with Section 287 and the availability of pre-suit damages will necessitate extensive discovery from Intel and potentially others. Rather than burdening third parties with discovery related to Section 287, and burdening the Court with a summary judgment motion on this issue (as well as any other motion practice that may arise on the issue of marking, e.g., discovery disputes), we think the more prudent course is for Daedalus to stipulate that it will not seek damages for any alleged infringement occurring prior to the filing of its complaint. If Daedalus so stipulates before discovery opens (on June 4, 2026, under the current Scheduling Order), Google is willing to agree that it will not rely on Daedalus's failure to prove compliance with Section 287 as a basis for any eventual fees or costs motion under 35 U.S.C. § 285 or 28 U.S.C. § 1927. Please let us know if Daedalus will stipulate. We are happy to discuss live if you have any questions.

Sincerely,

KEKER, VAN NEST & PETERS LLP



Vishesh Narayen

VN:jb