# EXHIBIT 11

**UNITED STATES INTERNATIONAL TRADE COMMISSION**
**WASHINGTON, D.C.**

**Before the Honorable ___________________**
**Administrative Law Judge**

| | |
|---|---|
| In the Matter of<br><br>CERTAIN SEMICONDUCTORS AND DEVICES AND PRODUCTS CONTAINING THE SAME, INCLUDING PRINTED CIRCUIT BOARDS, AUTOMOTIVE PARTS, AND AUTOMOBILES | Investigation No. 337-TA-____ |

**VERIFIED COMPLAINT UNDER SECTION 337 OF THE TARIFF ACT OF 1930, AS AMENDED**

**COMPLAINANT:**

Daedalus Prime LLC
51 Pondfield Road
Suite 3
Bronxville, NY 10708
Tel: 914-424-2778

**COUNSEL FOR COMPLAINANT:**

David J. Shaw
Tuhin Ganguly
Goutam Patnaik
David J. Cho
Elizabeth Connors
**DESMARAIS LLP**
1899 Pennsylvania Avenue NW, Suite 400
Washington, DC 20006
Tel: 202-451-4900
Fax: 202-451-4901

John M. Desmarais
Alan Kellman
**DESMARAIS LLP**
230 Park Avenue, 26th Floor
New York, NY 10169
Tel: 212-351-3400
Fax: 212-351-3401

**RESPONDENTS:**

Arrow Electronics, Inc.
9201 East Dry Creek Road
Centennial, CO 80112
Tel: 303-824-4000

Avnet, Inc.
2211 South 47th Street
Phoenix, AZ 85034
Tel: 480-643-2000

Digi-Key Electronics
701 Brooks Avenue South
Thief River Falls, MN 56701
Tel: 218-681-6674

Future Electronics Inc.
237 Hymus Boulevard
Pointe Claire, Quebec, Canada H9R 57C
Tel: 514-694-7710

Mazda Motor Corporation
3-1 Shinchi, Fuchu-cho, Aki-gun,
Hiroshima 730-8670 Japan
Tel: +81-82-282-1111

Mazda North American Operations
200 Spectrum Center Drive
Suite 100
Irvine, CA 92618
Tel: 949-727-1990

Mazda Motor of America, Inc.
200 Spectrum Center Drive
Suite 100
Irvine, CA 92618
Tel: 949-727-1990

MediaTek Inc.
No. 1, Dusing Road 1
Hsinchu Science Park
Hsinchu, 30078, Taiwan
Tel: +886-3-567-0766

MediaTek USA Inc.
2840 Junction Ave.
San Jose, CA 95134
Tel: 408-526-1899

Mercedes-Benz Group AG
70546 Stuttgart
Germany
Tel: +49-711-17-0

Mercedes-Benz AG
Epplestraße 225
70567 Stuttgart-Möhringen
Germany
Tel: +49-711-17-0

Mercedes-Benz USA, LLC
1 Mercedes-Benz Drive
Sandy Springs, GA 30328
Tel: 800-367-6372

Mouser Electronics, Inc.
1000 North Main Street
Mansfield, TX 76063
Tel: 800-346-6873

Newark
300 S. Riverside Plaza
Suite 2200
Chicago, IL 60606
Tel: 800-463-9275

NXP Semiconductors N.V.
High Tech Campus 60
5656 AG Eindhoven, Netherlands
Tel: +31-40-272-9999

NXP USA, Inc.
6501 W. William Cannon Dr.
Austin, TX 78735
Tel: 408-551-2215

Rochester Electronics, LLC
16 Malcolm Hoyt Drive
Newburyport, MA 01950
Tel: 978-462-9332

Visteon Corporation
One Village Center
Van Buren Township, MI 48111
Tel: 734-627-7384

# TABLE OF CONTENTS

**Pages**


I. INTRODUCTION ........................................................................................1

II. THE PARTIES........................................................................................3

A. Complainant........................................................................................3

B. Respondents........................................................................................3

1. Arrow Electronics, Inc. ........................................................................3

2. Avnet, Inc. ........................................................................................4

3. Digi-Key Electronics ........................................................................4

4. Future Electronics Inc. ........................................................................5

5. Mazda Motor Corporation ........................................................................5

6. Mazda North American Operations ........................................................5

7. Mazda Motor of America, Inc. ........................................................6

8. MediaTek Inc. ........................................................................6

9. MediaTek USA Inc. ........................................................................7

10. Mercedes-Benz Group AG ........................................................................7

11. Mercedes-Benz AG........................................................................7

12. Mercedes-Benz USA, LLC ........................................................................8

13. Mouser Electronics, Inc. ........................................................................8

14. Newark........................................................................9

15. NXP Semiconductors N.V. ........................................................................9

16. NXP USA, Inc. ........................................................................10

17. Rochester Electronics, LLC ........................................................................10

18. Visteon Corporation........................................................................11

III. THE ASSERTED PATENTS ........................................................................11

A. U.S. Patent No. 8,775,833 ... 12

1. Non-Technical Description of the ’833 Patent ... 13

2. Foreign Counterparts to the ’833 Patent ... 13

3. Licensees to the ’833 Patent ... 13

B. U.S. Patent No. 8,898,494 ... 14

1. Non-Technical Description of the ’494 Patent ... 15

2. Foreign Counterparts to the ’494 Patent ... 15

3. Licensees to the ’494 Patent ... 16

C. U.S. Patent No. 9,575,895 ... 16

1. Non-Technical Description of the ’895 Patent ... 17

2. Foreign Counterparts to the ’895 Patent ... 17

3. Licensees to the ’895 Patent ... 17

D. U.S. Patent No. 10,049,080 ... 18

1. Non-Technical Description of the ’080 Patent ... 19

2. Foreign Counterparts to the ’080 Patent ... 19

3. Licensees to the ’080 Patent ... 19

E. U.S. Patent No. 10,394,300 ... 20

1. Non-Technical Description of the ’300 Patent ... 21

2. Foreign Counterparts to the ’300 Patent ... 21

3. Licensees to the ’300 Patent ... 21

F. U.S. Patent No. 10,705,588 ... 21

1. Non-Technical Description of the ’588 Patent ... 22

2. Foreign Counterparts to the ’588 Patent ... 23

3. Licensees to the ’588 Patent ... 23

IV. UNFAIR ACTS OF THE RESPONDENTS ... 23

A. Specific Instances of Infringement ....................24

B. Specific Instances of Sale for Importation, Importation, or Sale After Importation ....................26

1. Mediatek, Visteon, Mazda, and Mercedes ....................27

2. NXP and its Distributors—Arrow, Avnet, Digi-Key, Future, Mouser, Newark, and Rochester ....................30

3. NXP and Mercedes ....................31

V. HARMONIZED TARIFF SCHEDULE INFORMATION ....................32

A. Related Litigation and Patent Office Proceedings ....................33

VI. DOMESTIC INDUSTRY ....................33

A. Intel's License Under the Asserted Patents ....................33

B. A Domestic Industry Relating to the Asserted Patents Exists Due to Intel's U.S. Activities ....................33

1. Intel's Foundry Services ....................33

2. Intel's 12th-Generation Core Processors ....................35

3. Intel's current Microprocessors ....................36

4. Intel's Domestic Industry ....................36

5. § 337(a)(3)(A)—Significant Investment in Plant and Equipment ....................39

6. § 337(a)(3)(B)—Significant Employment of Labor or Capital ....................41

7. § 337(a)(3)(C)—Substantial Investment in Engineering, Research and Development ....................41

8. Technical Prong ....................42

VII. REQUESTED RELIEF ....................42

# EXHIBIT LIST

## 1. *EXHIBITS CITED IN THE BODY OF THIS COMPLAINT*

**Exhibit 1.** Certified Copy of U.S. Patent No. 8,775,833

**Exhibit 2.** (Part 1) Copy of assignment records for U.S. Patent No. 8,775,833

(Part 2) Certified Copy of assignment records for U.S. Patent No. 8,769,316

**Exhibit 3.** Certified Copy of U.S. Patent No. 8,898,494

**Exhibit 4.** (Part 1) Copy of assignment records for U.S. Patent No. 8,898,494

(Part 2) Certified Copy of assignment records for U.S. Patent No. 9,304,570

**Exhibit 5.** Certified Copy of U.S. Patent No. 9,575,895

**Exhibit 6.** (Part 1) Copy of assignment records for U.S. Patent No. 9,575,895

(Part 2) Certified Copy of assignment records for U.S. Patent No. 8,984,228

**Exhibit 7.** Certified Copy of U.S. Patent No. 10,049,080

**Exhibit 8.** (Part 1) Copy of assignment records for U.S. Patent No. 10,049,080

(Part 2) Certified Copy of assignment records for U.S. Patent No. 9,569,278

**Exhibit 9.** Certified Copy of U.S. Patent No. 10,394,300

**Exhibit 10.** (Part 1) Copy of assignment records for U.S. Patent No. 10,394,300

(Part 2) Certified Copy of assignment records for U.S. Patent No. 9,367,114

**Exhibit 11.** Certified Copy of U.S. Patent No. 10,705,588

**Exhibit 12.** (Part 1) Copy of assignment records for U.S. Patent No. 10,705,588

(Part 2) Certified Copy of assignment records for U.S. Patent No. 8,832,478

**Exhibit 13.** Claim chart comparing U.S. Patent No. 8,775,833 to NXP's Representative i.MX 8 QuadMax Product

**Exhibit 14.** Claim chart comparing U.S. Patent No. 8,775,833 to Mediatek's Representative Autus I20 Product

**Exhibit 15.** Claim chart comparing U.S. Patent No. 8,898,494 to NXP's Representative i.MX 8 QuadMax Product

**Exhibit 16.** Claim chart comparing U.S. Patent No. 8,898,494 to Mediatek's Representative Autus I20 Product

**Exhibit 17.** Claim chart comparing U.S. Patent No. 9,575,895 to NXP's Representative i.MX 8 QuadMax Product

**Exhibit 18.** Claim chart comparing U.S. Patent No. 9,575,895 to Mediatek's Representative Autus I20 Product

**Exhibit 19.** Claim chart comparing U.S. Patent No. 10,049,080 to NXP's Representative i.MX 8 QuadMax Product

**Exhibit 20.** Claim chart comparing U.S. Patent No. 10,049,080 to Mediatek's Representative Autus I20 Product

**Exhibit 21.** Claim chart comparing U.S. Patent No. 10,394,300 to NXP's Representative i.MX 8 QuadMax Product

**Exhibit 22.** Claim chart comparing U.S. Patent No. 10,394,300 to Mediatek's Representative Autus I20 Product

**Exhibit 23.** Claim chart comparing U.S. Patent No. 10,705,588 to NXP's Representative i.MX 8 QuadMax Product

**Exhibit 24.** Claim chart comparing U.S. Patent No. 10,705,588 to Mediatek's Representative Autus I20 Product

**Exhibit 25.** Claim chart comparing U.S. Patent No. 8,775,833 to Intel's Representative 12th Generation Processor Product

**Exhibit 26.** Claim chart comparing U.S. Patent No. 8,898,494 to Intel's Representative 12th Generation Processor Product

**Exhibit 27.** Claim chart comparing U.S. Patent No. 9,575,895 to Intel's Representative 12th Generation Processor Product

**Exhibit 28.** Claim chart comparing U.S. Patent No. 10,049,080 to Intel's Representative 12th Generation Processor Product

**Exhibit 29.** Claim chart comparing U.S. Patent No. 10,394,300 to Intel's Representative 12th Generation Processor Product

**Exhibit 30.** Claim chart comparing U.S. Patent No. 10,705,588 to Intel's Representative 12th Generation Processor Product

**Exhibit 31.** NXP Distributor Network: https://www.nxp.com/support/sample-and-buy/distributor-network:DISTRIBUTORS#UNITEDSTATES

**Exhibit 32.** NXP Semiconductors N.V. Form 10-Q (Q1 2021)

**Exhibit 33.** NXP in the United States: https://www.nxp.com/company/about-nxp/worldwide-locations/united-states:USA

**Exhibit 34.** MediaTek: Infotainment – MediaTek Autus Suite: https://www.mediatek.com/products/automotive/ivi

**Exhibit 35.** Qualcomm Snapdragon 820 Automotive Platform: https://www.qualcomm.com/products/application/automotive/snapdragon-820-automotive-platform

**Exhibit 36.** Product Page for NXP's "Arrow Part # MIMX8QM6CVUFFAB"

**Exhibit 37.** Product Page for NXP's "Avnet Part # MIMX8QM6AVUFFABR"

**Exhibit 38.** Digi-Key Invoice #86622610

**Exhibit 39.** Photos of NXP Products from Digi-Key

**Exhibit 40.** Product Page for NXP's "Future Part # MIMX8QM5CVUFFAB"

**Exhibit 41.** Mouser Electronics Invoice #25267542

**Exhibit 42.** Photos of NXP Product from Mouser

**Exhibit 43.** Newark Invoice #AA35061956, Order #383557

**Exhibit 44.** Photos of NXP Product from Newark

**Exhibit 45.** Visteon Corporation Form 10-K (2020)

**Exhibit 46.** Visteon – Infotainment: https://www.visteon.com/products/infotainment/

**Exhibit 47.** Visteon – SmartCore™ Hits the Road with a New Approach to Cockpit Displays: https://www.visteon.com/smartcore-hits-road-with-new-approach-cockpit-displays/#:~:text=SmartCore%E2%84%A2%20Hits%20the%20Road%20with%20a%20New%20Approach%20to%20Cockpit%20Displays,-By%20Waheed%20Ahmed&text=Beginning%20this%20summer%2C%20vehicle%20cockpits,with%20Visteon's%20SmartCore%20%E2%84%A2%20technology

**Exhibit 48.** Visteon Technology Enhances Mazda CX-9's Striking Cockpit: https://www.visteon.com/newsroom/visteon-technology-mazda-cx-9-striking-cockpit/

**Exhibit 49.** Visteon Premieres Industry-First SmartCore™ Cockpit Domain Controller on All-New Mercedes-Benz A-Class: https://www.visteon.com/newsroom/visteon-smartcore-cockpit-domain-controller-mercedes-benz-a-class/

**Exhibit 50.** MAZDA: Company Information – Company Profile: https://www.mazda.com/en/about/profile/outline/

**Exhibit 51.** MAZDA: Activities in North America – Activities by Region: https://www.mazda.com/en/about/profile/activity/northamerica/

**Exhibit 52.** Mazda Connect - Infotainment System

**Exhibit 53.** Mazda Connect - Infotainment System Terms of Use and Privacy Statement

**Exhibit 54.** MAZDA 2022 CX-9 GT Window Sticker and Product Photos

**Exhibit 55.** Priority Mazda Tyson's Corner: MAZDA CX-9 Grand Touring webpage

**Exhibit 56.** Stuttgart-Möhringen, Mercedes-Benz Group: https://group.mercedes-benz.com/careers/about-us/locations/location-detail-page-5197.html

**Exhibit 57.** Stuttgart-Möhringen, Mercedes-Benz AG: https://group.mercedes-benz.com/careers/about-us/locations/location-detail-page-363265.html

**Exhibit 58.** Atlanta, GA Mercedes-Benz USA Corporate Headquarters: https://group.mercedes-benz.com/careers/about-us/locations/location-detail-page-5206.html

**Exhibit 59.** Mercedes-Benz Central Star Motor Cars Official Blog, Does Mercedes-Benz have a production plant in the United States? https://mercedesbenz.starmotorcars.com/blog/mercedes-benz-production-factory-locations/

**Exhibit 60.** Mercedes-Benz of Modesto, Where are Mercedes-Benz Cars Made? https://www.mbofmodesto.com/where-are-mercedes-benz-cars-made/

**Exhibit 61.** Mercedes-Benz 2021 A220W4 Window Sticker and Product Photos

**Exhibit 62.** Mercedes-Benz of Tysons Corner: 2021Mercedes-Benz A-Class A220 4MATIC Sedan webpage

**Exhibit 63.** (CONFIDENTIAL) Listing of Potential Rights in the Asserted Patents

**Exhibit 64.** (CONFIDENTIAL) Patent Agreement

**Exhibit 65.** Altia 3D Electric Vehicle Cockpit Innovations Will be Extensively Displayed at CES 2022: https://altia.com/2022/01/05/altia-3d-electric-vehicle-cockpit-innovations-will-be-extensively-displayed-at-ces-2022/

**Exhibit 66.** The eCockpit of Tomorrow – See It Today (NXP Semiconductors): https://www.nxp.com/company/blog/the-ecockpit-of-tomorrowsee-it-today:BL-THE-ECOCKPIT-OF-TOMORROW

**Exhibit 67.** Dates and Hours – CES 2022: https://www.ces.tech/Logistics/Dates-and-Hours.aspx

**Exhibit 68.** Intel Corporation Form 10-K (2021)

**Exhibit 69.** Intel CEO Announces 'IDM 2.0' Strategy for Manufacturing, Innovation, and Product Leadership: https://www.intel.com/content/www/us/en/newsroom/news/idm-manufacturing-innovation-product-leadership.html#gs.92aa3z

**Exhibit 70.** 12th Gen Intel Core Alder Lake Processors

**Exhibit 123.** Intel Corporation Form 10-K (2020)

**Exhibit 124.** Intel Product Specification Advanced Search: https://ark.intel.com/content/www/us/en/ark/search/featurefilter.html?productType=873&2_StatusCodeText=4&0_StatusCodeText1=3,4

**Exhibit 125.** Products Formerly Alder Lake: https://ark.intel.com/content/www/us/en/ark/products/codename/147470/products-formerly-alder-lake.html

**Exhibit 126.** Intel Corporation Form 10-K (2019)

**Exhibit 127.** Intel Presentation: From Sand to Silicon – "Making a Chip" Illustrations: 32nm High-K/Metal Gate – Version

**Exhibit 128.** Intel Shows How a 10nm Processor Goes "From Sand to Silicon": https://www.techspot.com/news/84494-intel-shows-how-10nm-processor-goes-sand-silicon.html

**Exhibit 129.** Intel Newsroom: Creative Improvements Expand Manufacturing Capacity: https://newsroom.intel.la/news/10nm-creative-improvements-expand-intel-manufacturing-capacity-english-only/

**Exhibit 130.** Intel Newsroom: Global Manufacturing at Intel: https://www.intel.com/content/www/us/en/newsroom/resources/global-manufacturing.html

**Exhibit 131.** Intel, Innovating and Investing in Oregon Since 1974: https://www.intel.com/content/www/us/en/corporate-responsibility/intel-in-oregon.html

**Exhibit 132.** List of Intel Manufacturing Sites: https://en.wikipedia.org/wiki/List_of_Intel_manufacturing_sites

**Exhibit 133.** Intel, Careers in Manufacturing Process Engineering: https://jobs.intel.com/page/show/manufacturing-facilities-jobs-process-engineer

**Exhibit 134.** Intel, Manufacturing Technician Careers: https://jobs.intel.com/page/show/manufacturing-facilities-jobs-technician

**Exhibit 135.** Intel, Oregon Wafer Assembly Process Engineer job listing: https://jobs.intel.com/ShowJob/Id/3527015/Oregon-Wafer-Assembly-Process-Engineer

**Exhibit 136.** Back to Work: Intel to Spend Nearly $4 Billion to Build Hillsboro Fab: https://nwlaborpress.org/2010/1105/11-5-10Intel.html

**Exhibit 137.** Deal for $1 Billion in Chipmaking Tolls Cold Signal Major Advance for Intel: https://www.oregonlive.com/silicon-forest/2015/04/deal_for_new_lithography_tools.html

**Exhibit 138.** Intel Opens 270,000 Square Foot of New Fab Space to Develop Next-Gen Chip Tech: https://www.pcgamer.com/intel-d1x-mod3-expansion-operational/

**Exhibit 139.** Intel Presentation: Oregon D1X-Mod 3 Grand Opening: https://www.tomshardware.com/news/intel-celebrates-dollar3-billion-d1x-mod3-fab-expansion-in-oregon

**Exhibit 140.** Intel Press Kit: Fab 32 Intel's First High-Volume 45nm Factory Opens Its Doors: https://www.intel.com/pressroom/kits/manufacturing/Fab32/photos.htm

**Exhibit 141.** Intel Fab 42 Now Ready to Pump Out Leading Edge Products: https://hexus.net/tech/news/cpu/145990-intel-fab-42-now-ready-pump-leading-edge-products/

**Exhibit 142.** What It's Like Inside a $7 Billion Intel Fab: https://www.cnet.com/tech/computing/what-its-like-inside-a-7-billion-intel-fab/

**Exhibit 143.** A Look Inside Intel's Mammoth Arizona Chipmaking Fab: https://www.cnet.com/pictures/a-look-inside-intels-mammoth-arizona-chipmaking-fab/

**Exhibit 144.** Intel, Front End Design Automation Engineer job listing: https://jobs.intel.com/ShowJob/Id/3314167/Front-End-Design-Automation-Engineer/

**Exhibit 145.** Intel In Arizona: https://www.intel.com/content/www/us/en/corporate-responsibility/intel-in-arizona.html

**Exhibit 146.** Inside Intel's D1D Fab – Through the Looking Glass: https://www.computerworld.com/article/2561162/inside-intel-s-d1d-fab----through-the-looking-glass.html

**Exhibit 147.** NXP i.MX 8 Family Fact Sheet: https://www.nxp.com/docs/en/fact-sheet/IMX8FAMFS.pdf

**Exhibit 148.** NXP Layerscape in Automotive presentation: https://www.nxp.com/docs/en/training-reference-material/MULTICORE-ARM-PROCESSORS-FOR-TELEMATICS.pdf

**Exhibit 149.** EV Integrated Cockpit on MediaTek MT2715 SoC: https://altia.com/product_demos/altia-electric-vehicle-integrated-cockpit-on-mediatek-mt2715-soc/

**Exhibit 150.** Qualcomm SA8155P Product Brief: https://www.qualcomm.com/media/documents/files/qualcomm-sa8155p-product-brief.pdf

---

### 2. *Exhibits Cited in NXP Claim Chart Exhibits 13, 15, 17, 19, 21, and 23 to this Complaint*

**Exhibit 71.** NXP: i.MX 8QuadMax Applications Processor Reference Manual

**Exhibit 72.** NXP: Data Sheet: Technical Data, i.MX 8 QuadMax Automotive and Infotainment Applications Processors

**Exhibit 73.** ARM Cortex-A72: https://developer.arm.com/Processors/Cortex-A72

**Exhibit 74.** ARM Cortex-A53: https://developer.arm.com/Processors/Cortex-A53

**Exhibit 75.** ARM Cortex-A Series: Programmer's Guide for ARMv8-A, Version 1.0

**Exhibit 76.** Ten Things to Know About big.LITTLE: https://community.arm.com/arm-community-blogs/b/architectures-and-processors-blog/posts/ten-things-to-know-about-big-little

**Exhibit 77.** High-level Considerations for Power Management of a big.LITTLE System, Application Note 424, Version 1.0

---

### 3. *Exhibits Cited in MediaTek Claim Chart Exhibits 14, 16, 18, 20, 22, and 24 to this Complaint*

**Exhibit 78.** MediaTek, Autus I20 (MT2712) Infotainment: https://www.mediatek.com/products/automotive/ivi

**Exhibit 79.** MediaTek, Autus I20 (MT2712): https://www.mediatek.com/products/ivi/mt2712

**Exhibit 80.** ARM Cortex-A35: https://developer.arm.com/Processors/Cortex-A35

**Exhibit 81.** ARM® Cortex®-A72 MPCore Processor: Technical Reference Manual (Revision: r0p3)

**Exhibit 82.** Arm® Cortex®-A35 Processor: Technical Reference Manual (Revision: r1p0)

**Exhibit 83.** ARM White Paper: Intelligent Power Allocation

**Exhibit 84.** ARM White Paper: Power and Performance Management Using ARM SCMI Specification

**Exhibit 85.** ARM Presentation: Ian Rickards - "Intelligent Power Allocation for Consumer & Embedded Thermal Control"

**Exhibit 86.** Introducing Cortex-A35: ARM's Most Efficient Application Processor: https://community.arm.com/arm-community-blogs/b/architectures-and-processors-blog/posts/introducing-cortex-a35-arm-s-most-efficient-application-processor

**Exhibit 87.** ARM announces new Cortex-A35: ultra-low power, 64-bit: https://www.extremetech.com/mobile/217896-arm-announces-new-cortex-a35-ultra-low-power-64-bit

**Exhibit 88.** ARMDeveloper Intelligent Power Allocation

**Exhibit 89.** Arm CoreLink PCK-600 enables efficient and rapid integration of SoC power management infrastructure: https://community.arm.com/arm-community-blogs/b/internet-of-things-blog/posts/new-pck-600-for-efficient-and-rapid-integration-of-soc-power-management-infrastructure

**Exhibit 90.** ARM Presentation: ARM, Intelligent Power Allocation

**Exhibit 91.** Processing Architecture for Power Efficiency and Performance

**Exhibit 92.** INTENTIONALLY LEFT BLANK

**Exhibit 93.** INTENTIONALLY LEFT BLANK

**Exhibit 94.** ARMv8-A Power Management, version 1.0

**Exhibit 95.** INTENTIONALLY LEFT BLANK

**Exhibit 96.** ARM Presentation: Dezso Sima – "*big.LITTLE Technology*"

**Exhibit 97.** Efficient Path Tracer for the Presence of Mobile Virtual Reality

———

### 4. *EXHIBITS CITED IN INTEL CLAIM CHART EXHIBITS 25-30 TO THIS COMPLAINT*

**Exhibit 98.** Intel Product Brief: 12th Generation Intel Core Desktop Processors

**Exhibit 99.** Intel Datasheet: 12th Generation Intel Core Processors, Volume 1 of 2

**Exhibit 100.** Alder Lake Overclocking: What's New: https://skatterbencher.com/2021/11/04/alder-lake-overclocking-whats-new/

**Exhibit 101.** INTENTIONALLY LEFT BLANK

**Exhibit 102.** Intel Support: Intel® Dynamic Tuning Technology (Intel® DTT) User Guide: https://www.intel.com/content/www/us/en/support/articles/000058479/graphics.html

**Exhibit 103.** WikiChip, Dynamic Tuning – Intel: https://en.wikichip.org/wiki/intel/dynamic_tuning

**Exhibit 104.** INTENTIONALLY LEFT BLANK

**Exhibit 105.** Intel Presentation: "Blueprint Series: 12th Gen Intel Core Processors"

**Exhibit 106.** Game Dev Guide for Alder Lake Performance Hybrid Architecture

**Exhibit 107.** Intel Alder Lake P-Core & E-Core Detailed: Golden Cove Offers 50% Higher Single-Threaded & Hybrid Design Offers 50% Higher Multi-Threaded Performance: https://wccftech.com/intel-alder-lake-p-core-e-core-detailed-golden-cove-offers-50-higher-single-threaded-hybrid-design-offers-50-higher-multi-threaded-performance/

**Exhibit 108.** Intel Presentation: Architecture Day 2021

**Exhibit 109.** Intel 64 and IA-32 Architectures Optimization Reference Manual

**Exhibit 110.** Intel Data Direct I/O Technology: https://www.intel.com/content/www/us/en/io/data-direct-i-o-technology.html

**Exhibit 111.** Intel Virtualization Technology (Intel® VT): https://www.intel.com/content/www/us/en/virtualization/virtualization-technology/intel-virtualization-technology.html

**Exhibit 112.** INTENTIONALLY LEFT BLANK

**Exhibit 113.** Intel Core i9-12900KF Processor: https://www.intel.com/content/www/us/en/products/sku/134600/intel-core-i912900kf-processor-30m-cache-up-to-5-20-ghz/specifications.html

**Exhibit 114.** INTENTIONALLY LEFT BLANK

**Exhibit 115.** INTENTIONALLY LEFT BLANK

**Exhibit 116.** Intel Alder Lake P-Core and E-Core Detailed: https://techedged.com/intel-p-core-and-e-core/

**Exhibit 117.** Intel Unveils Alder Lake: Next-Generation Mainstream Heterogeneous Multi-Core SoC: https://fuse.wikichip.org/news/6115/intel-unveils-alder-lake-next-generation-mainstream-heterogeneous-multi-core-soc/

**Exhibit 118.** Dynamic Voltage and Frequency Scaling: https://www.sciencedirect.com/topics/computer-science/dynamic-voltage-and-frequency-scaling

**Exhibit 119.** Intel, 12th Gen Intel® Core: performance hybrid architecture

**Exhibit 120.** Intel Processor Frequency ID Utility Common Terms: https://www.intel.com/content/www/us/en/support/articles/000007382/processors.html

**Exhibit 121.** Cisco White Paper: Performance Tuning Guide for Cisco UCS M5 Servers

**Exhibit 122.** Intel Architecture Day 2021: Alder Lake, Golden Cove, and Gracemont Detailed: https://www.anandtech.com/show/16881/a-deep-dive-into-intels-alder-lake-microarchitectures

## APPENDIX LIST

**Appendix A.** Certified Copy of file history for U.S. Patent No. 8,775,833

**Appendix B.** Patent technical references cited on the face of U.S. Patent No. 8,775,833

**Appendix C.** Certified Copy of file history for U.S. Patent No. 8,898,494

**Appendix D.** Patent technical references cited on the face of U.S. Patent No. 8,898,494

**Appendix E.** Certified Copy of file history for U.S. Patent No. 9,575,895

**Appendix F.** Patent technical references cited on the face of U.S. Patent No. 9,575,895

**Appendix G.** Certified Copy of file history for U.S. Patent No. 10,049,080

**Appendix H.** Patent technical references cited on the face of U.S. Patent No. 10,049,080

**Appendix I.** Certified Copy of file history for U.S. Patent No. 10,394,300

**Appendix J.** Patent technical references cited on the face of U.S. Patent No. 10,394,300

**Appendix K.** Certified Copy of file history for U.S. Patent No. 10,705,588

**Appendix L.** Patent technical references cited on the face of U.S. Patent No. 10,705,588

# I. INTRODUCTION

1. Complainant Daedalus Prime LLC ("Daedalus") files this complaint pursuant to Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337 ("Section 337"). Daedalus respectfully requests that the United States International Trade Commission (the "Commission") institute an investigation relating to the unlawful sale for importation into the United States, importation into the United States, and or sale within the United States after importation of certain semiconductors and devices and products containing the same, including printed circuit boards, automotive parts, and automobiles.

2. The Respondents are Arrow Electronics, Inc. ("Arrow"), Avnet, Inc. ("Avnet"), Digi-Key Electronics ("Digi-Key"), Future Electronics Inc. ("Future"), Mazda Motor Corporation, Mazda North American Operations, and Mazda Motor of America, Inc. (collectively, "Mazda"), MediaTek Inc. and MediaTek USA Inc. (collectively, "MediaTek"), Mercedes-Benz Group AG, Mercedes-Benz AG, and Mercedes-Benz USA, LLC (collectively, "Mercedes"), Mouser Electronics, Inc. ("Mouser"), Newark (an Avnet Company) ("Newark"), NXP Semiconductors N.V. and NXP USA, Inc. (collectively, "NXP"), Rochester Electronics, LLC ("Rochester"), and Visteon Corporation ("Visteon") (all individually or collectively, "Respondent(s)").

3. Respondents, on information and belief, have violated and continue to violate Section 337 through the sale for importation, importation, and/or the sale within the United States after importation of certain semiconductors and devices and products containing the same, including printed circuit boards, automotive parts, and automobiles that infringe Daedalus's United States Patent No. 8,775,833 (Exhibit 1, the "'833 Patent"), United States Patent No. 8,898,494 (Exhibit 3, the "'494 Patent"), United States Patent No. 9,575,895 (Exhibit 5, the "'895 Patent"), United States Patent No. 10,049,080 (Exhibit 7, the "'080 Patent"), United States Patent No. 10,394,300 (Exhibit 9, the "'300 Patent"), and United States Patent No. 10,705,588 (Exhibit 11,

the "'588 Patent") (all individually or collectively, the "Asserted Patent(s)") to the detriment of the domestic industry that exists in the United States relating to articles protected by the Asserted Patents.

4. Daedalus asserts that Respondents infringe at least the following claims of the Asserted Patents:

| Asserted Patent | Asserted Claims[1] Against All Respondents |
|---|---|
| U.S. Patent No. 8,775,833 | **1**-7, **8**-12, **13**-18 |
| U.S. Patent No. 8,898,494 | **1**-3, **4**-7, **8**-18 |
| U.S. Patent No. 9,575,895 | **1**-10, **11**-14, **15**-17 |
| U.S. Patent No. 10,049,080 | **1**-8, **9**-16, **17**-24 |
| U.S. Patent No. 10,394,300 | **1**, 2-15, **16**-17, **18**-19 |
| U.S. Patent No. 10,705,588 | **1**-7, **8**-19, **20** |

5. Pursuant to Commission Rule 210.12(a)(12), Daedalus's clear statement in plain English of the categories of accused products is as follows: semiconductors, printed circuit boards ("PCBs"), automotive parts including infotainment systems and instrument clusters, and automobiles.

6. To remedy Respondents' continuing and unlawful violation of Section 337, Daedalus seeks as permanent relief a limited exclusion order pursuant to 19 U.S.C. § 1337(d)(1), barring from entry into the United States all of Respondents' semiconductors and devices and products containing the same, including printed circuit boards, automotive parts, and automobiles that infringe at least one valid, enforceable claim of at least one Asserted Patent. Daedalus also seeks cease and desist orders pursuant to 19 U.S.C. § 1337(f) prohibiting Respondents from

[1] The asserted independent claims are noted in bold, underlined text.

engaging in the importation into the United States and/or the sale within the United States after importation of semiconductors and devices and products containing the same, including printed circuit boards, automotive parts, and automobiles that infringe at least one valid, enforceable claim of at least one Asserted Patent, as well as all activities encouraging, supporting and/or otherwise related to such importation and/or sale. Finally, Daedalus requests that the Commission impose a bond upon Respondents' importation of infringing semiconductors and devices and products containing the same, including printed circuit boards, automotive parts, and automobiles during the 60-day Presidential review period, pursuant to 19 U.S.C. § 1337(j), to prevent further injury to the domestic industry relating to articles protected by the Asserted Patents.

## II. THE PARTIES

### A. Complainant

7. Complainant Daedalus Prime LLC is a privately-held corporation organized and existing under the laws of the State of Delaware and registered to do business in New York, with its address at 51 Pondfield Road, Suite 3, Bronxville, NY 10708.

### B. Respondents

8. Daedalus alleges the following regarding Respondents upon information and belief:

#### 1. Arrow Electronics, Inc.

9. Respondent Arrow Electronics, Inc. is a publicly-held corporation organized and existing under the laws of the State of New York, with its address at 9201 East Dry Creek Road, Centennial, CO 80112.

10. Arrow Electronics, Inc. claims to be a global provider of technology products, services, and solutions with a broad portfolio that spans the entire technology landscape.

11. Arrow Electronics, Inc. is an authorized U.S. distributor for Respondents NXP Semiconductors N.V. and NXP USA, Inc. (*See, e.g.,* Ex. 31.)

12. The NXP Respondents' automotive customers are serviced via its global distribution partners such as Arrow Electronics, Inc. (*See, e.g.,* Ex. 32 at 27/43.)

**2. Avnet, Inc.**

13. Respondent Avnet, Inc. is a publicly-held corporation organized and existing under the laws of the State of New York, with its address at 2211 South 47th Street, Phoenix, AZ 85034.

14. Avnet, Inc. claims to be a leading global technology distributor and solutions provider serving a number of different markets.

15. Avnet, Inc. is an authorized U.S. distributor for Respondents NXP Semiconductors N.V. and NXP USA, Inc. (*See, e.g.,* Ex. 31.)

16. The NXP Respondents' automotive customers are serviced via its global distribution partners such as Avnet, Inc. (*See, e.g.,* Ex. 32 at 27/43.)

**3. Digi-Key Electronics**

17. Respondent Digi-Key Electronics is a privately-held corporation organized and existing under the laws of the State of Minnesota, with its address at 701 Brooks Avenue South, Thief River Falls, MN 56701.

18. Digi-Key Electronics claims to be recognized as both the leader and continuous innovator in the high service distribution of electronic components and automation products worldwide. Today, Digi-Key claims to offer the world's largest selection of electronic components in stock and available for immediate shipment.

19. Digi-Key Electronics is an authorized U.S. distributor for Respondents NXP Semiconductors N.V. and NXP USA, Inc. (*See, e.g.,* Ex. 31.)

20. The NXP Respondents' automotive customers are serviced via its global distribution partners such as Digi-Key Electronics. (*See, e.g.,* Ex. 32 at 27/43.)

**4. Future Electronics Inc.**

21. Respondent Future Electronics Inc. is a privately-held corporation organized and existing under the laws of Canada, with its address at 237 Hymus Boulevard, Pointe Claire, Quebec, Canada H9R 57C.

22. Future Electronics, Inc. claims to be a worldwide leader in electronic components distribution.

23. Future Electronics, Inc. is an authorized U.S. distributor for Respondents NXP Semiconductors N.V. and NXP USA, Inc. (*See, e.g.,* Ex. 31.)

24. The NXP Respondents' automotive customers are serviced via its global distribution partners such as Future Electronics, Inc. (*See, e.g.,* Ex. 32 at 27/43.)

**5. Mazda Motor Corporation**

25. Respondent Mazda Motor Corporation is a publicly-held corporation organized and existing under the laws of Japan, with its address at 3-1 Shinchi, Fuchu-cho, Aki-gun, Hiroshima 730-8670 Japan.

26. Mazda Motor Corporation is the ultimate parent company of the Mazda Group (which also includes Respondents Mazda North American Operations and Mazda Motor of America, Inc.). Mazda Motor Corporation claims that its main business is the manufacture and sale of passenger cars and commercial vehicles. (*See, e.g.,* Ex. 50.)

**6. Mazda North American Operations**

27. Respondent Mazda North American Operations is a privately-held corporation organized and existing under the laws of the State of California, with its address at 200 Spectrum Center Drive, Suite 100, Irvine, CA 92618.

28. Mazda North American Operations is a subsidiary in the Mazda Group parented by Respondent Mazda Motor Corporation. Mazda North American Operations' primary business is

as an importer and distributor of Mazda vehicles, parts and accessories and conducting technical trend surveys and research, design, development, evaluation, testing, and vehicle certification for the North American market. (*See, e.g.,* Ex. 51.)

**7. Mazda Motor of America, Inc.**

29. Respondent Mazda Motor of America, Inc. is a privately-held corporation organized and existing under the laws of the State of California, with its address at 200 Spectrum Center Drive, Suite 100, Irvine, CA 92618.

30. Mazda Motor of America, Inc. is a subsidiary in the Mazda Group parented by Respondent Mazda Motor Corporation. Mazda Motor of America, Inc. is an importer and distributor of Mazda vehicles, parts and accessories. (*See, e.g.,* Ex. 51.)

31. The Mazda Group has production sites throughout the world, including in Japan, China, Thailand, Mexico, Vietnam, Malaysia, and Russia, but not in the United States. (*See, e.g.,* Ex. 50.)

32. The Mazda Respondents' vehicles incorporate Visteon's automotive infotainment systems. (*See, e.g.,* Ex. 48; Ex. 45 at 3.)

**8. MediaTek Inc.**

33. Respondent MediaTek Inc. is a publicly-held corporation organized and existing under the laws of Taiwan, with its address at No. 1, Dusing 1st Road, Hsinchu Science Park, Hsinchu, 30078, Taiwan.

34. MediaTek Inc. is the ultimate parent company of the MediaTek Group (which also includes Respondent MediaTek USA Inc.), who claims that its business aims for first mover opportunities in AI (artificial intelligence) and 5G to provide chipset solutions across platforms, including smart home, connectivity, IoT and wearable, ASIC, and smart mobile devices.

**9. MediaTek USA Inc.**

35. Respondent MediaTek USA Inc. is a privately-held corporation organized and existing under the laws of the State of Delaware, with its address at 2840 Junction Ave., San Jose, CA 95134.

36. MediaTek USA Inc. is the U.S. subsidiary in the MediaTek Group parented by Respondent MediaTek Inc.

37. The MediaTek Respondents' semiconductor chipsets are utilized in Visteon's automotive infotainment systems. (*See, e.g.,* Ex. 46.)

**10. Mercedes-Benz Group AG**

38. Respondent Mercedes-Benz Group AG is a publicly-held corporation organized and existing under the laws of Germany, with its address at 70456 Stuttgart, Germany.

39. Mercedes-Benz Group AG (formerly known as Daimler AG) is the ultimate parent company of the Mercedes-Benz Group (which also includes Respondent Mercedes-Benz USA, LLC). Mercedes-Benz Group AG claims to be one of the leading global suppliers of premium and luxury cars and vans. (*See, e.g.,* Ex. 56.)

**11. Mercedes-Benz AG**

40. Respondent Mercedes-Benz AG is a privately-held corporation organized and existing under the laws of Germany, with its address at Epplestraße 225, 70567 Stuttgart-Möhringen, Germany.

41. Mercedes-Benz AG is a subsidiary in the Merecedes-Benz Group parented by Respondent Mercedes-Benz Group AG. Mercedes-Benz AG is responsible for the global business of Mercedes-Benz Cars and Mercedes-Benz Vans, focusing on the development, production, and sales of passenger cars, vans and services and aspiring to lead in the fields of connectivity, automated driving and alternative drives with its forward-looking innovations. (*See, e.g.,* Ex. 57.)

**12. Mercedes-Benz USA, LLC**

42. Respondent Mercedes-Benz USA, LLC is a privately-held corporation organized and existing under the laws of the State of Delaware, with its address at 1 Mercedes-Benz Drive, Sandy Springs, GA 30328.

43. Mercedes-Benz USA, LLC is a U.S. subsidiary in the Merecedes-Benz Group parented by Respondent Mercedes-Benz Group AG. Mercedes-Benz USA, LLC is responsible for the distribution, marketing, and customer service for all Mercedes-Benz products in the United States. (*See, e.g.,* Ex. 58.)

44. The Mercedes Benz Group has production plants in 22 countries throughout the world, including in Germany, the United States, France, Romania, China, and South Africa. (*See, e.g.,* Ex. 60.)

45. The Mercedes Respondents' vehicles incorporate Visteon's automotive infotainment systems. (*See, e.g.,* Ex. 47; Ex. 49; Ex. 45 at 3.)

**13. Mouser Electronics, Inc.**

46. Respondent Mouser Electronics, Inc. is a privately-held corporation organized and existing under the laws of the State of Delaware, with its address at 1000 North Main Street, Mansfield, TX 76063.

47. Mouser Electronics, Inc. claims to be a globally authorized distributor of semiconductors and electronic components for over 1,200 industry-leading manufacturer brands, specializing in the rapid introduction of the newest products and technologies targeting the design engineer and buyer communities.

48. Mouser Electronics, Inc. is an authorized U.S. distributor for Respondents NXP Semiconductors N.V. and NXP USA, Inc. (*See, e.g.,* Ex. 31.)

49. The NXP Respondents' automotive customers are serviced via its global distribution partners such as Mouser Electronics, Inc. (*See, e.g.,* Ex. 32 at 27/43.)

**14. Newark**

50. Respondent Newark is a privately-held corporation organized and existing under the laws of the state of Illinois, with its address at 300 S. Riverside Plaza, Suite 2200, Chicago, IL 60606.

51. Newark is an ultimate subsidiary of Respondent Avnet, Inc. Newark claims to be a high-service distributor of technology products, services, and solutions for electronic system design, maintenance, and repair.

52. Newark is an authorized U.S. distributor for Respondents NXP Semiconductors N.V. and NXP USA, Inc. (*See, e.g.,* Ex. 31.)

53. The NXP Respondents' automotive customers are serviced via its global distribution partners such as Newark. (*See, e.g.,* Ex. 32 at 27/43.)

**15. NXP Semiconductors N.V.**

54. Respondent NXP Semiconductors N.V. is a publicly-held corporation organized and existing under the laws of The Netherlands, with its address at High Tech Campus 60, 5656 AG Eindhoven, Netherlands.

55. Respondent NXP Semiconductors N.V. is the ultimate parent company of the NXP Group (which also includes Respondent NXP USA, Inc.) Respondent NXP Semiconductors N.V. claims to design purpose-built, rigorously tested technologies that enable devices to sense, think, connect, and act intelligently to improve people's daily lives across platforms including automotive, communication infrastructure, industrial, mobile, smart city, and smart home.

**16. NXP USA, Inc.**

56. Respondent NXP USA, Inc. is a privately-held corporation organized and existing under the laws of the State of Delaware, with its address at 6501 W. William Cannon Dr., Austin, TX 78735.

57. NXP USA, Inc. is a subsidiary in the NXP Group parented by Respondent NXP Semiconductors N.V. NXP USA, Inc. is responsible for design, manufacturing, and sales of NXP products in the United States. (*See, e.g.,* Ex. 33.)

58. The NXP Respondents' semiconductor chipsets are utilized in Visteon's automotive infotainment systems. (*See, e.g.,* Ex. 46.)

**17. Rochester Electronics, LLC**

59. Respondent Rochester Electronics, LLC is a privately-held corporation organized and existing under the laws of the State of Delaware, with its address at 16 Malcolm Hoyt Drive, Newburyport, MA 01950.

60. Rochester Electronics, LLC claims to be the world's largest continuous source of semiconductors—100% authorized by over 70 leading semiconductor manufacturers, and has over 15 billion devices in stock encompassing more than 200,000-part numbers, providing the world's most extensive range of end-of-life (EOL) semiconductors and broadest range of active semiconductors.

61. Rochester Electronics, LLC is an authorized U.S. distributor for Respondents NXP Semiconductors N.V. and NXP USA, Inc. (*See, e.g.,* Ex. 31.)

62. The NXP Respondents' automotive customers are serviced via its global distribution partners such as Rochester. (*See, e.g.,* Ex. 32 at 27/43.)

**18. Visteon Corporation**

63. Respondent Visteon Corporation is a publicly-held corporation organized and existing under the laws of the State of Delaware, with its address at One Village Center, Van Buren Township, MI 48111.

64. Visteon Corporation claims to be a global technology company at the epicenter of the mobility revolution, and develops and integrates solutions for the changing landscape in automotive technology—improving safety, security and consumer confidence.

65. Visteon Corporation provides automotive infotainment systems, including those that utilize semiconductor chipsets from the NXP Respondents and the MediaTek Respondents, as well as third party Qualcomm.[2] (*See, e.g.,* Ex. 46.)

66. Visteon Corporation's automotive infotainment systems are used by the Mazda Respondents and Mercedes-Benz Respondents. (*See, e.g.,* Ex. 48; Ex. 49; Ex. 45 at 3.)

## III. THE ASSERTED PATENTS

67. Daedalus provides the following information regarding the Asserted Patents for the Commission's edification only—none of the following is intended to limit the scope or meaning of any of the Asserted Patents or their claims.

---

[2] On information and belief, at least Qualcomm's Snapdragon 820 Automotive Platform is based on ARMv8 architecture like the NXP and Mediatek Respondents' representative Accused Products. (*See, e.g.,* Ex. 35 at 2/5.) Thus, such Qualcomm semiconductors, and any devices and products containing the same, including printed circuit boards, automotive parts, and automobiles, are also accused in this Investigation to the extent they are imported, sold for importation, or sold after importation by any Respondent(s).

### A. U.S. Patent No. 8,775,833

68. The ’833 Patent, titled “Dynamically allocating a power budget over multiple domains of a processor,” is properly assigned to Daedalus. (*See, e.g.*, Exs. 2.1, 2.2;[3] Ex. 64C at Table A, Entry No. 32.)

69. Pursuant to Commission Rules 210.12(a)(9)(i)-(ii), a certified copy of the ’833 Patent and a copy of the assignment records concerning the ’833 Patent are attached hereto as Exhibit 1 and Exhibits 2.1-2.2, respectively.

70. Pursuant to Commission Rule 210.12(c)(l), Appendix A contains one certified copy of the PTO prosecution history for the ’833 Patent plus three additional copies thereof.

71. Pursuant to Commission Rule 210.12(c)(2), Appendix B contains four copies of each patent and the applicable pages of each technical reference mentioned in the prosecution history of the ’833 Patent.

72. The ’833 Patent was filed on February 28, 2013 and issued on July 8, 2014. The ’833 Patent is a continuation of, and claims priority to, U.S. Patent Application No. 13/225,677, filed on September 6, 2011.

73. The ’833 Patent has 18 claims, including 3 independent claims (claims 1, 8, and 13) and 15 dependent claims. Daedalus asserts claims 1-18 of the ’833 Patent against Respondents.

74. Pursuant to Commission Rule 210.12(c)(9)(xi), Daedalus currently believes that the ’833 Patent’s expiration date is September 6, 2031.

---

[3] The attached assignment record for the ’833 Patent (Ex. 2.1) is a non-certified copy. Daedalus will provide a certified copy once it is received. The assignment of the original application in the family, which issued as U.S. Patent No. 8,769,316, operates to initially assign the rights to all subsequent applications and resulting patents in the family, including the ’833 Patent. A certified copy of the assignment records for the ’316 Patent is attached hereto as Exhibit 2.2.

### 1. Non-Technical Description of the ’833 Patent

75. The ’833 Patent describes and claims a multi-domain processor that determines its power budget, allocates portions of the power budget to two different domains of the processor, and may control the frequencies of those two domains based on the allocated portions of the power budget.

### 2. Foreign Counterparts to the ’833 Patent

76. Pursuant to Commission Rule 210.12(a)(9)(v), the following is a list of foreign counterparts relating to the ’833 Patent that are currently known to Daedalus, whether issued, filed, denied, abandoned, or withdrawn:

| Country | Local Serial Number | Local Filing Date | Local Patent Number | Status |
|---|---|---|---|---|
| WIPO | PCT/US2012/053726 | Sept. 5, 2012 | - | - |
| Germany | DE112012003701 | Sept. 5, 2012 | | Patented |
| Germany | DE202012008539 | Sept. 6, 2012 | | Pending/in force |
| Taiwan | 101132365 | Sept. 5, 2012 | TWI470409 | Patented |
| Taiwan | 103140478 | Sept. 5, 2012 | TWI512447 | Patented |

77. Daedalus is not currently aware of any other foreign counterparts to the ’833 Patent, whether issued, filed, denied, abandoned, or withdrawn.

### 3. Licensees to the ’833 Patent

78. Pursuant to 19 C.F.R. § 210.12(a)(9)(iii), a listing of potential rights in the ’833 Patent that are currently known to Daedalus is included in Confidential Exhibit 63C.

**B. U.S. Patent No. 8,898,494**

79. The ’494 Patent, titled “Power budgeting between a processing core, a graphics core, and a bus on an integrated circuit when a limit is reached,” is properly assigned to Daedalus. (*See, e.g.*, Exs. 4.1, 4.2;[4] Ex. 64C at Table A, Entry No. 46.)

80. Pursuant to Commission Rules 210.12(a)(9)(i)-(ii), a certified copy of the ’494 Patent and a copy of the assignment records concerning the ’494 Patent are attached hereto as Exhibit 3 and Exhibits 4.1-4.2, respectively.

81. Pursuant to Commission Rule 210.12(c)(l), Appendix C contains one certified copy of the PTO prosecution history for the ’494 Patent plus three additional copies thereof.

82. Pursuant to Commission Rule 210.12(c)(2), Appendix D contains four copies of each patent and the applicable pages of each technical reference mentioned in the prosecution history of the ’494 Patent.

83. The ’494 Patent was filed on February 16, 2012 and issued on November 25, 2014. The ’494 Patent is a continuation-in-part of U.S. Patent Application No. 13/327,670 (now U.S. Patent No. 9,304,570), filed on December 15, 2011.

84. The ’494 Patent has 18 claims, including 3 independent claims (claims 1, 4, and 8) and 15 dependent claims. Daedalus asserts claims 1-18 of the ’494 Patent against Respondents.

85. Pursuant to Commission Rule 210.12(c)(9)(xi), Daedalus currently believes that the ’494 Patent’s expiration date is April 1, 2032.

---

[4] The attached assignment record for the ’494 Patent (Ex. 4.1) includes a non-certified copy of the assignment recorded in June 2022 and a certified copy of the assignment recorded in May 2013. Daedalus will provide a full certified copy once it is received. The assignment of the original application in the family, which issued as U.S. Patent No. 9,304,570, operates to initially assign the rights to all subsequent applications and resulting patents in the family, including the ’494 Patent. A certified copy of the assignment records for the ’570 Patent is attached hereto as Exhibit 4.2.

### 1. Non-Technical Description of the '494 Patent

86. The '494 patent describes and claims an apparatus, method, and system for efficiently balancing performance and power between processing elements based on measured workloads. If a workload of a processing element indicates that it is a bottleneck, then its performance may be increased. However, if a platform or integrated circuit including the processing element is already operating at a power or thermal limit, the increase in performance is counterbalanced by a reduction or cap in another processing element's performance to maintain compliance with the power or thermal limit. As a result, bottlenecks are identified and alleviated by balancing power allocation, even when multiple processing elements are operating at a power or thermal limit.

### 2. Foreign Counterparts to the '494 Patent

87. Pursuant to Commission Rule 210.12(a)(9)(v), the following is a list of foreign counterparts relating to the '494 Patent that are currently known to Daedalus, whether issued, filed, denied, abandoned, or withdrawn:

| Country | Local Serial Number | Local Filing Date | Local Patent Number | Status |
|---|---|---|---|---|
| WIPO | PCT/US2012/069164 | Dec. 12, 2012 | - | - |
| China | 201280069930.1 | Dec. 12, 2012 | CN104115093 | Patented |
| China | 201710115292.7 | Dec. 12, 2012 | CN106843430 | Patented |
| China | 201220697195.6 | Dec. 12, 2012 | | |
| Germany | DE202012011944.3 | Dec. 13, 2012 | | Pending/in force |
| Taiwan | 101147519 | Dec. 14, 2012 | TWI610165 | Patented |

88. Daedalus is not currently aware of any other foreign counterparts to the '494 Patent, whether issued, filed, denied, abandoned, or withdrawn.

### 3. Licensees to the '494 Patent

89. Pursuant to 19 C.F.R. § 210.12(a)(9)(iii), a listing of potential rights in the '494 Patent that are currently known to Daedalus is included in Confidential Exhibit 63C.

## C. U.S. Patent No. 9,575,895

90. The '895 Patent, titled "Providing common caching agent for core and integrated input/output (IO) module," is properly assigned to Daedalus. (*See, e.g.*, Exs. 6.1, 6.2;[5] Ex. 64C at Table A, Entry No. 98.)

91. Pursuant to Commission Rules 210.12(a)(9)(i)-(ii), a certified copy of the '895 Patent and a copy of the assignment records concerning the '895 Patent are attached hereto as Exhibit 5 and Exhibit 6.1-6.2, respectively.

92. Pursuant to Commission Rule 210.12(c)(l), Appendix E contains one certified copy of the PTO prosecution history for the '895 Patent plus three additional copies thereof.

93. Pursuant to Commission Rule 210.12(c)(2), Appendix F contains four copies of each patent and the applicable pages of each technical reference mentioned in the prosecution history of the '895 Patent.

94. The '895 Patent was filed on January 30, 2015 and issued on February 21, 2017. The '895 Patent is a continuation of U.S. Patent Application No. 13/324,053 (now U.S. Patent No. 8,984,228) filed on December 13, 2011.

95. The '895 Patent has 17 claims, including 3 independent claims (claims 1, 11, 15) and 14 dependent claims. Daedalus asserts claims 1-17 of the '895 Patent against Respondents.

[5] The attached assignment record for the '895 Patent (Ex. 6.1) is a non-certified copy. Daedalus will provide a certified copy once it is received. The assignment of the original application in the family, which issued as U.S. Patent No. 8,984,228, operates to initially assign the rights to all subsequent applications and resulting patents in the family, including the '895 Patent. A certified copy of the assignment records for the '228 Patent is attached hereto as Exhibit 6.2.

96. Pursuant to Commission Rule 210.12(c)(9)(xi), Daedalus currently believes that the ’895 Patent’s expiration date is February 20, 2032.

**1. Non-Technical Description of the ’895 Patent**

97. The ’895 Patent describes and claims a processor with a plurality of cores, a shared cache memory, an integrated input/output (IIO) module to interface between the multicore processor and at least one IO device coupled to the multicore processor, and a caching agent to perform cache coherency operations for the plurality of cores and the IIO module.

**2. Foreign Counterparts to the ’895 Patent**

98. Pursuant to Commission Rule 210.12(a)(9)(v), the following is a list of foreign counterparts relating to the ’895 Patent that are currently known to Daedalus, whether issued, filed, denied, abandoned, or withdrawn:

| Country | Local Serial Number | Local Filing Date | Local Patent Number | Status |
|---|---|---|---|---|
| WIPO | PCT/US2012/069018 | December 11, 2012 | - | - |
| Germany | DE112012005210 | December 11, 2012 | | Patented |

99. Daedalus is not currently aware of any other foreign counterparts to the ’895 Patent, whether issued, filed, denied, abandoned, or withdrawn.

**3. Licensees to the ’895 Patent**

100. Pursuant to 19 C.F.R. § 210.12(a)(9)(iii), a listing of potential rights in the ’895 Patent that are currently known to Daedalus is included in Confidential Exhibit 63C.

**D. U.S. Patent No. 10,049,080**

101. The ’080 Patent, titled “Asymmetric performance multicore architecture with same instruction set architecture,” is properly assigned to Daedalus. (*See, e.g.*, Exs. 8.1, 8.2;[6] Ex. 64C at Table A, Entry No. 90.)

102. Pursuant to Commission Rules 210.12(a)(9)(i)-(ii), a certified copy of the ’080 Patent and a copy of the assignment records concerning the ’080 Patent are attached hereto as Exhibit 7 and Exhibits 8.1-8.2, respectively.

103. Pursuant to Commission Rule 210.12(c)(l), Appendix G contains one certified copy of the PTO prosecution history for the ’080 Patent plus three additional copies thereof.

104. Pursuant to Commission Rule 210.12(c)(2), Appendix H contains four copies of each patent and the applicable pages of each technical reference mentioned in the prosecution history of the ’080 Patent.

105. The ’080 Patent was filed on February 13, 2017 and issued on August 14, 2018. The ’080 Patent is a continuation of U.S. Patent Application No. 13/335,257 (now U.S. Patent No. 9,569,278) filed on December 22, 2011.

106. The ’080 Patent has 24 claims, including 3 independent claims (claims 1, 9, 17) and 21 dependent claims. Daedalus asserts claims 1-24 of the ’080 Patent against Respondents.

107. Pursuant to Commission Rule 210.12(c)(9)(xi), Daedalus currently believes that the ’080 Patent’s expiration date is December 22, 2031.

---

[6] The attached assignment record for the ’080 Patent (Ex. 8.1) is a non-certified copy. Daedalus will provide a certified copy once it is received. The assignment of the original application in the family, which issued as U.S. Patent No. 9,569,278, operates to initially assign the rights to all subsequent applications and resulting patents in the family, including the ’080 Patent. A certified copy of the assignment records for the ’278 Patent is attached hereto as Exhibit 8.2.

### 1. Non-Technical Description of the '080 Patent

108. The '080 Patent describes and claims a method, device, and system that entails operating enabled cores of a multi-core processor such that both cores support respective software routines with a same instruction set, a first core being higher performance and consuming more power than a second core under a same set of applied supply voltage and operating frequency.

### 2. Foreign Counterparts to the '080 Patent

109. Pursuant to Commission Rule 210.12(a)(9)(v), the following is a list of foreign counterparts relating to the '080 Patent that are currently known to Daedalus, whether issued, filed, denied, abandoned, or withdrawn:

| Country | Local Serial Number | Local Filing Date | Local Patent Number | Status |
|---|---|---|---|---|
| WIPO | PCT/US2012/068274 | Dec. 6, 2012 | - | - |
| China | 201280063860.9 | Dec. 6, 2012 | CN104011704 | Patented |
| China | 201810311226.1 | Dec. 6, 2012 | CN108763129 | Patented |
| China | 202110256803.3 | Dec. 6, 2012 | CN112947736 | Patented |
| Taiwan | 101147200 | Dec. 13, 2013 | TWI470418 | Patented |

110. Daedalus is not currently aware of any other foreign counterparts to the '080 Patent, whether issued, filed, denied, abandoned, or withdrawn.

### 3. Licensees to the '080 Patent

111. Pursuant to 19 C.F.R. § 210.12(a)(9)(iii), a listing of potential rights in the '080 Patent that are currently known to Daedalus is included in Confidential Exhibit 63C.

**E. U.S. Patent No. 10,394,300**

112. The ’300 Patent, titled “Controlling operating voltage of a processor,” is properly assigned to Daedalus. (*See, e.g.*, Exs. 10.1, 10.2;[7] Ex. 64C at Table A, Entry No. 121.)

113. Pursuant to Commission Rules 210.12(a)(9)(i)-(ii), a certified copy of the ’300 Patent and a copy of the assignment records concerning the ’300 Patent are attached hereto as Exhibit 9 and Exhibit 10.1–10.2, respectively.

114. Pursuant to Commission Rule 210.12(c)(l), Appendix I contains one certified copy of the PTO prosecution history for the ’300 Patent plus three additional copies thereof.

115. Pursuant to Commission Rule 210.12(c)(2), Appendix J contains four copies of each patent and the applicable pages of each technical reference mentioned in the prosecution history of the ’300 Patent.

116. The ’300 Patent was filed on April 30, 2018 and issued on August 27, 2019. The ’300 Patent is a continuation of U.S. Patent Application No. 15/537,553 (now U.S. Patent No. 9,996,135) filed on May 18, 2016, which is a continuation of U.S. Patent Application No. 13/793,037 (now U.S. Patent No. 9,367,114) filed on March 11, 2013.

117. The ’300 Patent has 19 claims, including 3 independent claims (claims 1, 16, and 18) and 16 dependent claims. Daedalus asserts claims 1-19 of the ’300 Patent against Respondents.

118. Pursuant to Commission Rule 210.12(c)(9)(xi), Daedalus currently believes that the ’300 Patent’s expiration date is March 11, 2033.

---

[7] The attached assignment record for the ’300 Patent (Ex. 10.1) is a non-certified copy. Daedalus will provide a certified copy once it is received. The assignment of the original application in the family, which issued as U.S. Patent No. 9,367,114, operates to initially assign the rights to all subsequent applications and resulting patents in the family, including the ’300 Patent. A certified copy of the assignment records for the ’114 Patent is attached hereto as Exhibit 10.2.

### 1. Non-Technical Description of the ’300 Patent

119. The ’300 Patent describes and claims a method, device, and system comprising a processor that includes a core domain with a plurality of cores and a power controller including a first logic to receive a first request to increase an operating voltage of a first core of the core domain to a second voltage, to instruct a voltage regulator to increase the operating voltage to an interim voltage, and to thereafter instruct the voltage regulator to increase the operating voltage to the second voltage.

### 2. Foreign Counterparts to the ’300 Patent

120. Pursuant to Commission Rule 210.12(a)(9)(v), Daedalus is not currently aware of any foreign counterparts to the ’300 Patent, whether issued, filed, denied, abandoned, or withdrawn.

### 3. Licensees to the ’300 Patent

121. Pursuant to 19 C.F.R. § 210.12(a)(9)(iii), a listing of potential rights in the ’300 Patent that are currently known to Daedalus is included in Confidential Exhibit 63C.

## F. U.S. Patent No. 10,705,588

122. The ’588 Patent, titled “Enabling a non-core domain to control memory bandwidth in a processor,” is properly assigned to Daedalus. (*See, e.g.*, Exs. 12.1, 12.2;[8] Ex. 64C at Table A, Entry No. 25.)

---

[8] The attached assignment record for the ’588 Patent (Ex. 12.1) is a non-certified copy. Daedalus will provide a certified copy once it is received. The assignment of the original application in the family, which issued as U.S. Patent No. 8,832,478, operates to initially assign the rights to all subsequent applications and resulting patents in the family, including the ’588 Patent. A certified copy of the assignment records for the ’478 Patent is attached hereto as Exhibit 12.2.

123. Pursuant to Commission Rules 210.12(a)(9)(i)-(ii), a certified copy of the '588 Patent and a copy of the assignment records for the '588 Patent are attached hereto as Exhibit 11 and Exhibits 12.1-12.2, respectively.

124. Pursuant to Commission Rule 210.12(c)(l), Appendix K contains one certified copy of the PTO prosecution history for the '588 Patent plus three additional copies thereof.

125. Pursuant to Commission Rule 210.12(c)(2), Appendix L contains four copies of each patent and the applicable pages of each technical reference mentioned in the prosecution history of the '588 Patent.

126. The '588 Patent was filed on January 16, 2019 and issued on July 7, 2020. The '588 Patent is a continuation of U.S. Patent Application No. 15/381,241 (now U.S. Patent No. 10,248,181) filed on December 16, 2016, which is a continuation of U.S. Patent Application No. 15/138,505 (now U.S. Patent No. 10,037,067) filed on April 26, 2016, which is a continuation of U.S. Patent Application No. 14/451,807 (now U.S. Patent No. 9,354,692) filed on August 5, 2014, which is a continuation of U.S. Patent Application No. 13/282,896 (now U.S. Patent No. 8,832,478) filed on October 27, 2011.

127. The '588 Patent has 20 claims, including 3 independent claims (claims 1, 8, and 20) and 17 dependent claims. Daedalus asserts claims 1-20 of the '588 Patent against Respondents.

128. Pursuant to Commission Rule 210.12(c)(9)(xi), Daedalus currently believes that the '588 Patent's expiration date is October 27, 2031.

**1. Non-Technical Description of the '588 Patent**

129. The '588 Patent describes and claims a device and system comprising a processor with multiple domains including at least a core domain and a non-core domain that is transparent to an operating system (OS). The non-core domain can be controlled by a driver. In turn, the processor further includes a memory interconnect to interconnect the core domain and the non-

core domain to a memory coupled to the processor. Still further, a power controller, which may be within the processor, can control a frequency of the memory interconnect based on memory boundedness of a workload being executed on the non-core domain.

### 2. Foreign Counterparts to the ’588 Patent

130. Pursuant to Commission Rule 210.12(a)(9)(v), the following is a list of foreign counterparts relating to the ’588 Patent that are currently known to Daedalus, whether issued, filed, denied, abandoned, or withdrawn:

| Country | Local Serial Number | Local Filing Date | Local Patent Number | Status |
|---|---|---|---|---|
| WIPO | PCT/US2012/057655 | Sept. 27, 2012 | - | - |
| Taiwan | 101135884 | Sept. 28, 2012 | TWI477973 | Patented |
| Taiwan | 103146274 | Sept. 28, 2012 | TWI540440 | Patented |
| Taiwan | 105112608 | Sept. 28, 2012 | TWI574159 | Patented |
| Taiwan | 105140882 | Sept. 28, 2012 | TWI630482 | Patented |

131. Daedalus is not currently aware of any other foreign counterparts to the ’588 Patent, whether issued, filed, denied, abandoned, or withdrawn.

### 3. Licensees to the ’588 Patent

132. Pursuant to 19 C.F.R. § 210.12(a)(9)(iii), a listing of potential rights in the ’588 Patent that are currently known to Daedalus is included in Confidential Exhibit 63C.

## IV. UNFAIR ACTS OF THE RESPONDENTS

133. On information and belief, Respondents are engaged in the sale for importation, the importation, and/or the sale within the United States after importation of certain semiconductors and devices and products containing the same, including printed circuit boards, automotive parts, and automobiles including, without limitation semiconductors, PCBs, automotive electronic systems including infotainment systems and instrument clusters, and automobiles that infringe at

least one valid, enforceable claim of at least one of the Asserted Patents (collectively, "infringing articles").

**A. Specific Instances of Infringement**

134. Pursuant to Commission Rule 210.12(a)(9)(vii), Exhibits 13-24 are claim charts demonstrating how the asserted independent claims of the Asserted Patents apply to at least one of the Mediatek or NXP semiconductor chipsets in each Respondent's representative products, as follows:

| Respondent | Claim Chart Exhibits |
|---|---|
| MediaTek, Visteon, Mazda, Mercedes (MediaTek chipsets) | Exhibits 14, 16, 18, 20, 22, 24 |
| NXP, Arrow, Avnet, Digi-Key, Future, Mouser, Newark, Rochester, Mercedes (NXP chipsets) | Exhibits 13, 15, 17, 19, 21, 23 |

135. Exhibits 13-24 show that these representative Respondent products, and their use, are covered by at least the asserted independent claims of the Asserted Patents.

136. Pursuant to Commission Rule 210.12(a)(9)(x), Exhibits 13-24 contain drawings, photographs, or other visual representations of the representative Respondent products.

137. Respondents also have indirectly infringed, and continue to indirectly infringe, the Asserted Patents.

138. Respondents are on notice of the Asserted Patents and Daedalus' allegations of infringement based on the service and filing of this Complaint.

139. On information and belief, and despite this knowledge, Respondents continue to actively induce infringement of the Asserted Patents by making, using, selling, offering to sell, importing, selling for importation, and/or selling after importation their infringing semiconductors, PCBs, automotive parts, and automobiles, and continuing to market, advertise, and instruct their

customers and potential customers—including others in the supply chain and end users of the subject articles—to use those articles in an infringing manner. For example, on information and belief, the infringing structures and functions in Respondents' infringing articles necessarily infringe and cannot be disabled.

140. Further, on information and belief, and despite this knowledge, Respondents continue to contributorily infringe the Asserted Patents by offering to sell or selling within the United States or importing into the United States the infringing articles, to the extent that they comprise a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use. For example, on information and belief, the infringing structures and functions in Respondents' infringing articles necessarily infringe and cannot be disabled.

141. Finally, Commission Rule 210.12(a)(9)(viii) requires that Complainant chart only "a representative involved article of each Respondent that violates Section 337." Nothing in this Complaint is intended to limit the scope of this Investigation to the representative Respondent products. In addition to the representative Respondent products, Daedalus believes that Respondents' other semiconductors, PCBs, automotive parts, and automobiles, and their use, also infringe the Asserted Patents. Daedalus accuses such products of infringement and seeks remedial orders and a bond against Respondents' sale for importation, importation, and/or sale after importation of those products as well.

142. For example, Respondent Visteon also incorporates Qualcomm semiconductor chipsets into some of its infotainment systems. (*See, e.g.,* Ex. 46.) In turn, Qualcomm's

automotive infotainment and instrument cluster semiconductor chipsets—including at least the Qualcomm Snapdragon 820 Automotive Platform and SA8155P automotive cockpit platform—support the same or similar ARM v8 architecture utilized by the representative Mediatek and NXP semiconductor products claim charted in Exhibits 13-24 attached hereto. (*See, e.g.*, Ex. 35 at 2 (Snapdragon 820 Automotive Platform includes a "64-bit Qualcomm® Kryo™ CPU architecture – high performance with support for ARM V8/Hypervisor"); Ex. 150 at 1 (SA8155P includes "[a]n octa-core CPU subsystem featuring the 4th generation Qualcomm®Kryo™ CPUs based on the ARMv8 architecture").)

143. Further, on information and belief, NXP and Mediatek also make semiconductor chipsets based on the ARM v8 architecture that are utilized in automotive infotainment systems and instrument clusters, such as the rest of the NXP i.MX 8 family, the NXP Layerscape family, and the Mediatek MT2715. (*See, e.g.*, Ex. 147; Ex. 148 at 5 (discussing Layerscape semiconductor chips, including many with ARM Cortex A53 and Cortex A72 cores, which are based on ARM v8 architecture similar to the representative NXP and Mediatek Accused Products charted in Exhibits 13-24); Ex. 149.)

144. Daedalus seeks remedial orders against any infringing Respondent products that comprise or incorporate such other NXP, Mediatek, and Qualcomm semiconductor chipsets as well.

### B. Specific Instances of Sale for Importation, Importation, or Sale After Importation

145. Each Respondent is engaged in the sale for importation, importation, and/or sale after importation into the United States of certain semiconductors and devices and products containing the same, including printed circuit boards, automotive parts, and automobiles that infringe, or are used to infringe, at least one valid and enforceable claim of at least one Asserted

Patent, directly and/or indirectly, literally and/or under the doctrine of equivalents, as explained below.

### 1. Mediatek, Visteon, Mazda, and Mercedes

146. Pursuant to Commission Rule 201.12(a)(3), Daedalus provides the following evidence that Mediatek, Visteon, Mazda, and Mercedes sell for importation, import, and/or sell after importation into the United States the representative Mediatek Autus I20 product depicted in Exhibits 14, 16, 18, 20, 22, and 24.

147. On information and belief, Respondent Mediatek only makes and sells one semiconductor chipset for automotive infotainment systems—the representative Mediatek Autus I20 product. (*See* Ex. 34 (Mediatek's infotainment website, listing Autus I20 as the only product).)

148. On information and belief, Respondent Visteon only makes and sells two automotive infotainment systems. (*See* Ex. 46 (Visteon's infotainment website, listing only two infotainment systems).) On information and belief, both of the Visteon infotainment systems use the representative Mediatek Autus I20 product. (*See id.* (listing Mediatek as one of the semiconductor "Chipsets" for both of the Visteon infotainment systems); Ex. 34 (Mediatek's infotainment website, listing Autus I20 as the only product).) On information and belief, Visteon's SmartCore technology integrates one or both of the Visteon infotainment systems. (*See* Ex. 47 at 1 (Visteon blog post announcing SmartCore technology, noting that "The SmartCore offerings will integrate…Visteon's infotainment platform" and embedding a video labeled "2018 SmartCore Gen 2 Phoenix"—Phoenix is the name of one of the Visteon infotainment platforms).)

149. On information and belief, Respondent Mazda utilizes one or both of the Visteon infotainment systems incorporating the representative Mediatek Autus I20 product. For example, on information and belief, the Mazda CX-9 uses Mazda's *Connect* infotainment platform. (*See* Ex. 48 (Visteon press release noting that Mazda CX-9 utilizes Mazda's *Connect* infotainment

platform).) On information and belief, Mazda's *Connect* infotainment platform incorporates one or both of the Visteon infotainment systems. (*See* Ex. 52 (Mazda *Connect* infotainment system website, labeled "© Visteon"); Ex. 53 (Terms of Use and Privacy Statement page linked on the Mazda *Connect* infotainment system website, noting that "Visteon Corporation manages and controls this website on behalf of Mazda Motor Corporation"); *see also* Ex. 46 (Visteon's infotainment website, listing only two infotainment systems).)

150. On information and belief, Respondent Mazda manufactures all of its vehicles—including the Mazda CX-9 incorporating one or both of the Visteon infotainment systems incorporating the representative Mediatek Autus I20 product—abroad. (*See* Ex. 50 (listing Mazda's worldwide production sites—all outside the United States); Ex. 51 (listing Mazda's primary businesses and activities in the United States, none of which relate to production or manufacturing).)

151. In fact, Daedalus inspected and photographed a 2022 Mazda CX-9 GT in Virginia that was manufactured in Japan and includes the Mazda *Connect* infotainment platform. (*See* Ex. 54 at 1 (window sticker showing that vehicle Interior Standard Features include "MAZDA CONNEC[T]ED SERVICES), Ex. 54 at 3 (label stating "MFD. BY MAZDA MOTOR CORPORATION" and "MADE IN JAPAN" and showing that the car's VIN number is "JM3TCBDY1N0610262"); Ex. 55 (printout of dealer website from Priority Mazda Tyson's Corner in Vienna, Virginia containing the listing for the same 2022 Mazda CX-9 GT, "VIN #: JM3TCBDY1N0610262," with Interior Standard Equipment including "MAZDA CONNECT™ed Services").)

152. On information and belief, Respondent Mercedes also utilizes one or both of the Visteon infotainment systems incorporating the representative Mediatek Autus I20 product. For

example, on information and belief, the Mercedes Benz A-Class uses Visteon's SmartCore technology. (Ex. 49 (Visteon press release noting the debut of Visteon SmartCore in Mercedes' A class vehicles).) As noted above, on information and belief, Visteon's SmartCore technology integrates one or both of the Visteon infotainment systems. (*See* Ex. 47 at 3 (Visteon blog post announcing SmartCore technology, noting that "[t]he SmartCore offerings will integrate…Visteon's infotainment platform" and embedding a video labeled "2018 SmartCore Gen 2 Phoenix").)

153. On information and belief, Respondent Mercedes manufactures many of its vehicles—including the Mercedes A class incorporating Visteon infotainment systems incorporating the representative Mediatek Autus I20 product—abroad. (*See, e.g.,* Ex. 60 (noting that Mercedes-Benz A-Class vehicle manufacturing is performed in Rastatt, Germany); *see also* Ex. 59 (noting limited Mercedes vehicles manufactured in the United States, not including A-Class).)

154. In fact, Daedalus inspected and photographed a 2021 Mercedes A class (A220) in Virginia that was manufactured in Germany. (*See* Ex. 61 at 4 (label stating "MFD BY MERCEDES-BENZ AG STUTTGART" and "MADE IN GERMANY" and showing that the car's VIN number is "W1K3G4FB0MJ287757"); Ex. 62 (printout of dealer website from Mercedes-Benz of Tyson's Corner in Vienna, Virginia containing the listing for the same 2021 Mercedes A220, "VIN #: W1K3G4FB0MJ287757").).

155. Thus, Mediatek, Visteon, Mazda, and Mercedes are violating Section 337 of the Tariff Act of 1930 by selling for importation, importing, and/or selling after importation into the United States the representative Mediatek Autus I20 product and other semiconductors and devices

and products containing the same, including printed circuit boards, automotive parts, and automobiles, which infringe the Asserted Patents.

**2. NXP and its Distributors—Arrow, Avnet, Digi-Key, Future, Mouser, Newark, and Rochester**

156. Pursuant to Commission Rule 201.12(a)(3), Daedalus provides the following evidence that NXP and its distributors—Arrow, Avnet, Digi-Key, Future, Mouser, Newark, and Rochester—sell for importation, import, and/or sell after importation into the United States the representative NXP i.MX 8 QuadMax products depicted in Exhibits 13, 15, 17, 19, 21, and 23.

157. Exhibits 38, 41, and 43 are copies of invoices showing sales of one of the representative NXP i.MX 8 QuadMax products within the United States from the websites of Respondents Digi-Key, Mouser, and Newark (an Avnet company). Further, Exhibits 36, 37, and 40 are copies of the websites of Respondents Arrow, Avnet, and Future showing that these Respondents also sell the representative NXP i.MX 8 QuadMax products within the United States.[9] And, as shown in the photographs contained in Exhibits 39, 42, and 44, the representative NXP i.MX 8 QuadMax products are marked as Made in "Korea." (*See also* Ex. 38 at 1 (Digi-Key invoice, listing NXP i.MX 8 QuadMax semiconductor chipsets as "COO [*i.e.*, Country Of Origin] South Korea"); Ex. 42 at 3 (Mouser invoice, listing NXP i.MX 8 QuadMax semiconductor chipsets as "COO: KR [*i.e.*, Korea]"); Ex. 44 at 3 (Newark packing list, listing NXP i.MX 8 QuadMax semiconductor chipsets as "COO: KR [*i.e.*, Korea]").)

---

[9] As shown in Exhibits 36, 37, and 40, the representative NXP i.MX 8 QuadMax products are backordered such that Daedalus was unable to purchase one directly from Respondents Arrow, Avnet, and Future. However, as explained herein, on information and belief these Respondents also import, sell for importation, or sell after importation into the U.S., the representative NXP i.MX 8 QuadMax products. As also explained herein, Avnet is the corporate parent of Newark, and thus was responsible for Newark's importation, sale for importation, and/or sale after importation of the representative i.MX 8 QuadMax semiconductor chipset. (*See* Exs. 43, 44.)

158. Thus, NXP and its distributors—Arrow, Avnet, Digi-Key, Future, Mouser, Newark, and Rochester—are violating Section 337 of the Tariff Act of 1930 by selling for importation, importing, and/or selling after importation into the United States the representative i.MX 8QuadMax products and other semiconductors and devices and products containing the same, including printed circuit boards, automotive parts, and automobiles, which infringe the Asserted Patents.

159. Further, the Visteon Phoenix infotainment system also utilizes NXP semiconductor chipsets. (*See* Ex. 46 (listing NXP under semiconductor "Chipsets" for Visteon Phoenix infotainment systems).) On information and belief, at least Respondent Mercedes' imported automobiles utilize the representative NXP i.MX 8 QuadMax semiconductor chipset. (*See, e.g.,* Ex. 65 at 1 ("At CES…[a]n Altia-enabled integrated cockpit display, operating on NXP's i.MX 8QuadMax…will be featured inside a Mercedes Benz A-Class sedan….").) NXP's automotive customers, such as Visteon, Mazda, and Mercedes, are primarily serviced by its distribution partners, such as Arrow, Avnet, Digi-Key, Future, Mouser, Newark, and Rochester. (*See* Ex. 32 at 27/43; *see also* Ex. 31.) Thus, NXP and its distribution partners are also involved in the importation, sale for importation, and/or sale after importation of NXP semiconductor chipsets in at least Visteon infotainment systems and Mazda and Mercedes automobiles.

### 3. NXP and Mercedes

160. In addition to the foregoing, the NXP Respondents and Mercedes Respondents were responsible for the importation, sale for importation, and/or sale after importation of at least one other infringing product. Specifically, at the 2022 Consumer Electronics Show ("CES"), NXP showcased an "eCockpit demo—housed in a production Mercedes and driven by two NXP i.MX 8QuadMax applications processors." (*See* Ex. 66 at 2; *see also* Ex. 65 at 1 ("At CES, Altia capabilities will be on display at the following partner exhibits: **NXP Semiconductors (Booth**

**CP-18):** An Altia-enabled integrated cockpit display, operating on NXP's i.MX 8QuadMax…will be featured inside a Mercedes Benz A-Class sedan….").) As previously mentioned, the NXP i.MX 8 QuadMax semiconductor chipsets are made in Korea (*see, e.g.,* Exs. 38, 39, 41, 42, 43, 44) and the Mercedes A-Class automobiles are made in Germany (*see, e.g.,* Exs. 59, 60, 61). Meanwhile, CES 2022 was held on January 3-7, 2022 in Las Vegas, Nevada. (Ex. 67.) Thus, NXP and Mercedes were responsible for the importation, sale for importation, and or sale after importation of these i.MX 8 QuadMax applications processors and this Mercedes A-class automobile, which infringe the Asserted Patents.

## V. HARMONIZED TARIFF SCHEDULE INFORMATION

161. The articles subject to this complaint are classifiable under at least the following headings and subheadings of the Harmonized Tariff Schedule ("HTS") of the United States:

- 8537.10.8000: Touch-sensitive data input devices (so-called "touch screens") without display capabilities, for incorporation into apparatus having a display, which function by detecting the presence and location of a touch within the display area (such sensing may be obtained by means of resistance, electrostatic capacity, acoustic pulse recognition, infra-red lights or other touch-sensitive technology);

- 8541: Semiconductor devices (for example, diodes, transistors, semiconductor-based transducers); photosensitive semiconductor devices, including photovoltaic cells whether or not assembled in modules or made up into panels; light-emitting diodes (LED), whether or not assembled with other light-emitting diodes (LED); mounted piezo-electric crystals; parts thereof;

- 8542.31.0001: Electronic integrated circuits: Processors and controllers, whether or not combined with memories, converters, logic circuits, amplifiers, clock and timing circuits, or other circuits;

- 8703: Motor cars and other motor vehicles principally designed for the transport of persons (other than those of heading 8702), including station wagons and racing cars;

- 8704: Motor vehicles for the transport of goods; and

- 8708: Parts and accessories of the motor vehicles of headings 8701 to 8705

162. These HTS numbers are illustrative only and are not intended to restrict the scope of this investigation.

### A. Related Litigation and Patent Office Proceedings

163. Daedalus is not presently aware of any past or present related litigation or patent office proceedings.

164. Contemporaneous with or shortly after the filing of this Complaint, Daedalus intends to file suits in the United States District Court for the District of Delaware against the Respondents alleging infringement of at least the Asserted Patents.

## VI. DOMESTIC INDUSTRY

### A. Intel's License Under the Asserted Patents

165. Intel Corporation ("Intel") is a licensee under each of the Asserted Patents. (*See* Ex. 64C at § 5.1 (license grant), Exhibit A (definitions of "Licensed Patents" and "Transferred Patents"), and Table A, Entry Nos. 25, 32, 46, 90, 98, and 121.)

### B. A Domestic Industry Relating to the Asserted Patents Exists Due to Intel's U.S. Activities

166. Daedalus alleges the following on information and belief:

167. Intel is a leader in the design and manufacturing of advanced integrated digital technology platforms. Intel is one of the largest microprocessor fabrication companies in the world, with $79 billion in GAAP revenue during its fiscal 2021. (Ex. 68 at 6/134.)

#### 1. Intel's Foundry Services

168. In March 2021, Intel introduced IDM 2.0, the next evolution and expansion of its IDM ("integrated device manufacturing") model. (Ex. 68 at 9/134.) IDM 2.0 is a differentiated strategy that combines three capabilities:

- **Internal factory network.** Intel's global, internal factory network has been foundational to its success, enabling product optimization, improved economics,

and supply resilience. Intel intends to remain a leading developer of process technology and a major manufacturer of semiconductors and will continue to build the majority of our products in our factories.

- **Strategic use of foundry capacity.** Intel expects to expand its use of third-party foundry manufacturing capacity, which will provide it with increased flexibility and scale to optimize its product roadmaps for cost, performance, schedule, and supply. Intel's use of foundry capacity will include manufacturing for a range of modular tiles on advanced process technologies.

- **Foundry services.** Intel intends to build a world-class foundry business to meet the growing global demand for semiconductors. Intel plans to differentiate its foundry offerings from those of others through a combination of leading-edge packaging and process technology, committed capacity in the US and Europe available for customers globally, and a world-class IP portfolio that will include x86 cores, as well as other ecosystem IP.

(Ex. 68 at 9/134.)

169. Intel believes its IDM 2.0 strategy will enable it to deliver leading process technology and products to meet growing demand, while providing superior capacity and supply resilience and an advantageous cost structure. (Ex. 68 at 9/134.)

170. Delivering on Intel's IDM 2.0 strategy and growth ambitions requires attracting, developing, and retaining top talent from across the world. (Ex. 68 at 9/134.)

171. Intel is investing to position the company for accelerated long-term growth, focusing on both its core businesses and its growth businesses. (Ex. 68 at 9/134.) In Intel's client and server businesses, its strategy is to invest to strengthen the competitiveness of its product roadmap and to explore opportunities in both client and data center adjacencies. (Ex. 68 at 9/134.) Intel believes it has significant opportunities to grow and gain share in graphics; mobility, including autonomous driving; networking and edge; and foundry services. (Ex. 68 at 9/134.)

172. To accelerate Intel's IDM 2.0 strategy, Intel is in the process of a significant expansion of its manufacturing capacity, beginning with plans for two new fabs in Arizona, located at the company's Ocotillo campus. (Ex. 69.) These fabs will support the increasing requirements

of Intel's current products and customers, as well as provide committed capacity for foundry customers. (Ex. 69.)

173. This build-out of two new fabs represents an investment of approximately $20 billion, which is expected to create over 3,000 permanent high-tech, high-wage jobs; over 3,000 construction jobs; and approximately 15,000 local long-term jobs. (Ex. 69.)

### 2. Intel's 12th-Generation Core Processors

174. In 2021, Intel announced its 12th-generation Intel Core processor family, codenamed Alder Lake, the first on the Intel 7 process, with real-world performance for enthusiast gamers and professional creators. (Ex. 68 at 7/134.) Alder Lake is the first processor based on Intel's performance hybrid architecture featuring a combination of Performance-cores, the highest performing CPU cores Intel has built, and Efficient-cores designed for scalable multi-threaded workload performance. (Ex. 68 at 5.) In 2021, Intel rebranded its 10nm Enhanced SuperFin process node as the "Intel 7" process. (Ex. 123 at 113.)

175. The Alder Lake architecture is available for mobile and desktop applications. (Ex. 70.) Intel's 12th-generation Intel Core mobile processors include up to 14 cores, while Intel's 12th-generation Intel Core desktop processors include up to 16 cores. (Ex. 70.) This new performance hybrid architecture delivers Intel's largest leap in Intel Core processor performance in years. (Ex. 70.)

176. As further described below, Intel makes significant investments in plant and equipment in the United States and employs significant labor and capital in the United States related to manufacturing Intel's 12th-generation Intel Core processors.

177. As further described below and shown in the claim charts attached as Exhibits 25-30, Intel's 12th-generation Intel Core processor family practices various claims of each of the Asserted Patents.

### 3. Intel's current Microprocessors

178. Intel currently manufactures processors at various process nodes implementing various microarchitectures. Intel offers a range of microprocessors including Xeon, Core, Pentium, Celeron, and Atom. (https://www.intel.com/content/www/us/en/products/details/processors.html). On its website, Intel provides product specifications for its processors. (http://ark.intel.com). These specifications indicate whether each individual processor is current (*i.e.*, "Launched"), future (*i.e.*, "Announced"), or no longer sold (*i.e.*, "Discontinued"). Using http://ark.intel.com, Daedalus determined that Intel has approximately 1,121 current, launched processors as of August 17, 2022 (using the advanced search feature all processors were filtered using "Status: Launched" and "Only Show Current Products") (Ex. 124.) Of the approximately 1,121 processors currently offered by Intel, approximately 100 of those processors are built using the Intel 7 process, and were formerly known as Alder Lake. (Ex. 125.) Thus, the Domestic Industry Products—which include at least those built using the Alder Lake microarchitecture—comprise at least approximately 9%[10] of Intel's current product mix.[11]

### 4. Intel's Domestic Industry

179. A domestic industry for the purposes of 19 U.S.C. § 1337(a)(2), as defined in § 1337(a)(3)(A), (B), and (C), exists with respect to Intel's significant and continuous investment in plant and equipment, significant and continuous employment of labor or capital, and substantial

[10] (100/1,121) x 100 = 9%.

[11] This allocation factor merely makes use of publicly available information regarding the number of Intel identified products that utilize the Alder Lake microarchitecture. On information and belief, Daedalus expects that confidential discovery from Intel will ultimately show that, by manufacturing volume or sales volume for example, Alder Lake processors make up a greater percentage of Intel processors.

and ongoing investment in engineering, research, and development in Intel's Domestic Industry Products.

180. The majority of Intel's logic wafer manufacturing is conducted in the United States. (Ex. 68 at 14; Ex. 126 at 11.) At the end of 2021, Intel had ten manufacturing sites, of which six are utilized for wafer fabrication. (Ex. 68 at 15/134.) Wafer fabrication is the process through which Intel prints the integrated circuitry of a microprocessor onto a silicon wafer. (Ex. 127 at 5; *see also* Ex. 128.) Each individual integrated circuit printed onto the wafer is known as a "die." (Ex. 127 at 12.) Once a silicon wafer has been fabricated, that wafer is sliced into individual die which are then packaged into a microprocessor. (Ex. 127.)

181. In the United States, Intel has three wafer fabrication sites: one each in Oregon, Arizona, and New Mexico. (Ex. 68 at 15/134.) Intel incurs factory start-up costs when it ramps facilities for production of new process technologies. (Ex. 126 at 11.) In order to enable a faster and more efficient ramp of factory operations, Intel's "facilities are built following a 'copy exactly' methodology, whereby new process technologies are transferred identically from a central development fab to each manufacturing facility. This enables fast ramp of the operation as well as better quality control." (Ex. 126 at 11.) Intel "ramped the 10nm process node in Oregon and Israel in 2019, and began production in Arizona in…2020." (Ex. 126 at 11; Ex. 129 at 1 ("The company also ramped its new 10nm process this year. Intel currently manufactures 10nm products in high volumes at its Oregon and Arizona sites in the U.S. and its site in Israel.".)

182. Intel's U.S. fabs are large, expensive, state-of-the-art facilities. "A fully equipped new fab costs about $10 billion and takes 6,000 construction workers about three years to complete." (Ex. 130 at 2.)

183. Oregon is the heart of Intel's research and development activities. (Ex. 131 at 1.) Intel's Hillsboro, Oregon campus houses its research and development fabs. (Ex. 132 at 2.) Intel currently employs 22,000 people in Oregon and as of November 2021, "[t]he company's 21,000 employees in Oregon make Intel the state's single largest private employer." (Ex. 130 at 3; Ex. 131 at 2; *see also* Ex. 133; Ex. 134; Ex. 135.) Intel has more than "27 miles of multilevel thoroughfares on which 1,700 autonomous vehicles shuttle Intel's most precious cargo." (Ex. 130 at 4.) Front-opening unified pods ("FOUPs") shuttle as many as 25 wafers—each containing hundreds of Intel chips—along overhead tracks on their weeks-long fabrication journey. (Ex. 130 at 4.) "Oregon's wafer superhighway connects nine buildings, including the D1X and D1D factories. The two factories together are a little larger than twelve (12) U.S. football fields." (Ex. 130 at 4.)

184. Intel's D1C Fab, in Hillsboro, Oregon, comprises approximately two-hundred eighty thousand (280,000) square feet, of which one-hundred thousand (100,000) square feet are clean room. (*See, e.g.*, Ex. 136 at 2.)

185. Intel's D1D Fab, in Hillsboro, Oregon, comprises approximately eight-hundred thousand (800,000) square feet, of which one-hundred ninety thousand (190,000) square feet are clean room, and cost approximately two billion dollars ($2,000,000,000). (*See, e.g.*, Ex. 136 at 2; *see also, e.g.*, Ex. 137 at 1 ("D1D…covers a little less than 1 million square feet" and some of the chip making tools in D1D "cost more than $10 million each").)

186. Intel's D1X Fab, in Hillsboro, Oregon, comprises a total of two million, two-hundred thousand (2,200,000) square feet—"two adjoining factories of 1.1 million square feet apiece." (*See* Ex. 137 at 2.) D1X cost approximately three billion dollars ($3,000,000,000) to build. (*See, e.g.*, Ex. 137 at 2 ("where the company is now developing its 10 nanometer

manufacturing technology.") The Mod3 expansion at the D1X facility, which went online in April 2022, added "an additional 270,000 square feet of clean room space to develop next-generation silicon process technologies." (Ex. 138 at 1.) The Intel 7 process originated in the D1X Development Fab. (Ex. 139 at 5.)

187. Intel employs 12,000 people in Arizona. (Ex. 143; *see, e.g.,* Ex. 144.) Intel's Fab 32 and Fab 42 in Chandler, Arizona fabricate wafers at 22nm, 14nm, and 10nm process nodes. (Ex. 132.)

188. Intel's Fab 32 comprises one million (1,000,000) square feet, including approximately 184,000 square feet of clean room space, and cost about $3 billion to build. (Ex. 140 at 1.)

189. Intel's Fab 42 also comprises approximately nine-hundred thousand (900,000) square feet of manufacturing space and cost approximately seven billion dollars ($7,000,000,000). (*See, e.g.*, Ex. 141; Ex. 142 at 3 (discussing that U.S. subsidies will knock $3 billion off the $10 billion cost to build out Fab 42).) Intel's Fab 42 is outfitted "with 1,300 tools (many of them requiring multiple trucks to move)" and "a super overhead highway that zips silicon wafers around all four of the company's Arizona factories." (Ex. 130 at 4; Ex. 143.) Some of the latest lithography machines cost $150 million each. (Ex. 142 at 4.)

**5. § 337(a)(3)(A)—Significant Investment in Plant and Equipment**

190. A domestic industry as defined by 19 U.S.C. § 1337(a)(3)(A) exists in the United States with respect to the articles protected by the Asserted Patents by reason of Intel's significant investment in plant and equipment.

191. The following table compiles the aforementioned statistics with respect to the size and cost of Intel's fabs related to the development and commercial scale fabrication of wafers:

| **FAB** | **SIZE (FT.$^2$)** | **COST (*estimated as described below*)** |
|---|---|---|
| Fab 32 – Chandler, AZ | 1,000,000 | $3,000,000,000 |
| Fab 42 – Chandler, AZ | 900,000 | $7,000,000,000 |
| D1C – Hillsboro, OR | 280,000 | *$466,666,667* |
| D1D – Hillsboro, OR | 800,000 | $2,000,000,000 |
| D1X – Hillsboro, OR | 2,200,000 | $3,000,000,000 |
| **Total** | **5,180,000** | **$15,466,666,667** |

**Table 1** – Cost and size of Intel's U.S. logic wafer fabs

192. In order to estimate the cost of the D1C Fab, Daedalus used publicly available information about Intel's other Oregon development fabs—D1D and D1X. As shown in Table 1 above, the D1D and D1X Fabs comprise approximately three million (3,000,000) square feet and cost a total of about five billion dollars ($5,000,000,000). Therefore, the cost of building these two fabs was approximately $1,666.66/ft.$^2$. Daedalus multiplied that cost per square foot by the square footage of the D1C Fab to calculate the estimated total cost for that fab.

193. Intel's currently-operating technology development and commercial scale logic wafer fabrication facilities comprise approximately 5,280,000 square feet and cost approximately $15,466,666,667.

194. Multiplying these figures by the estimated 9% allocation factor discussed above demonstrates that Intel has at least about 475,200 square feet of U.S. facilities related to the Domestic Industry Products, which cost at least about $1,392,000,000 to build. Thus, Intel has made a significant investment in plant and equipment in the U.S. related to articles protected by the Asserted Patents.

**6. § 337(a)(3)(B)—Significant Employment of Labor or Capital**

195. A domestic industry as defined by 19 U.S.C. § 1337(a)(3)(B) exists in the United States with respect to the articles protected by the Asserted Patents by reason of Intel's significant employment of labor and capital.

196. Intel invests heavily in its highly skilled workforce of 121,000 employees worldwide. (Ex. 68 at 15.) Intel has 12,000 employees in Arizona. (Ex. 145 at 5.) Intel has 22,000 employees in Oregon. (Ex. 131 at 4.) At the end of 2021, Intel owed $4,535,000,000 in accrued compensation and benefits. (Ex. 68 at 76.) The employees in Arizona and Oregon comprise approximately 28% of Intel's worldwide workforce. Multiplying Intel's 2021 payroll burden of $4,535,000,000 by 28% allocates approximately $1,269,800,000 in worldwide compensation to the headcount in Arizona and Oregon. Multiplying $1,269,800,000 by the aforementioned 9% allocation factor results in at least approximately $114,282,000 in U.S. salaries attributable to the Domestic Industry Products.

197. Thus, Intel has made a significant employment of labor and capital in the U.S. related to articles protected by the Asserted Patents.

**7. § 337(a)(3)(C)—Substantial Investment in Engineering, Research and Development**

198. A domestic industry as defined by 19 U.S.C. § 1337(a)(3)(c) exists in the United States with respect to the articles protected by the Asserted Patents by reason of Intel's substantial investment in engineering, research and development.

199. As discussed above, Intel's D1X Fab, in Hillsboro, Oregon is involved in some research and development. Thus, at least some of that facility—which comprises 2.2 million square feet and cost Intel over $3 billion—is likely dedicated to engineering, research and development of the Intel 7 10nm process on which the Domestic Industry Products are

manufactured. (*See, e.g.*, Ex. 137 at 2 (D1X is "where the company is now developing its 10 nanometer manufacturing technology"); Ex. 139 at 5 (explaining that the Intel 7 process originated in the D1X Development Fab).) Further, at least some of Intel's 22,000 employees in Oregon are likely dedicated to engineering, research and development of the Intel 7 10nm process on which the Domestic Industry Products are manufactured.

200. Thus, Intel has made a substantial investment in engineering, research, and development in the U.S. related to articles protected by the Asserted Patents.

**8. Technical Prong**

201. Intel's representative 12th-generation Intel Core processor family utilizing the Alder Lake microarchitecture practices at least the following claims of the Asserted Patents:

| Asserted Patent | Claims Practiced by Representative Intel 12th-Generation Core Processors Utilizing Alder Lake Microarchitecture |
|---|---|
| U.S. Patent No. 8,775,833 | 1-18 |
| U.S. Patent No. 8,898,494 | 1-18 |
| U.S. Patent No. 9,575,895 | 1-17 |
| U.S. Patent No. 10,049,080 | 1-24 |
| U.S. Patent No. 10,394,300 | 1-19 |
| U.S. Patent No. 10,705,588 | 1-20 |

202. Pursuant to Commission Rule 210.12(a)(9)(ix), Exhibits 25-30 include charts that apply an exemplary claim of each Asserted Patent to the representative Intel 12th-generation Core processors utilizing the Alder Lake microarchitecture.

## VII. REQUESTED RELIEF

203. WHEREFORE, by reason of the foregoing, Daedalus requests that the Commission:

204. Institute an investigation pursuant to Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, with respect to Respondents' violations of Section 337 based on the sale for importation into the United States, the importation into the United States, and/or the sale within the United States after importation of articles that infringe the Asserted Patents;

205. Schedule and conduct a hearing on permanent relief pursuant to 19 U.S.C. § 1337(d) and (f) of the Tariff Act of 1930, as amended;

206. Issue a Limited Exclusion Order specifically directed to each named Respondent, pursuant to 19 U.S.C. § 1337(d), excluding from entry into the United States articles that infringe the Asserted Patents;

207. Issue a cease and desist order pursuant to 19 U.S.C. § 1337(f) prohibiting each Respondent from engaging in the unlawful importation into and/or the sale within the United States after importation of articles that infringe the Asserted Patents, as well as activities encouraging and/or supporting such importation and/or sale; and

208. Impose a bond upon each Respondent that continues to import infringing articles during the 60-day-Presidential review period per 19 U.S.C. § 1337(j); and

209. Issue such other and further relief as the Commission deems just and proper under the law, based on the facts determined by the investigation and the authority of the Commission.

August 23, 2022

Respectfully submitted,

*<u>/s/ David J. Shaw</u>*

Goutam Patnaik
David J. Shaw
Tuhin Ganguly
David Cho
Elizabeth Connors
**DESMARAIS LLP**
1899 Pennsylvania Avenue, NW
Suite 400
Washington, DC 20006

Telephone: 202-451-4900
Facsimile: 202-451-4901
Email: DaedalusService@desmaraisllp.com

John M. Desmarais
Alan Kellman
**DESMARAIS LLP**
230 Park Avenue
New York, NY 10169
Telephone: 212-351-3400
Facsimile: 212-351-3401

**VERIFICATION OF COMPLAINT**

1. In accordance with 19 C.F.R. § 210.12(a)(1), I, David J. Shaw, declare as follows:

2. I am outside counsel to Daedalus Prime LLC and am duly authorized to sign this Complaint.

3. I have read the Complaint and am aware of its contents.

4. The Complaint is not presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of the investigation or a related proceeding.

5. To the best of my knowledge, information, and belief founded upon reasonable inquiry, the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

6. The allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

7. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

August 23, 2022

David J. Shaw